# EXHIBIT B

(Order Granting Franks Motion)

The Order of the Court is stated below:
Dated:    August 01, 2024          /s/   RITA M. CORNISH
              09:38:02 AM                     District Court Judge

RICHARD A. VAN WAGONER (4690)
NATHAN A. CRANE (10165)
MELINDA K. BOWEN (13150)
**SPENCER FANE LLP**
10 Exchange Place, Eleventh Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rvanwagoner@spencerfane.com
ncrane@spencerfane.com
mbowen@spencerfane.com
*Attorneys for Defendant Rudy Larsen*

## IN THE SECOND DISTRICT COURT, FARMINGTON
## DAVIS COUNTY, STATE OF UTAH

| | |
|---|---|
| STATE OF UTAH ATTORNEY GENERAL,<br><br>              Plaintiff,<br><br>         vs.<br><br>RUDY LARS LARSEN<br>TYLER BRINKMAN<br>BRANDON FLOYD<br>ADAM PEREA<br>CLAYTON PHILLIPPS<br>KIRK SIMMONS<br>JENA LARSEN<br><br>              Defendants. | **ORDER GRANTING MOVANTS'** ***FRANKS*** **MOTION IN PART**<br><br>Case No. 231702289<br><br>Judge Rita Cornish |

The Court held a hearing on Movants'[1] Motion to Void Search Warrants, Suppress Evidence, Return Seized Assets, and for a *Franks*

---

1 Defendants who filed or joined in the *Franks* Motion are Rudy Larsen, Jena Larsen, Adam Perea, and Clayton Phillipps. The intervenors are Rubicon, Smart Rain, and Scandia. These individuals and entities are collectively referred to herein as "Movants."

Hearing (*Franks* Motion) on June 25, 2024, and set the matter for an oral ruling on July 16, 2024. Having considered Movants' *Franks* Motion, the supporting and opposing memorandums, and the arguments of counsel, the Court rules as follows:

The Court grants the *Franks* Motion as to the following five warrants: warrant number 2766701 directed to Cache Valley Bank; warrant number 2766631 directed to AFCU; warrant number 2766641 directed to AFCU; warrant number 2766651 directed to AFCU; and warrant number 2764191 directed at intervener company headquarters (collectively the "Subject Warrants"). Movants' *Franks* Motion is denied as to warrant numbers 2766761, 2766731, 2766881, 2766721, and 2766751, for the reasons stated in the July 16, 2024 ruling from the bench.

The basis for granting the *Franks* Motion to challenge the Subject Warrants is as follows:

A search warrant would not issue except upon probable cause, supported by oath or affirmation, and must particularly describe the person or place to be searched and the person, property or evidence to be seized. More specifically, the search warrant must be supported by an affidavit that there is probable cause to believe that the person, property or evidence to be seized was unlawfully acquired or is unlawfully possessed, has been used or is possessed for the purpose of being used to commit or conceal the commission of an offense, or is evidence of illegal conduct.

Here, the property and evidence to be seized by the Subject Warrants was broad. It included all cash, digital currency, negotiable instruments, credits, and other items of financial value held or in transit to, and all banking records associated with several financial accounts including the AFCU accounts in the name of Rudy Larsen, Jena Larsen, Adam Perea, Scandia, Rubicon and Smart Rain, and the cash value accounts in the names of the companies. It included all computers, servers, hard drives, external hard drives, thumb drives, SD cards, CDs, DVDs and other electronic storage devices (which may include personal electronic devices) that may contain accounting records, correspondence, business plans, business structure information and ownership records of Scandia, Rubicon and Smart Rain.

The warrants were broad enough to include all digital and hard copy files of payroll for H-2B visa employees, the Rubicon app, all leasing agreements and photographs of any and all properties. The warrants were broad enough to include all digital and hard copy files of correspondence, emails, passwords or internet browser histories related to the operation of Scandia, Rubicon and Smart Rain. In other words, the warrants were broad enough to include all correspondence, emails, passwords, internet browsing histories related to the operation of three separate businesses and in any related businesses regardless of the subject matter or the content of the correspondence, emails or passwords.

3

The warrants were broad enough to include all financial records for all three companies including financial statements, receipts, billing statements, H-2B visa employee pay stubs, check registers, signature cards, deposits, withdrawals, wire transfers, property titles, safe deposit boxes, contracts, accounting records, ledgers and organizational documents, and all personal electronic devices belonging to the defendants and any other employee on the premises at the time the warrant was executed.

In other words, the property and evidence to be seized was very broad, and the affidavits must have provided probable cause to believe that each place to be searched and all the property or evidence to be seized was unlawfully acquired or is unlawfully possessed, has been used or is possessed for the purpose of being used to commit or conceal the commission of the offense, or is evidence of illegal conduct.

Here, the illegal conduct alleged was human trafficking in violation of Utah Code Section 76-5-308, which provides that an actor commits human trafficking for labor if the actor recruits, harbors, transports, obtains, patronizes or solicits an individual for labor through the use of fraud, forced fraud or coercion, which may include threatening serious harm to or physical restraint against that individual or another individual; destroying, concealing, removing, complicating or possessing any passport, immigration document or other government-issued identification document; abusing or threatening abuse of the law or legal process against the individual or

4

another individual; using a condition of the individual being a debtor due to a pledge of the individual's personal services, the personal services of an individual under the control of the debtor, as a security for debt where the reasonable value of the services is not applied toward the liquidation of the debt, or the length and nature of those services are not respectively limited and defined; using a condition of servitude by means of any scheme, plan, or pattern intended to cause an individual to believe that if the individual did not enter into or continue a condition of servitude, the individual or another individual would suffer serious harm or physical restraint or would be threatened with abuse of legal process, or creating or exploiting a relationship where the individual is dependent upon the actor.

The other crime that was alleged as a basis for the warrants was benefiting from human trafficking under Utah Code Section 76-5-309(2), which provides that an actor is a party to the offense if the actor benefits, receives or exchanges anything of value from knowing participation in human trafficking. Accordingly, the elements of the crime of benefitting from human trafficking are the same as those in Section 76-5-308, with the addition of whether the actor benefitted from the crime. To establish probable cause issuance of the Subject Warrants, we are looking at the same human trafficking definition under Section 76-5-308.

The reviewing magistrate must ask him or herself whether, based on the facts alleged in the affidavit, there is probable cause to believe that the

5

place to be searched is likely to hold the property and materials to be seized and whether there is probable cause to believe that the property and materials or documents to be seized are evidence of the crime being investigated.

A concrete example will help illustrate the analytical process of a reviewing magistrate. The magistrate asks if there is probable cause to believe that Adam Perea's AFCU banking records and the funds in the account are evidence that someone recruited, harbored, transported, obtained, patronized or solicited an individual through force, fraud or coercion, perhaps because those bank records or funds are evidence that someone threatened serious harm to or physical restraint against an individual or because those bank records are evidence that someone destroyed, concealed, removed, confiscated, or possessed an individual's passport or immigration document, etc. If, ultimately, the answer is yes, the magistrate believes that there is probable cause to believe that the property and documents being searched will be found in the place to be searched, and that the property and documents will be evidence of the crime identified, then the warrant is approved.

In considering whether to authorize a search warrant, a magistrate must rely on the representations of the investigating officer who sets forth in the warrant affidavit the facts the officer contends are sufficient to meet the probable cause standard. And, although not every recited fact need be

6

correct, the *Franks* Court explained that the assertions must be truthful in the sense that the information put forth is believed or appropriately accepted by the affiant is true. *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978).

When a defendant believes that the investigating officer's assertions in support of the search warrant were untruthful, the defendant may seek an evidentiary hearing, a *Franks* hearing, to prove that claim. Before a defendant is entitled to a *Franks* hearing, there must be allegations of deliberate falsehood or reckless disregard of the truth or allegations that the investigating officer intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading.

In addition, the defendant's allegations must be accompanied by an offer of proof. Regardless of whether the defendant challenges the warrant based on false or misleading statements or on material omissions, the defendant's allegations must be accompanied by an offer of proof and their attack must be more than conclusory and must be supported by more than a mere desire to cross-examine the investigating agent or the agent who signed off on the affidavit. Stated differently, allegations of negligent or innocent mistakes do not entitle a defendant to a *Franks* hearing, nor do conclusory allegations of deliberately or recklessly false information. *Franks*, 438 U.S. at 171-72.

7

In addition to the burden of coming forward with an offer of proof that the statements or omissions in the affidavit were false and/or misleading, the defendant must also demonstrate that the allegedly false statement is necessary to the finding of probable cause and/or that the affidavit supplemented by the omitted information would not have been sufficient support to a finding of probable cause. *Franks*, 438 U.S. at 171-72.

In this case, Movants have carried their initial burden of making a substantial showing with a combination of both false affirmative statements and misleading material omissions in four categories.

First, Movants have come forward with a sufficient proffer of evidence that Agent Jeter's statements to the effect that defendants or the companies withheld or denied H-2B workers access to their immigration documents were knowingly false or stated with a reckless disregard for their falsity. There are several examples including proffers of proof where alleged victims and company witnesses told Agent Jeter that the immigration documents were not withheld. Defendants have also proffered evidence that, in some cases, alleged victims provided Agent Jeter their immigration documents to photocopy. There is also evidence that Agent Jeter was in possession of correspondence from the companies' lawyers to the alleged victims which explained their current immigration status, including the status of their visa renewals and their continuing ability to work legally for the companies. Based on those proffers of evidence, Movants have carried

8

their burden of making a substantial showing that Agent Jeter's statements that the defendants withheld or denied H-2B visa workers access to their immigration documents were knowingly false or at a minimum made with a reckless disregard for the truth.

Second, Movants have made a sufficient proffer of the evidence that Agent Jeter's statements that alleged victims were threatened with deportation were false or, even if technically true, that he made material omissions in the Subject Warrant affidavits that changed the meaning of those statements in a way that would have affected the probable cause determination. Movants proffered evidence that Agent Jeter was told by alleged victims and by witnesses that the threats of deportation were instances where someone explained to the alleged victims that if they failed to appear for work or took work with a different employer outside the scope of their visa, that the company sponsoring the H-2B visa would need to report them to the Department of Labor. In a particularly cogent example, Movants point out that the affidavits state that Defendant Jena Larsen had complained that another management employee was not hard enough on the H-2B visa workers, the implication being that she was advocating that they be treated more poorly or unfairly. In fact, the evidence in Agent Jeter's possession showed that Ms. Larsen was expressing concern that the other management employee was failing to comply with the companies' legal obligation to report H-2B visa workers that were in violation of the

9

conditions of their visa to the Department of Labor. That omitted information completely changes the tenor and understanding of the what may be a technically true statement that Ms. Larsen had complained to another person that they were not being hard enough on H-2B visa workers, but the implication is exactly opposite of what is implied in Agent Jeter's affidavits when that missing information is supplied.

The proffer of information and evidence by Movants of many instances where Agent Jeter stated that alleged victims complained they were threatened with deportation, the omitted material information that the alleged threats were made in the context of them being informed of the companies' obligation to report to the Department of Labor if they violated their contracts, left work with the company or failed to appear for work, completely changes the context. Even if it were a technically true statement that the company told the alleged victims they may be deported if they failed to appear for work, including the omitted information completely changes the context and the understanding of allegations, such that the statements no longer support probable cause of labor trafficking.

Third, Movants have also made a sufficient proffer of evidence that Agent Jeter's statements that all H-2B visa workers were forced to sign a rent deduction policy was a knowingly false statement or made with a reckless disregard for its falsity or, even if technically true, was impacted by material omissions. Defendants proffered evidence that at the time Agent

10

Jeter made the statements he had been told by alleged victims that they had a choice whether to sign the rent deduction policy and/or to sign up for company provided housing. Yet, Agent Jeter states in the search warrant affidavits: "They were forced to sign the rent deduction policy." If Movants' proffer is correct, that would be a false statement. Moreover, even if it is technically true that certain alleged victims felt compelled to sign the policy, which is different from being forced to do so, Agent Jeter omitted material information about the timing of their agreement to use company housing. As written, the affidavits suggest that defendants used some undue influence such as threatening deportation or withholding immigration documents to force alleged victims to sign a rent deduction policy. At least, that is what is implied by the affidavits as they stand. At the very least, the affidavits imply that the defendants waited until the H-2B visa workers had arrived in Utah and were faced with having no accommodations and, therefore, were forced to sign the rent deduction policy or have nowhere to live.

Even if technically true that some alleged victims felt compelled or coerced to sign the rent deduction policy, the nature and extent of that compulsion was misleading because the remainder of the affidavits was misleading about the type and kind of leverage that the defendants had over the alleged victims at the time they made the decision to sign it. Agent Jeter failed to include information in his possession that alleged victims made the election prior to applying for or receiving their H-2B visas when at home in

11

their country of origin. In other words, the only compulsion they would have felt was the motivation to arrange housing so that they could participate in the H-2B visa program, which is a materially different representation and story than what is portrayed by the affidavits, which is that they were compelled to do so by either the withholding of their immigration documents, the withholding of their funds or money, or otherwise.

Fourth, Movants have carried the burden of making a substantial showing by offer of proof that Agent Jeter's statements that defendants threatened to and did withhold earnings from the alleged victims if they had left employment with the companies were false. The H-2B visa workers' access to Rubicon's payroll portal was disabled when they left employment, but they retained access to all earnings in their FinTwist account. Moreover, Movants have proffered evidence that Agent Jeter was in possession of information regarding the FinTwist cards, how they worked, and statements by alleged victims that were contrary to his representations to the court. Accordingly, there has been a sufficient proffer of evidence that, at the time Agent Jeter made the statements, he either knew that they were false or had information in his possession that would have contradicted what he said, and he had a reckless disregard for the truth.

I have considered the State's argument that, even if Agent Jeter's statements were intentionally false or made with a reckless disregard for the truth, there is still probable cause for the issuance of the warrant, so a

12

*Franks* hearing is not necessary. In some respects, I agree that any one of these falsehoods and material omissions standing alone would have been unlikely to negate the probable cause for the warrant. However, that is not what we are faced with here.

Because Movants have carried their burden of making a preliminary showing regarding several falsehoods, discussed above, it begins to paint a very different picture of the alleged crime and the reasonableness of the investigation into all aspects of the operation of the companies. In other words, we have sworn requests for very broad warrants that seeks documents and information about all aspects of the operation of three companies. If Movants are able to prove one or more than one of these falsehoods in combination with others, it begins to paint a very different picture of what scope of warrant should have been approved.

I have gone back to the affidavits and excised the allegedly false and misleading statements and have included the material omissions. When I do so, what I am left with is an affidavit that alleges that H-2B visa workers were told that they would be able to work full time and that all materials and tools would be provided without cost. And that, in spite of these representations, workers in some cases were charged for materials and tools and were not scheduled for 40 hours per work week. Those allegations provide probable cause at most for a search of the company's H-2B visa workers' payroll records including copies of their pay stubs. But, it certainly

13

would not have supported probable cause to search the companies and each defendants' bank records, their personal electronic devices, all company communications, and all financial records of all the companies.

In other words, the picture painted by the affidavits is that of the defendants and the companies were engaging in a widespread labor trafficking scheme across multiple domains, withholding immigration documents abusively, using those threats to financially exploit workers dependent on the companies including through the rent deduction program. If true, those widespread actions may well have supported probable cause to believe that evidence would be found throughout the companies' correspondence, documents and files.

However, it is possible, perhaps even probable given Movants' proffer of evidence, that Agent Jeter's affidavits are replete with false and misleading statements on many of these main points, and that the material omissions continue to foster a misleading overall picture of the situation. One way the companies' treatment of H-2B visa workers may have run afoul of regulations in some less nefarious ways such as by telling them that they would not be charged for tools, and then being charged for tools, or, telling workers that they could anticipate full-time work would be available, and then not having that much work to schedule them.

That is a very different picture in magnitude of the wrongdoing and substantially changes the nature of the probable cause for the warrants.

14

Considering the omitted information and purging the information claimed to be misleading, there would not have been probable cause to support the broad searches approved here. If Movants were able to carry their burden of proving the existence of falsehoods and material omissions in the affidavits as permitted by law after the *Franks* hearing, there would have been at best probable cause only to search for a very small subset of the property and evidence to be seized, not the broad categories identified by the Subject Warrants.

In other words, there would not have been probable cause for the Subject Warrants as requested and approved here. Those warrants would have been rejected to be pared down to only search for the documents, information and property for which there was probable cause. The Subject Warrants as written would have been rejected.

For the reasons stated above, I find that Movants have carried their burden that entitles them to a *Franks* hearing, to gather the evidence, and then to make an argument and see if they can carry their burden by a preponderance of proof that Agent Jeter knowingly swore to false material information in the Affidavits, swore to such information with  a reckless disregard for the truth, and/or materially omitted facts that would have changed the meaning of a technically true statement in the warrant.

IT IS SO ORDERED.

15

**JUDGE'S ELECTRONIC SIGNATURE APPEARS AT THE TOP OF THE FIRST PAGE OF THIS DOCUMENT**

16