# EXHIBIT C

(Order Granting Motion for Attorney Fees)

**IN THE DISTRICT COURT OF UTAH**
**SECOND JUDICIAL DISTRICT, DAVIS COUNTY**

| | |
|---|---|
| STATE OF UTAH,<br><br>                  Plaintiff,<br><br>v.<br><br>RUDY LARSEN, TYLER BRINKMAN, BRANDON FLOYD, ADAM PEREA, CLAYTON PHILLIPPS, KIRK SIMMONS, and JENNA LARSEN,<br><br>                  Defendants. | **RULING AND ORDER GRANTING:**<br><br>**(1) SUPPLEMENTAL MOTION FOR ATTORNEY FEES (Dkt. 293);**<br><br>**(2) MOTION FOR AWARD OF COSTS AND ATTORNEY FEES (Dkt. 481); &**<br><br>**(3) MOTION FOR ATTORNEY FEES AND SUPPORTING DECLARATION (Dkt. 488)**<br><br>Consolidated Case No. 231702289<br><br>Judge Rita M. Cornish |

This matter comes before the Court on three motions: (1) Defendant Brandon Floyd's *Supplemental Motion for Attorney Fees and Supporting Declaration* (Dkt. 293) (the "Floyd Motion"); (2) Intervenors Rubicon Contracting LLC, Scandia Company LLC, and SmartRain Systems LLC's (collectively, the "Intervenors") *Motion for Award of Costs and Attorney Fees* (Dkt. 481) (the "Intervenor's Motion"); and (3) Defendant Jena Larsen's *Motion for Attorney Fees and Supporting Declaration* (Dkt. 488) (the "Larsen Motion"). The Floyd Motion, Intervenor's Motion, and Larsen Motion are referred to collectively as the "Motions."

The Court held a hearing on the Motions on December 27, 2024 (the "Hearing"). At the Hearing, Plaintiff the State of Utah was represented by Kaytlin Beckett and Che Arguello. Defendant Brandon Floyd ("Floyd") was present and represented by Mark Moffat and Staci

Visser; Defendant Jena Larsen ("Jena")[1] was present and represented by Keith Woodwell; and Intervenors were represented by Scott Hagen.

Having considered the Motions and related pleadings, the record before the court; argument presented at the Hearing; and being otherwise fully informed, the Court **FINDS**, **CONCLUDES**, and **ORDERS**:

<u>**FINDINGS**</u>

1.      Rubicon Contracting, LLC ("Rubicon") is a general construction company offering services in residential and small commercial construction, handyman work, and comprehensive building maintenance, the last of which includes snow removal services in the winter.  Rubicon is affiliated with other business entities, including Scandia Company LLC ("Scandia") and SmartRain Systems, LLC ("SmartRain") through some common ownership. For example, Rudy Larsen ("Rudy") is the sole governing person of Scandia; and Rudy and Jena are the sole managers of SmartRain.  Defendants Jena, Tyler Brinkman ("Brinkman"), and Floyd are "partners" and Defendant Kirk Simmons ("Simmons") is the CFO of Scandia or Scandia Family.  Defendant Clayton Phillipps ("Phillipps") is the COO of Rubicon.  Defendant Adam Perea ("Peresa") is a human resource manager of Rubicon.

2.      On November 23, 2023, the Utah Attorney General (the "AG") obtained warrants and seized multiple financial accounts in the course of its investigation of the charges filed in these consolidated cases.  Among the accounts seized were accounts owned by Intervenors, Floyd, and Jena.

3.      On December 1, 2023, the State stipulated to the intervention of Intervenors, and the Court granted that motion on December 4, 2023.  *See Stipulated Motion to Intervene* (Dkt.

---

[1] Jena Larsen's name was mis-spelled in the information and, therefore, the Court's docket.  The Court uses the correct spelling here.

30), filed Dec. 1, 2023; *Order Granting Stipulated Motion to Intervene* (Dkt. 39), entered Dec. 4, 2023. That same day, the Court entered a stipulated order to release $500,000 from certain of Intervenors' accounts. *See Order for Release* (Dkt. 41), entered Dec. 4, 2023.

4.    On December 5, 2023, the State served Defendants and Intervenors with Notices of Intent to Seek Forfeiture of the funds that had been seized (the "December 5, 2023 Notices"). *See Joint Motion for Mandatory Return of Seized Property* (Dkt. 202, Case No. 231702291), at Exhibit A (Dkt. 203, Case No. 231702291) (Exhibit A includes copies of Notices of Intent to Seek Forfeiture, dated December 5, 2023, served on Intervenors, Floyd, Perea, Rudy, Jena, and Brinkman).

5.    On December 5, 2023, Intervenors moved to protect their rights with respect to their seized accounts, including by seeking a release of the funds held in the accounts. *See, e.g.*, *Ex Parte Motion to Release Finds for Business Operations During the Week of December 4, 2023* (Dkt. 47) (the "Motion to Release Funds"), filed Dec. 5, 2023. The State objected to the Motion to Release Funds on the ground that, among other things, Intervenors had not properly intervened in the action to assert their rights.

6.    In light of the State's argument that Intervenors were not properly before the Court, Intervenors filed a *Motion to Intervene by Rubicon Contracting LLC, Scandia Company LLC, and SmartRain Systems LLC* (Dkt. 56) (the "Motion to Intervene"), on December 6, 2023, seeking to intervene in the action to assert their rights with respect to the seized accounts. In the Motion to intervene, Intervenors proffered that, in addition to the seizure of the Intervenors' accounts, "[c]ounsel for the [Intervenors] were served with a 'Notice of Intent to Seek Forfeiture' of the bank accounts on December 5, 2023." *See id.* at p. 2.

7.      On December 8, 2023, the Court held a hearing on the Intervenor's Motion to Release Funds.  At that hearing, Ms. Thomas, counsel for the Intervenors, again asserted that the AG had served the Companies with notice of forfeiture.[2]  When responding to Intervenors' argument during the hearing, Ms. Beckett, counsel for the State, did not deny that the AG had served Intervenors' counsel with a notices of forfeiture.[3]

8.      Following the hearing, the Court granted Intervenor's Motion to Release Funds. *See Order Granting Intervenor's Motion to Release Funds and Protective Order* (Dkt. 71) (the "Order Releasing Funds"), entered December 8, 2023.  However, as part of its Order Releasing Funds, the Court required Intervenors to post a $1.2 Million bond "to preserve the availability of the property or the property's equivalent for forfeiture." *See  id.* at ¶¶4, 6(g).  Notably, this was the amount that the AG argued was an estimate of the potential restitution that may be owed to victims of the charged crimes.[4]  And importantly, the only accounts subject to the Court's Order Releasing Funds were the Intervenor's accounts.  Floyd's and Jena's accounts remained seized and frozen.

9.      On December 19, 2023, the State filed a *Notice of Intent to Seek Forfeiture* (Dkt. 83) (the "December 19, 2023 Notice") with the Court.  The December 19, 2023 Notice filed with the Court was not a copy of the December 5, 2023 Notices—it was a new notice of forfeiture— which again provided notice that the State would seek forfeiture of funds held in Intervenors', Floyd's, and Jena's accounts.

---

[2] Audio Recording, December 8, 2023 Hearing ("Dec. 8, 2023 Hr'g Audio"), Tape No. BT2 12082023, at 10:08 AM – 10:10 AM ("Since they have now served the Companies with notice—the notice in and of itself creates an obligation to not dissipate the assets. . . ."); *see also id.* at 10:32 AM (stating that at time Intervenor's filed their Motion to Release funds on December 5, 2023, they had not yet been served with the Notice of Forfeiture).
[3] At one point during the hearing, the Court referenced the State's forfeiture claim when asking State's counsel a question.  *See* Dec. 8, 2023 Hr'g Audio at 10:23AM.  State's counsel did not inform the Court's that it was mistaken in its perception that a forfeiture claim had been initiated.
[4] *See* Dec. 8, 2023 Hr'g Audio at 10:21 AM.

10.      On February 14, 2024, Floyed filed a *Joint Motion for Mandatory Return of Seized Property* (Dkt. 202, Case No. 231702291) (the "Joint Motion"), which was joined by Intervenors, Jena, and others, arguing that the property seized by warrant must be returned due to (a) deficiencies in the AG's notice; and (b) the AG's failure to take one of the statutorily required actions to continue holding the property for forfeiture.

11.      On March 4, 2024, the State filed a *Response to Joint Motion for Mandatory Return of Seized Property* (Dkt. 239, Case No. 231702289) ("Joint Motion to Return Property") but did not dispute that the AG had failed to pursue any of the appropriate statutory avenues to continue holding the seized property.

12.      Minutes before Floyd filed his reply memorandum[5] in support of the Joint Motion to Return Property and request to submit, the State filed a *Notice of Election Not to Pursue Forfeiture of Funds* (Dkt. 253), on March 12, 2024.

13.      On March 26, 2024, the Court issued a *Ruling and Order Granting Joint Motion for Mandatory Return of Seized Property* (Dkt. 264, Case No. 231702291) (the "March Order") that granted the Joint Motion to Return Property and released the cash bond posted by Intervenors.

14.      Thereafter, Intervenors, Floyd, and Jena filed the instant Motions seeking an award of fees and costs incurred in litigating the legality of the State's seizure of their funds for forfeiture.

---

[5] *See* Docket 255, Case No. 231702291.

## CONCLUSIONS OF LAW

15.     Intervenors, Floyd, and Jena each seek an award of attorney fees and costs incurred in the course of litigating the State's claim for forfeiture of the funds held in their accounts.

### I.     Movant's Are Prevailing Claimants Entitled to an Award of Fees and Costs.

16.     Utah Code section 77-11b-305(1) provides: "In a forfeiture proceeding under this chapter, a court *shall* award reasonable legal costs and attorney fees to a prevailing claimant." Utah Code Ann. § 77-11b-305(1) (emphasis added).

17.     Here, there is no question that Intervenors, Floyd, and Jena are the prevailing claimants in a forfeiture proceeding.  Ultimately, the Court entered an order releasing all funds held or seized in their accounts pursuant to the December 5, 2023 Notices and the December 19, 2023 Notice because the State had failed to comply with the procedural requirements for forfeiture. *See supra* Paragraph 14.  However, the State opposes Intervenors', Floyd's, and Jena's request for attorney fees on a few different grounds.

18.     First, the State asserts that Intervenors did not prevail because none of their funds were subject to forfeiture.  The State points out that the Court released Intervenor's funds on December 8, 2024.  Thus, by the time the State filed and served the December 19, 2023 Notice, there were no longer any of the Intervenor's funds being frozen or held.  The Court rejects the State's arguments for at least two reasons.  First, the State's argument ignores the fact that Intervenors were served with the December 5, 2023 Notices[6] and, as a consequence, all funds except the $500,000 previously released by stipulated order were seized.  "Seized property"

---

[6] In its briefing and at the hearing, the State argued that no notices of forfeiture were served on December 5, 2023, and that the Court had gotten it wrong when it previously found that they were.  *See, e.g., State's Response to Defendant Jena Larsen's and Intervenors' Motion for Costs and Attorney Fees* (Dkt. 526) at p. 4, n.3. The State's position is unsupportable, and its misunderstanding of the facts undercuts many of its arguments.  The December 5, 2023 Notices can be found in the record at Docket No. 203, in Case No. 231702291.

"includes property that the agency seeks to forfeit." Utah Code Ann. § 77-11a-101(22). Thus, all funds became "seized" as that term is defined by statute, when the AG served the December 5, 2023 Notices—and it remained seized and subject to forfeiture until the Court entered the March Order.

19. Second, even if the December 5, 2023 Notices were ineffective for some reason, the State's argument also ignores the fact that, although the Court entered an order releasing *Intervenors* (but not Floyd's or Jena's) funds on December 8, 2023, the Order Releasing Funds required Intervenors to post a $1.2 Million bond "to preserve the availability of the property or the property's equivalent for forfeiture." *See supra* Paragraph 9. That 1.2 Million was subject not only to the December 5, 2023 Notices but also the December 19, 2023 Notice. Because $1.2 Million of Intervenors' fund remained seized and frozen (by being posted as a bond), the Court is not surprised the Intervenors continued to expend attorney fees and costs seeking a release of those funds after December 8, 2023, and until the issuance of the March Order.

## II. The Attorney Fees Sought by Movants Are Reasonable.

20. The State also makes a passing argument that the fees incurred by Intervenors were not reasonable. The Court disagrees.

21. In Utah, the reasonableness of an attorney fee is "not controlled by any set formula." *Dixie State Bank v. Bracken*, 764 P.2d 985, 989 (Utah 1988). Rather, the Utah Supreme Court has directed district courts to find the answer to the four following questions when considering the reasonableness of attorney fees:

    a. What legal work was actually performed?

    b. How much of the work performed was reasonably necessary to adequately prosecute the matter?

    c. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?

> d. Are there circumstances which require consideration of additional factors . . . ?

*Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988). The factors that the district court may consider when answering the fourth question of the analysis include but are not limited to:

> "The difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spend on the case, the fee customarily charged in the locality for similar service, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved."

*Grove Bus. Park LC v. Sealsource Int'l LLC*, 2019 UT App 76, ¶53, 443 P.3d 764 (quoting *Dixie State Bank v. Bracken*, 764 P.2d 985, 989 (Utah 1988) (cleaned up)); *accord Cabrera v. Cottrell*, 694 P.2d 622, 625 (Utah 1983). District courts may also consider Rule 1.5 of the Utah Code of Professional Responsibility, which specifies the elements that should be considered in setting reasonable attorney fees.

22.     Taking the questions out of order, the Court finds and concludes that the billing rates, between $265-$500 per hour charged by Intervenors', Floyd's, and Jena's counsel are reasonable and consistent with the fees customarily charged in Davis County for legal services in criminal/forfeiture matters.

23.     The Court has reviewed the itemized billing entries compiled by counsel and set forth in their declarations.  The Court finds that the legal work described was performed by the attorneys and were reasonably necessary to litigate the forfeiture claim.  Moreover, the hours spent on each task were reasonable, particularly in light of the complexity of these consolidated cases.  These have not been the typical criminal cases.  Instead, they have presented complex search, seizure, and forfeiture issues rarely litigated that required special expertise.

## ORDER

Based on the foregoing findings and conclusions, the court **ORDERS:**

24.     Intervenors' Motion (Dkt. 481) is **GRANTED**.  Judgment shall issue in favor of Intervenors and against the Utah Office of the Attorney General in the amount of $37,026.50, plus post-judgment interest at the statutory rate.

25.     Floyd's Motion (Dkt. 293) is **GRANTED**. Judgment shall issue in favor of Floyd and against the Utah Office of the Attorney General in the amount of $6,643.00, plus post-judgment interest at the statutory rate.

26.     Jena's Motion (Dkt. 488) is **GRANTED**. Judgment shall issue in favor of Jena and against the Utah Office of the Attorney General in the amount of $3,184.00, plus post-judgment interest at the statutory rate.

**Dated:**    12 February 2025.

_____
Judge Rita M. Cornish

**CERTIFICATE OF NOTIFICATION**

I certify that a copy of the attached document was sent to the following people for case 231702289 by the method and on the date specified.

EFILING: CHE ARGUELLO

EFILING: CRAIG BARLOW

EFILING: KAYTLIN BECKETT

EFILING: ERIC BENSON

EFILING: NATALIE BENSON

EFILING: MELINDA BOWEN

EFILING: JIM BRADSHAW

EFILING: NATHAN CRANE

EFILING: SCOTT HAGEN

EFILING: SHELBY HUGHES

EFILING: MICHAEL LANGFORD

EFILING: SKYE LAZARO

EFILING: MATTHEW LEWIS

EFILING: MCKENNA MATHIE

EFILING: MARK MOFFAT

EFILING: BRETT PARKINSON

EFILING: KATHERINE PEPIN

EFILING: ALEXANDER RAMOS

EFILING: WALTER ROMNEY JR

EFILING: JACOB TAYLOR

EFILING: JAMIE THOMAS

EFILING: RICHARD VAN WAGONER

EFILING: STACI VISSER

EFILING: KEITH WOODWELL

EFILING: EARL XAIZ

02/12/2025          /s/ TRESA KOSEC

Date: _____     _____

Signature

02-12-2025 09:02 AM                                                      Page 1 of 1