Jason W. Hardin (8793)
Jeffery B. Setness (20026)
Stephen P. Horvat (6249)
J. Mason Kjar (14227)
Trevor J. Adkins (18297)
FABIAN VANCOTT
95 South State Street, Ste. 2300
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
jhardin@fabianvancott.com
jsetness@fabianvancott.com
shorvat@fabianvancott.com
mkjar@fabianvancott.com
tadkins@fabianvancott.com

Bradley R. Blackham (8703)
Andrew R. Hopkins (13748)
Assistant Utah Attorneys General
Derek E. Brown (10476)
Utah Attorney General
160 East 300 South, 6th Floor
P.O. Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
bblackham@agutah.gov
arhopkins@agutah.gov

*Attorneys for Defendants Sean D. Reyes, Leo Lucey, Michael Adam Jeter, and Kaytlin Virginia Beckett*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| RUDY LARSEN, an individual; JENA LARSEN, an individual; RUBICON CONTRACTING, LLC, a Utah limited liability company; SCANDIA COMPANY, LLC, a Utah limited liability company; and SMART RAIN SYSTEMS, LLC, a Utah limited liability company,<br><br>    Plaintiffs,<br><br>v.<br><br>SEAN D. REYES, an individual; LEO LUCEY, an individual; MICHAEL ADAM JETER, an individual; and KAYTLIN VIRGINIA BECKETT, an individual,<br><br>    Defendants. | **MOTION TO DISMISS**<br><br>Case No. 2:25-CV-00963-HCN-JCB<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Jared C. Bennett |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

SPECIFIC RELIEF SOUGHT AND GROUNDS FOR RELIEF .................................. 1

STATEMENT OF ALLEGED FACTS ......................................................................... 1

LEGAL STANDARD .................................................................................................... 5

SUMMARY OF ARGUMENT ...................................................................................... 7

ARGUMENT ................................................................................................................. 8

I.      THE COURT SHOULD DISMISS ALL CLAIMS AGAINST DEFENDANT
        BECKETT ON THE GROUND OF ABSOLUTE PROSECUTORIAL
        IMMUNITY. ...................................................................................................... 8

II.     THE COURT SHOULD DISMISS ALL CLAIMS AGAINST DEFENDANT
        REYES BECAUSE OF A LACK OF INVOLVEMENT AND ABSOLUTE
        IMMUNITY. .................................................................................................... 12

        A.      The Complaint Does Not Allege, Let Alone Plausibly Allege, Any
                Personal Participation or Involvement by Reyes in the Alleged Violations
                of Rights. ............................................................................................... 12

        B.      In Any Event, Reyes Is Entitled to Absolute Prosecutorial Immunity for
                Any Personal or Direct Involvement in the State Criminal Action. ..................... 17

III.    THE COURT SHOULD DISMISS THE THIRD CLAIM. ............................... 18

        A.      All Defendants Are Entitled to Qualified Immunity from the Third Claim
                Because There Is No Clearly Established Constitutional Right Prohibiting
                Media Presence from the Execution of a Warrant on *Commercial Property* ........ 18

        B.      Regardless, the Court Should Dismiss the Third Claim as to Defendants
                Reyes, Beckett, and Jeter Because the Complaint fails to Plausibly Allege
                Their Personal or Direct Involvement with the Media Presence. ......................... 23

IV.     THE COURT SHOULD DISMISS THE FIRST, SECOND, AND FOURTH
        CLAIMS AS TO ALL DEFENDANTS BECAUSE, IF REVISED TO REFLECT
        THE COMPLAINT'S ALLEGATIONS OF INACCURACIES, THE WARRANT
        AFFIDAVIT WAS STILL SUPPORTED BY ARGUABLE PROBABLE CAUSE. ....... 24

V.      THE COURT ALSO SHOULD DISMISS THE FIRST, SECOND, AND
        FOURTH CLAIMS AS TO DEFENDANT LUCEY BECAUSE THE
        COMPLAINT FAILS TO PLAUSIBLY ALLEGE HIS PERSONAL OR DIRECT
        INVOLVEMENT. .................................................................................................. 31

VI.     THE FOURTH CLAIM ALLEGING MALICIOUS PROSECUTION FAILS AS
        TO ALL DEFENDANTS FOR MULTIPLE ADDITIONAL REASONS........................ 32

        A.      The Complaint Fails to Allege the Involvement of the Three Rubicon
                Entities, Who Lack Standing to Bring Any Malicious Prosecution Claim........... 32

        B.      The Fourth Claim Fails in Its Entirety Because the Larsens Were Not
                "Seized," as Required by the Fourth Amendment. ................................................. 34

        C.      The Original Action Did Not Terminate in Favor of Plaintiffs, but Instead
                Was Dismissed Without Prejudice in Deference to a Federal Investigation. ......... 35

CONCLUSION.................................................................................................................. 37

## TABLE OF AUTHORITIES

**Cases**

*Alvarado v. KOB-TV, L.L.C.*
493 F.3d 1210 (10th Cir. 2007) ........................................................................... 27

*Archuleta v. McShan*
897 F.2d 495 (10th Cir. 1990) ............................................................................. 33

*Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*
159 F.3d 1253 (10th Cir. 1998) ..................................................................... 20, 21

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................... 6, 12, 13, 16, 24, 32

*Bailey v. Twomey*
791 F. App'x 724 (10th Cir. 2019) ............................................. 19, 26, 27

*Becker v. Kroll*
494 F.3d 904 (10th Cir. 2007) ............................................................................. 34

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................................................ 6

*Bledsoe v. Carreno*
53 F.4th 589 (10th Cir. 2022) .............................................................................. 6

*Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*
691 F. App'x 515 (10th Cir. 2017) ...................................................................... 1

*Burns v. Reed*
500 U.S. 478 (1991) .......................................................................................... 10

*Carabajal v. City of Cheyenne*
847 F.3d 1203 (10th Cir. 2017) ......................................................................... 20

*Chilcoat v. San Juan County*
41 F.4th 1196 (10th Cir. 2022) ..................................................................... 10, 12

*City and Cnty. of S.F. v. Sheehan*
575 U.S. 600 (2015) .......................................................................................... 21

*City of Escondido v. Emmons*
586 U.S. 38 (2019) ............................................................................................ 21

*Cortez v. McCauley*
478 F.3d 1108 (10th Cir. 2007) ......................................................................... 26

*Dodds v. Richardson*
614 F.3d 1185 (10th Cir. 2010) ..................................................................... 15, 16

*Est. of Booker v. Gomez*
    745 F.3d 405 (10th Cir. 2014) ......................................................................... 19

*Est. of Jensen by Jensen v. Clyde*
    989 F.3d 848 (10th Cir. 2021) ......................................................................... 15

*Franks v. Delaware*
    438 U.S. 154 (1978) ..................................................................................... 4, 26

*GFF Corp. v. Associated Wholesale Grocers, Inc.*
    130 F.3d 1381 (10th Cir. 1997) ......................................................................... 7

*Gutierrez v. Cobos*
    841 F.3d 895 (10th Cir. 2016) ......................................................................... 19

*Handy v. City of Sheridan*
    636 F. App'x 728 (10th Cir. 2016) ................................................................... 27

*Hanlon v. Berger*
    526 U.S. 808 (1999) ................................................................................... 21, 22

*Illinois v. Gates*
    462 U.S. 213 (1983) ......................................................................................... 28

*Imbler v. Pachtman*
    424 U.S. 409 (1976) ..................................................................................... 9, 12

*Jacobsen v. Deseret Book Co.*
    287 F.3d 936 (10th Cir. 2002) ....................................................................... 7, 27

*Kalina v. Fletcher*
    522 U.S. 118 (1997) ....................................................................................10, 11

*Kansas Motorcycle Works USA v. McCloud*
    569 F. Supp. 3d 1112 (D. Kan. 2021) .............................................................. 25

*Kapinski v. City of Albuquerque*
    964 F.3d 900 (10th Cir. 2020) ......................................................................... 26

*Kaufman v. Higgs*
    697 F.3d 1297 (10th Cir. 2012) ....................................................................... 25

*Keith v. Koerner*
    707 F.3d 1185 (10th Cir. 2013) ....................................................................... 19

*Llacua v. W. Range Ass'n*
    930 F.3d 1161 (10th Cir. 2019) ......................................................................... 6

*Malley v. Briggs*
    475 U.S. 335, (1986) ....................................................................................... 20

*Manuel v. Joliet*
    580 U.S. 357 (2017) ......................................................................................... 34

iv

*Minnesota v. Carter*
  525 U.S. 83 (1999) .................................................................................................... 22

*Mullenix v. Luna*
  577 U.S. 7 (2015) ...................................................................................................... 20

*New York v. Burger*
  482 U.S. 691 (1987) .................................................................................................. 22

*Nielander v. Board of County Comm'rs*
  582 F.3d 1155 (10th Cir. 2009) ..................................................................... 10, 18, 35

*Pearson v. Callahan*
  555 U.S. 223 (2009) .............................................................................................. 19, 20

*Price v. Cochran*
  66 F. App'x 781 (10th Cir. 2003) .............................................................................. 25

*Puller v. Baca*
  781 F.3d 1190 (10th Cir. 2015) ................................................................................. 27

*Rachamim v. Ortiz*
  147 F. App'x 731 (10th Cir. 2005) ............................................................................ 20

*Rehberg v. Paulk*
  566 U.S. 356 (2012) .................................................................................................. 26

*Robbins v. Oklahoma*
  519 F.3d 1242 (10th Cir. 2008) ................................................................. 6, 18, 20, 24, 32

*Schmidt v. Stassi*
  250 F.Supp.3d 99 (E.D. La. April 21, 2017) ............................................................ 23

*Schneider v. City of Grand Junction Police Dep't*
  717 F.3d 760 (10th Cir. 2013) ....................................................................... 14, 15, 31

*Shrum v. Cooke*
  60 F.4th 1304 (10th Cir. 2023) ................................................................ 6, 24, 25, 33, 35, 37

*Stonecipher v. Valles*
  759 F.3d 1134 (10th Cir. 2014) ............................................................................ 25, 26

*Tal v. Hogan*
  453 F.3d 1244 (10th Cir. 2006) ......................................................................... 5, 7, 37

*Taylor v. Meacham*
  82 F.3d 1556 (10th Cir. 1996) ................................................................................... 27

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*
  551 U.S. 308 (2007) .................................................................................................... 7

*Thomas v. Kaven*
  765 F.3d 1183 (10th Cir. 2014) ................................................................................. 19

v

*Thompson v. Clark*
596 U.S. 36 (2022)........................................................................................................ 34, 35

*Tonkovich v. Kansas Board of Regents*
159 F.3d 504 (10th Cir.1998)............................................................................................ 20

*United States v. Basham*
268 F.3d 1199 (10th Cir. 2001) ......................................................................................... 28

*United States v. Rowland*
145 F.3d 1194 (10th Cir. 1998) ......................................................................................... 28

*United States v. Wicks*
995 F.2d 964 (10th Cir. 1993)........................................................................................... 28

*Van de Kamp v. Goldstein*
555 U.S. 335 (2009) .......................................................................................................... 18

*Vasquez v. Davis*
882 F.3d 1270 (10th Cir. 2018)...................................................................................... 7, 24

*Warnick v. Cooley*
895 F.3d 746 (10th Cir. 2018)...................................................................................... 10, 18

*White v. Pauly*
580 U.S. 73 (2017)............................................................................................................ 21

*Wilkins v. DeReyes*
528 F.3d 790 (10th Cir. 2008)........................................................................................... 33

*Wilson v. Layne*
526 U.S. 603 (1999).......................................................................................................... 21

*Wilson v. Montano*
715 F.3d 847 (10th Cir. 2013)........................................................................................... 16

*Wise v. City of Richfield*
No. Civ. 02-4274, 2005 WL 361492 (D. Minn. Feb. 14, 2005) ........................................ 22

*Ziglar v. Abbasi*
582 U.S. 120 (2017)..................................................................................................... 21, 23

**Statutes**

U.S. Const. amend. IV ...................................................................................................... 22

Utah Code Ann. Section 76-5-308 .................................................................................... 30

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 5, 37

Fed. R. Evid. 201(b)(2) .................................................................................. 4, 5, 37

Utah R. Crim. P. 7B(c) ....................................................................................... 36

## SPECIFIC RELIEF SOUGHT AND GROUNDS FOR RELIEF

This is a §1983 suit against the former Attorney General for the State of Utah, Defendant Sean D. Reyes ("**Reyes**"), and three state employees, Defendants Leo Lucey ("**Lucey**"), Michael Adam Jeter ("**Jeter**"), and Kaytlin Virginia Beckett ("**Beckett**"), arising out of a state investigation and prosecution for labor trafficking. The suit claims to seek "*no less than $1,000,000,000*" in compensatory damages plus punitive damages from these four individuals.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants respectfully submit this Motion to Dismiss all the claims in Plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be granted. As explained in more detail below, the claims fail on the grounds of absolute prosecutorial immunity, qualified immunity, and failure to plausibly plead direct involvement, supervisory liability, and constitutional violations.

## STATEMENT OF ALLEGED FACTS

The following statement of alleged facts are taken from Plaintiffs' Complaint as well as from court documents and proceedings referenced or quoted in the Complaint. In considering a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the Complaint as true. *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 518 (10th Cir. 2017) (unpublished). Defendants dispute many of the factual allegations asserted in the Complaint but present them herein as true solely for the purpose of bringing this Motion.[1]

---

[1] Defendants hereby expressly reserve all their rights to deny, supplement, or otherwise challenge all the alleged facts pleaded in the Complaint.

Plaintiffs are a husband-and-wife couple, Rudy and Jena Larsen, and three of their business entities, for which one or both of the Larsens are founders, managers, and/or board members.[2] The three business entity Plaintiffs, Rubicon Contracting, LLC, Scandia Company, LLC, and Smart Rain Systems, LLC, are collectively referred to herein as "**Rubicon**" or the "**Rubicon-entity-Plaintiffs**."

Beginning in May 2023, an investigative unit within the Office of the Utah Attorney General (the "**AGO**") known as the S.E.C.U.R.E. Strike Force ("**SECURE**"), which was created to combat crimes associated with illegal immigration and human trafficking, opened an investigation into suspected human labor trafficking at Rubicon.[3] The investigation included interviews with dozens of current and former Rubicon employees.[4]

In November 2023, some of Defendants[5] obtained warrants to search Rubicon's offices, seize Rubicon's corporate bank accounts, seize personal bank accounts, and arrest the Larsens and five other Rubicon employees.[6] In its warrant applications, Defendants reported they were seeking evidence of and seizing property and funds related to aggravated labor trafficking.[7]

---

[2] (Compl. ¶¶ 1-7.)

[3] (*Id.* ¶¶ 9, 23, 39.)

[4] (*Id.* ¶ 39.)

[5] As explained below, the Complaint is deficient in that it includes numerous general, collective allegations against "Defendants" without specifying which particular Defendant supposedly did what. Such general averments are insufficient to state claims under § 1983. This Statement of Alleged Facts, however, will use the term "Defendants" for simplicity. Defendants do <u>not</u> concede that the Complaint adequately alleges that each Defendant participated in each of the actions or omissions alleged in the Complaint.

[6] (Compl. ¶¶ 40, 46.)

[7] (*Id.* ¶ 47.)

Affidavits filed in support of the warrant applications were written by Defendant Beckett, a prosecuting attorney employed by the AGO, and signed by Defendant Jeter, a criminal investigator employed by the AGO and supervised by Defendant Lucey.[8] The Complaint alleges that Defendant Jeter, with Beckett's assistance and support, knowingly and intentionally swore false material statements and knowingly and intentionally withheld material information from the affidavits to induce magistrate judges to issue the warrants.[9]

Defendants executed the warrants on November 20, 2023.[10] Even though the warrants were sealed, Defendant Lucey allegedly notified and invited the media to cover, record, and report on the execution of the warrants.[11] Also allegedly, at Lucey's invitation, media members entered Rubicon's headquarters and filmed at least parts of the warrant execution.[12] Plaintiffs allege that Defendants improperly involved the media to draw attention to the case, to improve Defendants' public image, to help in fundraising efforts, and to harm Plaintiffs' reputation and/or influence the jury pool.[13]

Plaintiffs allege that Defendants searched "various premises—including Rubicon's corporate offices—and seized millions of dollars and extensive electronic and hard-copy corporate records."[14] Four days later, criminal charges were filed against the Larsens and other

---

[8] (*Id.* ¶¶ 40-41, 49.)

[9] (*Id.* ¶¶ 53-56.)

[10] (*Id.* ¶ 139.)

[11] (*Id.* ¶ 140.)

[12] (*Id.* ¶ 142.) Although not necessary to decide this Motion, Defendants expressly deny they allowed members of the media to enter Rubicon's offices.

[13] (*Id.* ¶¶ 143-45.)

[14] (*Id.* ¶ 139.)

individuals, who are not parties to this litigation. Per the Complaint, Defendant Beckett prepared the charging documents; Plaintiffs further assert that Defendant Beckett improperly sought no-bail warrants for the Larsens and obtained a restraining order that interfered with the Larsens' ability to manage their businesses, thus harming Rubicon. Several months later, Plaintiffs allege, amended charges were filed, this time by Defendant Beckett and Defendant Reyes.[15]

Also in the criminal proceeding, Plaintiffs moved for an order granting a *Franks* hearing, i.e., an evidentiary hearing to determine whether there was probable cause for the search warrants.[16] In its order granting the motion, the Third District Court (Judge Rita Cornish) ruled that there had been a sufficient "proffer" of evidence that the warrant affidavits contained false or misleading statements, putting probable cause in doubt; The court therefore ordered that an evidentiary hearing be held.[17] The Complaint does not allege that any such hearing actually took place, however. Consequently, Judge Cornish did not determine whether any of the statements in the affidavits actually were false.

In February 2025, the State reported that the federal government, including DOJ's Civil Rights Division-Human Trafficking Prosecution Unit and DHS's Center for Counter Human Trafficking, had initiated a federal investigation into Rubicon.[18] In deference to the federal

---

[15] (*Id.* ¶ 155.) Plaintiffs also allege collectively that "Defendants" contacted Rubicon's customers, such as Walmart, to report the trafficking charges and thereby harmed Rubicon. The Complaint does not identify any specific Defendant who supposedly did so, however.

[16] *See Franks v. Delaware*, 438 U.S. 154 (1978).

[17] (Compl., Ex. B.)

[18] (Mot. to Dismiss Without Prejudice Pending Federal Investigation, *State of Utah v. Larsen et al.*, Consol. Case No. 231702289 (Utah 2d Dist. Ct. Feb. 4, 2025), attached hereto as **Exhibit 1**.) *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: … can be accurately and readily determined from sources whose

investigation, the State sought dismissal of the state charges without prejudice.[19] Judge Cornish

granted that motion on February 24, 2025,[20] and in doing so "agree[d] that the facts and

circumstances giving rise to these charges implicate a number of federal laws and regulations,

the violation of which would be better pursued in a federal forum," and that "[the court] is not

yet convinced that the State has engaged in misconduct, a violation of the rules of professional

conduct, or unreasonable delay" [21]

Plaintiffs brought this § 1983 lawsuit against the four individual defendants: Beckett,

Reyes, Lucey, and Jeter. The Complaint purports to state four claims for relief: illegal search

(lack of probable cause) (First Claim),[22] illegal seizure (Second Claim),[23] of the media inclusion

in the warrant execution (Third Claim),[24] and malicious prosecution (Fourth Claim).[25]

Defendants now move to dismiss all four claims in their entirety.

## LEGAL STANDARD

Rule 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which

relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient

---

accuracy cannot reasonably be questioned."); *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (cleaned up) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of … facts which are a matter of public record.").

[19] (*Id.*)

[20] (Order Dismissing Without Prejudice Pending Federal Investigation, *State of Utah v. Larsen et al.*, Consol. Case No. 231702289 (Utah 2d Dist. Ct. Feb. 4, 2025), attached hereto as **Exhibit 2**.) *See* Fed. R. Evid. 201(b)(2); *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

[21] (*Id*. at 3-4.)

[22] (Compl. ¶¶ 208-15.)

[23] (*Id.* ¶¶ 216-23.)

[24] (*Id.* ¶¶ 224-35.)

[25] (*Id.* ¶¶ 236-46.)

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means a plaintiff has pleaded facts allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1177 (10th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[w]hen a complaint alleges 'facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. Similarly, a complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," because "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. There must be something more than "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

Moreover, plaintiffs bringing § 1983 claims against multiple defendants must take care to specify precisely which defendants are subject to which allegations. As the Tenth Circuit explained, "[w]hile the federal pleading standard does not vary across subject matters, the degree of specificity required for factual allegations depends on context.… In [§ 1983] cases, 'it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*.'" *Shrum v. Cooke*, 60 F.4th 1304, 1311-12 (10th Cir. 2023) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). Allegations against a group of "defendants" are not sufficient to state claims against any particular defendant. *See id.* at 1312 ("Shrum's complaint casts a wide net over undifferentiated defendants and therefore falls short of our pleading standards."); *see also Bledsoe v. Carreno*, 53

6

F.4th 589, 609-11 (10th Cir. 2022) (addressing sufficiency of pleading by examining allegations against each specific defendant). In short, to recover damages from any particular defendant, a plaintiff must "show that such [d]efendant personally participated in the alleged constitutional violation." *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018).

Finally, in a Rule 12(b)(6) motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine ... in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). To that end, "the district court may consider documents referred to in the complaint [at the motion to dismiss stage] if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)). Likewise, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (cleaned up).

## SUMMARY OF ARGUMENT

Each of the four claims in the Complaint purports to be brought by all five Plaintiffs against all four Defendants, with multiple arguments applying to the various claims and sometimes to different Plaintiffs and different Defendants. Thus, to assist the Court, the following summary of the arguments is presented here:

1.     All claims against Defendant Beckett fail on the ground of absolute prosecutorial immunity.

7

2.    All claims against Defendant Reyes fail because:

(a) Plaintiffs have not pleaded facts showing direct involvement in any alleged constitutional violations by Defendant Reyes, and

(b) Defendant Reyes has absolute prosecutorial immunity for any actions or omissions relating to the criminal action and prosecution.

3.    The Third Claim regarding the media ride-along during warrant execution:

(a) fails against all Defendants because of qualified immunity, and

(b) also fails against Defendants Beckett, Reyes, and Jeter because the Complaint does not allege their direct involvement.

4.    The First, Second, and Fourth Claims:

(a) fail against all Defendants because there was at least arguable probable cause for the search, seizure, and prosecution, and

(b) separately fail against Defendant Lucey, as the Complaint does not allege his direct involvement for any of those Claims.

5.    The Fourth Claim:

(a) fails to the extent it is brought by the three Rubicon-entity-Plaintiffs because the Complaint fails to allege their direct involvement and because those entities lack standing to assert constitutional violations on behalf of the individual Plaintiffs, the Larsens;

(b) fails against all Defendants because the Larsens were not seized, as required by the Fourth Amendment; and

(c) fails against all Defendants because the state criminal action was not terminated in Plaintiffs' favor but instead was dismissed without prejudice in deference to the related federal investigation.

## **ARGUMENT**

## I.    **THE COURT SHOULD DISMISS ALL CLAIMS AGAINST DEFENDANT BECKETT ON THE GROUND OF ABSOLUTE PROSECUTORIAL IMMUNITY.**

The Complaint does its best to smear Prosecutor Beckett and demonize her actions in the

state criminal case against Plaintiffs. But even if that extreme rhetoric is assumed to be true at

8

this stage of the proceedings, all claims alleged against her fail as a matter of law under the doctrine of absolute prosecutorial immunity.

For more than fifty years, the United States Supreme Court has recognized that prosecutors are absolutely immune from liability under § 1983 for actions taken "in initiating and pursuing a criminal prosecution." *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). In *Imbler*, a former California death row inmate obtained a writ of habeas corpus when a federal court found "culpable use by the prosecution of misleading or false testimony." *Id.* at 414. After he was released, the inmate filed a § 1983 action against the prosecutor and others, alleging the prosecutor had "with intent, and on other occasions with negligence," allowed a witness to give false testimony. *Id.* at 416. The district court dismissed the claims on the ground of absolute immunity, and the Ninth Circuit affirmed. *Id.* at 416-17.

Citing authority going back to 1896, the Supreme Court explained that prosecutors had long enjoyed absolute immunity from common law malicious prosecution claims. *Id.* at 421-24. The Court reasoned that the policy concerns underlying the immunity against common law claims applied with equal force to § 1983 claims:

> If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his [or her] duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his [or her] best judgment both in deciding which suits to bring and conducting them in court. The public trust of the prosecutor's office would suffer if he [or she] were constrained in making every decision by the consequences of his [or her] own potential liability in a suit for damages.

*Id.* at 424-25. This policy remains sound.

As the Tenth Circuit more recently explained, prosecutors are entitled to absolute immunity for "their decisions to prosecute, their investigatory or evidence-gathering actions,

9

their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court." *Nielander v. Board of County Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009). This immunity has been held to cover actions taken throughout the preliminary steps of a criminal prosecution, including obtaining arrest warrants, filing charges, and appearing at preliminary hearings. *See, e.g.*, *Kalina v. Fletcher*, 522 U.S. 118, 128-30 (1997) (absolute immunity bars claims based on drafting of false certification to support issuance of warrant); *Burns v. Reed*, 500 U.S. 478, 487-92 (1991) (absolute immunity applies to presenting allegedly false or misleading evidence in probable cause hearing to obtain warrant: "the issuance of a search warrant is unquestionably a judicial act"); *Warnick v. Cooley*, 895 F.3d 746, 751-52 (10th Cir. 2018) (absolute immunity for decision to press charge despite alleged lack of probable cause); *Chilcoat v. San Juan County*, 41 F.4th 1196, 1208-13 (10th Cir. 2022) (falsely arguing at a preliminary hearing that probable cause existed to bind the defendant over on a felony charge: "the determinative factor is 'advocacy'").

The Supreme Court's *Kalina* case is highly instructive. That case involved a § 1983 claim against a prosecutor who submitted three documents to initiate a criminal action: an unsworn information charging the respondent, an unsworn motion for an arrest warrant, and a *sworn* "Certification for Determination of Probable Cause" to support the arrest warrant. 522 U.S. at 120-21. After surveying the history of the Court's prosecutorial immunity jurisprudence, the Court concluded that "[the prosecutor's] activities in connection with filing of two of the three charging documents—the information and the motion for arrest warrant—are protected by absolute immunity." *Id.* at 128-29. Regarding the certification, the Court confirmed that "the preparation and filing of the third document in the package was part of the advocate's function as

well," and thus immunity protected those actions too. *Id.* at 129. "Even the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required the exercise of the judgment of the advocate" and were protected by immunity. *Id.* at 130. The only action not covered by absolute immunity was her signing of the certification under oath.[26] *Id.* ("[T]he only function that [the prosecutor] performs in giving sworn testimony is that of a witness.").

Plaintiffs' claims against Defendant Beckett in this case are based entirely on actions Beckett took as an advocate. The Complaint contains the following allegations against Beckett:[27]

* She wrote—*but did not sign*—the affidavits used to obtain the search warrants. (Compl. ¶ 41.)

* She prepared the initial statements of probable cause and criminal charges. (*Id.* ¶ 151.)

* She allegedly made false statements in filings seeking to obtain no-bail arrest warrants. (*Id.* ¶ 179.)

* She allegedly refused to respond to requests to let the Larsens self-surrender (because she was on vacation). (*Id.* ¶ 204(f).)

* She told the Larsens' counsel that the Larsens "have more money than Jesus Christ." (*Id.* ¶ 204(f).)

* She allegedly obtained a restraining order that prevented Plaintiffs from speaking to each other.[28] (*Id.* ¶ 193.)

* She moved to stay the case and argued that Rubicon's counsel should be disqualified. (*Id.* ¶ 202(b).)

---

[26] In this case, Defendant Beckett is alleged to have written the search warrant affidavits, but the affidavits were signed under oath by Defendant Jeter, *not* Defendant Beckett. (Compl. ¶ 41.)

[27] Once again, Defendants dispute that these allegations are in way true, but present them as pleaded in light of the standards applicable to this Rule 12(b)(6) Motion.

[28] Obviously, the criminal court did not grant *Defendant Beckett* a restraining order. The court granted the order to the *State* as the party pursuing the criminal charges.

* She allegedly made false statements in the State's response to Plaintiffs' *Franks* motion. (*Id.* ¶¶ 72-88.)

* She filed an amended information, statements of probable cause, and charges "despite [allegedly] knowing they were based on false statements." (*Id.* ¶ 157.)

* She and co-counsel allegedly refused to provide information about new victims until the preliminary hearing began. (*Id.* ¶ 202(f).)

Defendant Beckett took every one of these alleged actions in her role as the advocate for the State of Utah. *Cf. Chilcoat*, 41 F.4th at 1209 (immunity applies where defendant is sued for actions as advocate). And all these activities were "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Ms. Beckett is thus entitled to absolute prosecutorial immunity, and the Court should dismiss all claims against her.

## II.     THE COURT SHOULD DISMISS ALL CLAIMS AGAINST DEFENDANT REYES BECAUSE OF A LACK OF INVOLVEMENT AND ABSOLUTE IMMUNITY.

### A.     The Complaint Does Not Allege, Let Alone Plausibly Allege, Any Personal Participation or Involvement by Reyes in the Alleged Violations of Rights.

The first named Defendant in the Complaint is Sean D. Reyes, the former Attorney General of the State of Utah. The Complaint reads as a sweeping critique of the former Attorney General's priorities and public profile and momentarily captured the attention of the local press upon its filing. But § 1983 is not a vehicle for imposing personal liability on high-ranking officials based on policy preferences, alleged political motives, or generalized supervisory authority. Instead, § 1983 requires a *defendant-specific* showing of constitutional violations. And in that regard, the Complaint fails vis-à-vis Defendant Reyes.

Under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Moreover, "Government officials may not be held liable for the unconstitutional

12

conduct of their subordinates under a theory of *respondeat superior*." *Id.* Even a supervisor's "knowledge of his subordinate's discriminatory purpose" does not amount to a constitutional violation. *Id.* at 677. With this in view, Plaintiffs have not pleaded any plausible claim against former Attorney General Reyes.

In particular, the Complaint does *not* allege any facts suggesting that Reyes was personally or directly involved in any of the alleged misconduct relating to: (1) investigating Rubicon, the Larsens, or other defendants in the state criminal actions; (2) obtaining any search or arrest warrants for Rubicon, the Larsens, or other defendants in the state criminal actions; (3) executing any such warrants; (4) calling or coordinating the media to attend the execution of the warrants; (5) drafting or filing any of the criminal charges (with one generally alleged exception addressed below); (6) negotiating the Larsens' surrender; (7) obtaining the restraining order; or (8) briefing or arguing the *Franks* motion or the preliminary hearing before the state court. Nor does the Complaint allege facts indicating that Reyes directed any of these activities.[29] Simply put, the Complaint fails to allege that Reyes was directly or personally involved in any of the alleged misconduct underlying the four § 1983 claims herein.

Rather, the Complaint's allegations against Reyes are generalized and aimed at his supervisory status as Attorney General, alleging that he championed anti-trafficking initiatives, sought positive publicity, and benefited politically. For instance, the Complaint alleges that Reyes "made human trafficking his signature issue as Utah Attorney General"[30] and that he "teamed up with Tim Ballard and Operation Underground Railroad ("**OUR**")," both of whom

---

[29] (*See generally* Compl.)

[30] (Compl. ¶ 16.)

had "been criticized for conduct during sting operations."[31] The Complaint further alleges that OUR and Ballard "provided millions of dollars to law enforcement agencies in Utah, particularly to the AGO to fund the operations and mission of SECURE"[32] and that those donations provided intangible benefits, including "Reyes endorsing OUR, running interference for OUR, peddling influence for OUR, intimidating OUR critics, advocating and fundraising for OUR, and agreeing not to investigate or question OUR's potentially fraudulent fundraising activities."[33] The Complaint mentions that civil lawsuits were eventually filed against OUR and that "Reyes was named as a defendant in one of these lawsuits due to his alleged knowledge of and support for Ballard's actions."[34] And the Complaint claims that, after OUR's donations ceased in 2023, Reyes allegedly "took steps to obtain additional federal funding."[35] Finally, the Complaint alleges that, after the raid on Rubicon's offices, Reyes "made statements in press releases and to the media which were demonstrably false."[36] None of these allegations, however, plausibly states any Fourth Amendment claims against Reyes in his supervisory capacity.

To pursue a claim against a supervisor under § 1983, a plaintiff must "show an 'affirmative link' between the supervisor and the [alleged] constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Showing such a link "against a defendant based on his or her supervisory responsibilities" requires satisfaction of

---

[31] (*Id.* ¶ 17.)
[32] (*Id.* ¶ 18.)
[33] (*Id.* ¶ 19.)
[34] (*Id.* ¶ 20.)
[35] (*Id.* ¶ 23.)
[36] (*Id.* ¶ 171.)

three elements: "(1) personal involvement; (2) causation, and (3) state of mind." *Id.* (emphasis added). Plaintiffs have not adequately alleged any of these three elements with respect to Reyes.

First, as discussed at the outset of this section, Plaintiffs have not alleged Reyes's personal involvement in the alleged misconduct. "A supervisor is personally involved when he or she created, promulgated, implemented, or had responsibility over the policy at issue. It can also be shown by a complete failure to train or such reckless or grossly negligent training that makes misconduct nearly inevitable." *Est. of Jensen by Jensen v. Clyde*, 989 F.3d 848, 858 (10th Cir. 2021) (cleaned up). The Complaint does not allege Reyes was involved in the investigations, the issuance of the search or arrest warrants, the execution of the warrants, the subsequent prosecution (again, with one generalized exception discussed below), or any other particular misconduct at issue. At most, the Complaint discusses what policy issues were important to Reyes, but it lacks any allegations whatsoever related to his personal supervision, personal direction, or personal involvement with SECURE or with Rubicon of the Larsens. Simply put, the Complaint does not allege any personal involvement by Reyes, which is itself fatal to any claim against him arising out of supervisory liability.

Second, for § 1983 supervisory liability, a "plaintiff [must] establish the requisite causal connection by showing the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause other [subordinates] to deprive the plaintiff of her constitutional rights." *Dodds v. Richardson*, 614 F.3d 1185, 1195-96 (10th Cir. 2010) (cleaned up). Again, the Complaint has not alleged facts establishing that Reyes set any events in motion that ultimately would deprive Plaintiffs of their constitutional rights.[37] At most, the Complaint

---

[37] (*See generally* Compl.)

15

alleges that Reyes championed human trafficking and "took steps to obtain additional federal funding" to support that policy preference.[38] But these conclusory, general statements do not contain any specifics of what Reyes did to "set in motion a series of events that [he] … knew or reasonably should have known would cause other [subordinates] to deprive [Rubicon or the Larsens of their] … constitutional rights." *Id.* at 1195-96. As such, the Complaint does not satisfy the causal connection requirement either.

Finally, there are insufficient allegations regarding Reyes's state of mind. A plaintiff must show that the supervisor acted with "purpose rather than [just] knowledge" to impose supervisory liability. *Iqbal*, 556 U.S. at 677. A plaintiff must establish at least deliberate indifference or more. *Wilson v. Montano*, 715 F.3d 847, 858 (10th Cir. 2013) ("To establish a violation of § 1983 by a defendant-supervisor, the plaintiff must establish, at minimum, a deliberate and intentional act on the part of the supervisor to violate the plaintiff's legal rights."); *see also Dodds*, 614 F.3d at 1210 (Tymkovich, J., concurring) (stating that older mental state of deliberate indifference "now appears insufficient to prove causation, and thereby prove liability," but the required stronger mental state, while at least deliberate indifference, is yet to be determined). Despite this requirement, the Complaint lacks *any* allegations relating to the mental state of Reyes, let alone any mental state in regard to Plaintiffs. The Complaint does not identify any deliberate and intentional act Reyes himself took regarding Rubicon or the Larsens, nor does it allege Reyes took any unlawful actions regarding them. General policy choices and priorities of his administration are insufficient to show any particularized culpable mental state vis-à-vis

---

[38] (*Id.* ¶ 23.)

any of Plaintiffs. As a result, the Complaint also fails to allege any viable supervisory liability against Reyes for this third separate reason.

Overall, at worst, the Complaint takes issue with the policies and priorities of Reyes as former Attorney General and with one public statement he made in the aftermath of the execution of the warrants. These allegations (if assumed to be true) are insufficient as a matter of law to plausibly state any § 1983 claim against him. Accordingly, the Court should dismiss all four claims against Defendant Reyes.

### B. In Any Event, Reyes Is Entitled to Absolute Prosecutorial Immunity for Any Personal or Direct Involvement in the State Criminal Action.

Regardless, to the extent the Complaint could be read as alleging that Reyes was directly or personally involved in the underlying state criminal action, as Utah's former Attorney General, he would be entitled to absolute prosecutorial immunity for all such allegations and claims. The Complaint, though, lacks any such requisite specificity regarding the involvement of Reyes in the underlying criminal action, as noted above. At most, the Complaint generally and collectively alleges that "*the AGO, Defendant Reyes, Defendant Beckett, and Arguello* filed amended and second amended criminal charges against the criminal defendants."[39] The Complaint further alleges that those amended charges "contained the same false material statements and omissions set forth in the Affidavits," but makes no mention of Reyes in that allegation.[40] Notably, the Complaint does not allege that Reyes was directly or personally involved with any drafting, approving, signing, or otherwise participated in the creation or

---

[39] (Compl. ¶ 155 (emphasis added).)

[40] (*Id.* ¶ 156.)

execution of the amended or second amended charges.[41] As a result, the general and collective allegation in paragraph 155 does not constitute potentially actionable "direct involvement" by Reyes. *Robbins*, 519 F.3d at 1250 ("[I]t is particularly important … that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations …."). *But even assuming it did*, such that Reyes was somehow personally involved in the creation or filing of the amended or second amended state criminal charges, *he would be absolutely immune from § 1983 liability for all such alleged actions*, as explained in Section I above for Prosecutor Beckett. Indeed, absolute prosecutorial immunity would shield Reyes from any liability for any personal or direct involvement in the criminal action or his supervision of the criminal action.[42]

## III.   THE COURT SHOULD DISMISS THE THIRD CLAIM.

### A.   All Defendants Are Entitled to Qualified Immunity from the Third Claim Because There Is No Clearly Established Constitutional Right Prohibiting Media Presence from the Execution of a Warrant on *Commercial Property*.

The Third Claim alleges a Fourth Amendment violation because "Defendants invited members of the media to join the AGO, SECURE, and Lucey in the execution of the Warrants at Rubicon's headquarters," which are also described as Rubicon's "corporate offices."[43] The Court

---

[41] (*See generally* Compl.)

[42] *See, e.g.*, *Van de Kamp v. Goldstein*, 555 U.S. 335, 343-46 (2009) (holding that absolute prosecutorial immunity bars claims for supervisory decisions directly connected to advocacy and general supervision and training); *Nielander*, 582 F.3d at 1164 (prosecutors are entitled to absolute immunity for "their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court"); *Warnick*, 895 F.3d at 751-52 (absolute immunity for decision to press charge despite alleged lack of probable cause).

[43] (Compl. ¶¶ 46, 139, 142, 225, 227-28.)

should dismiss this Third Claim as to all Defendants because they are shielded by qualified immunity. As discussed below, although the Supreme Court has determined that the presence of a news crew during the execution of a warrant *in a home or private residence (or residential property)* violates the Fourth Amendment, there is no such clearly established constitutional right during the execution of a warrant *on commercial property*, like Rubicon's offices, meaning qualified immunity still applies to the circumstances alleged here.

Qualified immunity "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (cleaned up). Defendants in a § 1983 action such as this may raise qualified immunity. *Gutierrez v. Cobos*, 841 F.3d 895 (10th Cir. 2016). Although frequently resolved on summary judgment, "district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). On a motion to dismiss, "it is the defendant's conduct alleged in the complaint that is scrutinized for objective legal reasonableness." *Id*.; *see also Bailey v. Twomey*, 791 F. App'x 724 (10th Cir. 2019) (affirming district court's granting of motion to dismiss § 1983 complaint alleging excessive force, illegal detention, and malicious prosecution and accepting complaint's allegations as true and viewing them in light most favorable to plaintiff in doing so) (unpublished).

"In resolving a motion to dismiss based on qualified immunity," a district court must determine "(1) 'whether the facts that a plaintiff has alleged make out a violation of a constitutional right,' and (2) 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Bailey*, 791 F. App'x at 727 (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A

19

plaintiff bears the "heavy burden" of satisfying both parts of this test to overcome qualified immunity. *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017). Indeed, in making these assessments, courts routinely reinforce that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, (1986), and that public employees such as Defendants are entitled to qualified immunity in "all but the most exceptional cases." *Rachamim v. Ortiz*, 147 F. App'x 731 (10th Cir. 2005) (quoting *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 516 (10th Cir.1998)) (unpublished).

In this instance, as to the first element and as detailed below in Section III.B., the Third Claim fails to "make out a violation of a constitutional right" by Defendants Reyes, Beckett, and Jeter.[44] But the Third Claim fails as to <u>all</u> Defendants, including Defendant Lucey, in regard to the second element because "the [alleged constitutional] right at issue was [*not*] 'clearly established' at the time of [Defendants'] … alleged misconduct." *Pearson*, 555 U.S. at 232.

Even if Plaintiffs are found to have alleged an arguably viable claim against an individual Defendant, such as Lucey, the second element of the "qualified immunity" analysis requires the Court to examine whether the right allegedly violated was "clearly established." *Robbins*, 519 F.3d at 1249. A "clearly established" right is one that makes it apparent that the defendant's conduct is unlawful "in light of preexisting law." *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir. 1998). This burden is often satisfied by a plaintiff

---

[44] The Complaint does allege particular facts against Defendant Lucey (but no other Defendant) in regard to the media presence during execution of the warrants, such as, "[a]t the invitation and instructions of Lucey, the members of the media entered Rubicon's headquarters and filmed the raid and execution of the Warrants." (Compl. ¶ 228.)

"showing that there is a Supreme Court or Tenth Circuit opinion on point, or that his or her proposition is supported by the weight of authority from other courts." *Id*. It "does not require a case directly on point for a right to be clearly established, [but] *existing precedent must have placed the statutory or constitutional question beyond debate*." *White v. Pauly*, 580 U.S. 73, 79 (2017) (emphasis added) (cleaned up). The United States Supreme Court has repeatedly told lower courts "not to define clearly established law at a high level of generality." *City and Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015) (cleaned up). "[T]he clearly established law must be 'particularized' to the facts of the case." *White*, 580 U.S. at 79. That is, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019). Finally, qualified immunity *must be granted* "if a reasonable officer might not have known for certain that the conduct was unlawful." *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017).

Here, the Complaint's Third Claim asserts that the presence of the news crew during the execution of the warrants at Rubicon's commercial offices violated their constitutional rights. The United States Supreme Court *has* determined that the presence of a news crew during the execution of a warrant *in a home or private residence (or residential property)* violates the Fourth Amendment. *See Wilson v. Layne*, 526 U.S. 603, 604 (1999); *Hanlon v. Berger*, 526 U.S. 808, 810 (1999). The circumstances present here, however, differ from those in *Wilson* and *Hanlon*. Specifically, both *Wilson* and *Hanlon* involved searches of homes and residential property, where one's expectation of privacy is at its highest. *Wilson*, 526 U.S. at 606, 612 (concerning media presence during execution of warrant in "the home of petitioners," stating that "the Fourth Amendment embodies [a] … centuries-old principle of respect for the privacy of the

21

home," and recognizing "the importance of the right of *residential* privacy at the core of the Fourth Amendment") (emphasis added); *Hanlon*, 526 U.S. at 810-11.

Defendants are not aware of any similar controlling case law from the Supreme Court or Tenth Circuit extending any such constitutional right prohibiting media presence from the execution of warrants *on commercial or business property*, such as Rubicon's offices at issue in the Third Claim. Nor are Defendants aware that any such extension of rights to commercial or business property is supported by the weight of authority from other courts. And, while the Fourth Amendment applies to commercial premises, *New York v. Burger*, 482 U.S. 691, 699 (1987), commercial property is treated *with less protection* than homes and residential property. *Id.* ("An expectation of privacy in commercial premises, however, is different from, and indeed **less than**, a similar expectation in an individual's home.") (emphasis added); *see also Minnesota v. Carter*, 525 U.S. 83, 90 (1999) (same). This difference makes sense given (at least) the quasi-public, open nature of most businesses and commercial enterprises during normal business hours, plus the fact that the Fourth Amendment expressly recognizes the people's right to be secure "*in their … houses*," but lacks any reference to commercial property. U.S. Const. amend. IV.

Defendants have discovered one district court decision from another jurisdiction that, based on the differences between residential and commercial properties, did *not* find a "clearly established" constitutional right prohibiting media presence during execution of a warrant on such commercial property. *See Wise v. City of Richfield*, No. Civ. 02-4274, 2005 WL 361492 (D. Minn. Feb. 14, 2005) (distinguishing *Wilson* and *Hanlon* because they concerned residential property, not commercial property, and finding qualified immunity for § 1983 claim because, "even if Plaintiffs could show that Officer Peterson violated a constitutional right by allowing a

22

news crew to attend the search [of a commercial strip club], this constitutional right was not clearly established at the time the search was executed") (unpublished).[45]

Overall, there is no "clearly established" constitutional right prohibiting media presence from the execution of warrants on commercial property, such as Rubicon's offices at issue in the Third Claim. Accordingly, the Court should dismiss the Third Claim as to all Defendants even if the Court finds that allowing the news crew to attend the execution of the warrants violated a constitutional right. Additionally, qualified immunity should be granted because Defendants "might not have known for certain that the conduct was unlawful." *Ziglar v*, 582 U.S. at 152.

**B.      Regardless, the Court Should Dismiss the Third Claim as to Defendants Reyes, Beckett, and Jeter Because the Complaint fails to Plausibly Allege Their Personal or Direct Involvement with the Media Presence.**

The Complaint's Third Claim is based on the allegation that "the AGO, SECURE, and Defendant Lucey notified and invited members of the media to cover, record, and report on the execution of the warrants at Plaintiffs' private property."[46] The Complaint further alleges that, during the warrant execution, "Defendant Lucey brought members of the Fox 13 news crew inside the Rubicon offices."[47] The Complaint does not, however, allege that Defendants Reyes, Beckett, or Jeter invited the media, brought the news team inside the Rubicon offices, or in any way knew of or affirmatively interacted with the media during execution of the warrants.[48]

---

[45] *See also Schmidt v. Stassi*, 250 F.Supp.3d 99 (E.D. La. April 21, 2017) (finding qualified immunity for DNA swab taken from car in public parking lot filmed by the Discovery Channel and distinguishing *Wilson* in the process because "[t]he filmed swabbing at issue here took place in a public parking lot—not a home," which is what the court noted *Wilson* concerned).

[46] (Compl. ¶ 140.)

[47] (*Id.* ¶ 142; *see also* ¶ 228.)

[48] (*See generally* Compl.)

Two principles set forth in the Legal Standard section apply with particular force here. First, a § 1983 complaint must allege "exactly *who* is alleged to have done *what* to *whom*." *Shrum*, 60 F.4th at 1311-12 (emphasis in original). Second, to state a claim against a defendant, a plaintiff must allege facts showing that <u>that</u> defendant "personally participated in the alleged constitutional violation." *Vasquez*, 882 F.3d at 1275. Plaintiffs have not pleaded that Defendants Beckett, Jeter, or Reyes "personally participated" in the alleged violation of Plaintiffs' rights that purportedly occurred when the media were allowed inside Rubicon's offices during the warrant execution, as set forth in the Third Claim.[49]

Further, the Complaint's broad, collective allegations that "Defendants," "AGO," and/or "SECURE" also notified and invited the media are insufficient to state or support a claim against any individual Defendant.[50] *Robbins*, 519 F.3d at 1250. And as explained in Section II.A. above, the doctrine of *respondeat superior* does not apply to § 1983 claims. *Iqbal*, 556 U.S. at 676. Plaintiffs have not pleaded any other basis to hold any of the individual Defendants liable for any action or omission by AGO or SECURE with respect to the Third Claim. Accordingly, the Court should dismiss the Third Claim as to Defendants Reyes, Beckett, and Jeter.

IV.    **THE COURT SHOULD DISMISS THE FIRST, SECOND, AND FOURTH CLAIMS AS TO ALL DEFENDANTS BECAUSE, IF REVISED TO REFLECT THE COMPLAINT'S ALLEGATIONS OF INACCURACIES, THE WARRANT AFFIDAVIT WAS STILL SUPPORTED BY ARGUABLE PROBABLE CAUSE.**

The First Claim (illegal search), Second Claim (illegal seizure), and Fourth Claim (malicious prosecution) all hinge on a lack of probable cause in regard to the searches, seizures,

---

[49] (*Id.* ¶¶ 224-235 (none of Jeter, Beckett, or Reyes are named in Plaintiffs' Third Claim for Relief (Fourth Amendment Violation – Inclusion of Press/Media in Execution of Warrants)).)
[50] (*Id.* ¶¶ 140, 143.)

and prosecution described in the Complaint. *See Price v. Cochran*, 66 F. App'x 781, 790 (10th Cir. 2003) (illegal search requires lack of probable cause) (unpublished); *Kansas Motorcycle Works USA v. McCloud*, 569 F. Supp. 3d 1112, 1119 (D. Kan. 2021) (illegal seizure requires lack of probable cause); *Shrum*, 60 F.4th at 1312 (malicious prosecution requires lack of probable cause). To that end, the Complaint alleges that the searches, seizures, and subsequent prosecution at issue violated the Fourth Amendment because the affidavits submitted in support of the warrants (i) contained "multiple material statements of fact that were false" and (ii) "omitted and withheld material information from the Affidavits that was necessary context" for the magistrates to determine whether probable cause existed[51] and because the Larsens were thereafter maliciously prosecuted without probable cause.[52] The Complaint insists that, if the affidavits had contained "truthful and complete information, the magistrates would have properly concluded that there was no probable cause, and they would not have issued the warrants."[53]

Qualified immunity shields Defendants from these allegations and claims, and, as noted above in Section III.A., qualified immunity can be decided by this Court on a motion to dismiss. In the context of qualified immunity in regard to an allegedly falsified warrant affidavit and unlawful searches and seizures, as here, courts "ascertain whether a defendant violated clearly established law 'by asking whether there was "arguable probable cause" for the challenged conduct.'" *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)). "Arguable probable cause is another way of

---

[51] (Compl. ¶¶ 52, 55.)

[52] (*Id.* ¶¶ 237, 244.)

[53] (*Id.* ¶ 42.)

saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id.* at 1142 ("This test is an objective one: when there is no dispute over the material facts,[54] a court may determine as a matter of law whether a reasonable officer would have found probable cause under the circumstances."); *Cortez v. McCauley*, 478 F.3d 1108, 1120-21 (10th Cir. 2007) ("The conduct was either objectively reasonable under existing law or it was not."); *Bailey*, 791 F. App'x at 731-32 (in granting motion to dismiss § 1983 complaint, stating that "*arguable* probable cause … [turns] on whether, as a purely objective matter, 'a reasonable officer' in the defendants' position 'could have believed that probable cause existed'") (quoting *Stonecipher*, 759 F.3d at 1141).

Of course, "affiants seeking [] … warrants violate the constitution when they knowingly, or with reckless disregard for the truth, include false statements in a supporting affidavit or omit information which, if included, would prevent the warrant from lawfully issuing." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (*citing Franks*, 438 U.S. at 171). As here, plaintiffs often attack warrant affidavits by claiming they include false statements or omit information. But a plaintiff cannot overcome a defendant's assertion of qualified immunity merely by alleging the inclusion of false statements in a warrant affidavit. *See Rehberg v. Paulk*, 566 U.S. 356, 370 n.1 (2012) (noting that Court has "accorded ... qualified immunity to law enforcement officials who falsify affidavits"). Instead, including false statements in, or omitting information from, a warrant affidavit "*only* violates the Fourth Amendment if correcting those

---

[54] Here, of course, the material facts alleged in the Complaint are "undisputed" only for purposes of this Motion.

26

false statements [or omission] would 'vitiate probable cause.'" *Bailey*, 791 F. App'x at 733

(quoting *Handy v. City of Sheridan*, 636 F. App'x 728, 740 (10th Cir. 2016) (unpublished)).

Accordingly, in such a situation, courts in the Tenth Circuit "measure probable cause by

(1) removing any false information from the affidavit, (2) including any omitted material

information, and then (3) inquiring whether the modified affidavit establishes probable cause for

the warrant."[55] *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015); *see also Taylor v.

Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996). This procedure is routinely followed at the

motion to dismiss stage, with the court taking a complaint's allegations of falsities and omissions

in a warrant affidavit as true and thereafter analyzing the resultant remaining affidavit to

determine whether arguable probable cause exists. *See, e.g.*, *Bailey*, 791 F. App'x at 731-34

(affirming district court's finding of arguable probable cause after removing allegedly false

statements from affidavit and affirming dismissal of illegal detention and malicious prosecution

claims).

Turning to the Complaint herein, **<u>Exhibit 3</u>** attached hereto is a true and correct copy of

the Affidavit for Search Warrant dated November 17, 2023, which was submitted to the state

court to obtain the warrant to search Rubicon's premises (sans personally identifiable

---

[55] This use of the warrant affidavit in this manner does *not* convert a motion to dismiss to a summary judgment motion because "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (further quotation omitted). In this instance, the warrant affidavits are mentioned over fifty times in the Complaint and inarguably are central to all four Claims therein. (*See generally* Compl.)

information).[56] **<u>Exhibit 4</u>** attached hereto is a redlined version of that Affidavit, with the allegedly false information set forth in the Complaint stricken in red and the allegedly omitted information in the Complaint added in green (with accompanying citations to the Complaint).[57]

An examination of Exhibit 4 and determination of arguable probable cause should begin with considering the standards. Probable cause to issue a search warrant exists when the facts and circumstances laid out in the supporting affidavit "would lead a prudent person to believe a fair probability exists that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001), *cert. denied*, 535 U.S. 945 (2002) (citing *United States v. Wicks*, 995 F.2d 964, 972-73 (10th Cir. 1993), *cert. denied*, 510 U.S. 982 (1993)). The task is "to make a practical, common-sense determination" from the totality of the circumstances whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Reasonable inferences are to be drawn from information found in the affidavits. *See United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998). Finally, the existence of probable cause is a "common-sense standard." *United States v. Wicks*, 995 F.2d at 972.

With this in mind, Exhibit 4 demonstrates that, even after deleting the allegedly false information and adding the allegedly omitted material information, there remains a considerable amount of *<u>unchallenged</u> information* that would lead a prudent person to believe a fair probability exists that contraband or evidence of a crime will be found in a search of Rubicon's

---

[56] Again, the Court may consider this document on a motion to dismiss because the warrant affidavit is clearly central to Plaintiffs' claims and there can be no dispute about its authenticity. *See*, *e.g.*, *Jacobsen*, 287 F.3d at 941.

[57] Exhibit 4 is thus a demonstrative exhibit based on Exhibit 3 and the Complaint.

offices. For instance, primarily from the unchallenged portion of the Affidavit entitled "Victims,"

Defendant Jeter still interviewed seven victims, who were H2B visa workers for Rubicon, and

the modified Affidavit still indicates that one or more of such workers:

- were recruited to Utah and Rubicon with job postings that said, among other things, workers would "work 40 hours a week" and be provided "assistance finding lodging" and that "employer will provide, without charge or deposit, all tools, supplies, and equipment required to perform the job duties";

- were, after arrival, lodged in crowded conditions—as confirmed by Witness 3 from hundreds of photos as "abhorrent" and "filthy"—often with no furniture and no beds and at least once with no heat, gas, or hot water for an extended period, yet were charged high amounts of rent (with each being charged between $300-$700/month), which were deducted from their paychecks;

- were forced to purchase new phones after arrival;

- had pay deductions taken by Rubicon for use of and normal wear and tear on company tools;

- were not fully paid and on occasion had significant hours of work deducted from paychecks because of the fault of others;

- were given set times to complete a job and any hours over were not paid; and

- often went for extended periods of time without work, resulting in the utilization of resources such as food banks to survive.[58]

In addition, primarily from the unchallenged portion of the Affidavit entitled "Witnesses," the

Affidavit after deleting the alleged falsities and including the alleged omissions still reflects that:

- Witness 3 stated that the rent deductions from employees based on the average rent exceeded what rent and utility cost was and that Rubicon clearly profited from the rent deductions from the H2B visa workers.[59]

---

[58] (Ex. 4 at 5-12.)

[59] (*Id.* at 10.)

- One witness had a conversation with Adam Perea, who openly admitted to performing illegal acts for Rubicon: "You would be shocked how may illegal things I have done for Rubicon in just the past few weeks."[60]

- Likewise, another witness "described an incident where an H2B Visa worker was punished and humiliated for filing a worker's comp claim."[61]

- Witness 3 stated that "shell" companies were set up to get additional H2B workers for Rubicon,[62] and Witness 1 stated that "2 new companies" were started to allow for the "'transfer of H2B workers between the companies to prolong the[ H2B workers'] time working for Rubicon."[63]

- And, Witness 3 stated that Plaintiff Rudy Larsen was directly involved and dictated all policies related to the H2B employees, that "there were numerous documents … regarding H2B process and procedure," and that "these documents were reviewed by … Rudy Larsen."[64]

In other words, even with the allegedly false information excluded and allegedly omitted information added, there was still more than a sufficient basis from the revised warrant Affidavit to find that probable cause existed to search Rubicon's offices (and elsewhere) for evidence of aggravated labor trafficking and benefiting from labor trafficking and to pursue such charges.[65] Thus, the Court should find that, even if the Complaint's allegations are accepted as true, the

---

[60] (*Id.* at 8.)

[61] (*Id.* at 9.)

[62] (*Id.* at 9.)

[63] (*Id.* at 8.)

[64] (*Id.* at 10.)

[65] *See, e.g.*, Utah Code Ann. §§ 76-5-308(2) (with, as example, (f) stating: "An actor commits human trafficking for labor if the actor recruits, harbors, transports, obtains, … or solicits an individual for labor through the use of force, fraud, or coercion, which may include: … creating or exploiting a relationship where the individual is dependent upon the actor."); -309(2) ("An actor is a party to the offense if the actor benefits, receives, or exchanges anything of value from knowing participation in: (a) human trafficking … in violation of Section 76-5-308"); -310(2) ("An actor commits aggravated human trafficking for labor … if, in the course of committing an offense under Section 76-5-308 …, the offense: … (d) involves the trafficking of 10 or more individuals; or (e) involves an individual trafficked for longer than 30 consecutive days.").

30

Complaint fails to state a claim under § 1983 arising from the allegedly defective warrant affidavit because arguable probable cause exists, meriting qualified immunity for all Defendants as to the First, Second, and Fourth Claims.

## V.    THE COURT ALSO SHOULD DISMISS THE FIRST, SECOND, AND FOURTH CLAIMS AS TO DEFENDANT LUCEY BECAUSE THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE HIS PERSONAL OR DIRECT INVOLVEMENT.

As with the supervisory claims against Defendant Reyes, Plaintiffs have failed to present allegations sufficient to show that Defendant Lucey, who is alleged to have been the "chief investigator for" and "supervisor of" SECURE at all relevant times,[66] was personally or directly involved in the alleged illegal search (First Claim), illegal seizure (Second Claim), or malicious prosecution (Fourth Claim). Instead, the only direct involvement by Lucey alleged in the Complaint pertains to the execution of the search warrant on Rubicon, in particular, notifying Fox 13 of the raid and allowing the news crew into Rubicon's office. This pertains only to the Third Claim.[67] Simply put, the Complaint fails to allege that Lucey was directly or personally involved in any of the alleged misconduct underlying the First, Second, or Fourth Claims.

The Complaint *has* alleged that *Defendant Jeter* made false statements and material omissions in the warrant affidavits.[68] Plaintiffs also have alleged that Lucey was Jeter's supervisor.[69] Again, however, *respondeat superior* does not apply; Plaintiffs must allege facts showing an "affirmative link" between Lucey and the alleged constitutional violations. *See*

---

[66] (Compl. ¶ 11.)

[67] (Compl. ¶¶ 25, 139-147, 228, 230, 232.) While not pertinent for this Motion, Defendants deny that they brought or allowed any media member inside Rubicon's non-public office space.

[68] (*E.g., id.* ¶¶ 46-138.)

[69] (*Id.* ¶¶ 11(a), 11(d), 49.)

*Schneider*, 717 F.3d at 767. Among other things, Plaintiffs must show that Defendant Lucey was personally involved in the alleged violations and must establish a causal connection between his actions and the violations. The Complaint contains no such allegations in regard to the First, Second, and Fourth Claims.[70]

Plaintiffs have failed to allege nonconclusory facts plausibly showing that Defendant Lucey participated in any kind of constitutional violation regarding the contents of the warrants or the prosecution, meriting dismissal of the First, Second, and Fourth Claims as to Lucey.

## VI. THE FOURTH CLAIM ALLEGING MALICIOUS PROSECUTION FAILS AS TO ALL DEFENDANTS FOR MULTIPLE ADDITIONAL REASONS.

### A. The Complaint Fails to Allege the Involvement of the Three Rubicon Entities, Who Lack Standing to Bring Any Malicious Prosecution Claim.

The Complaint altogether fails to connect any of the three Rubicon-entity-Plaintiffs with the alleged malicious prosecution set forth in the Fourth Claim. This is fatal to that claim extending to any of those Plaintiffs. A § 1983 malicious prosecution claim includes five elements: (1) the defendant caused *the plaintiff's* continued confinement or prosecution; (2) the original action terminated in favor *of the plaintiff*; (3) no probable cause supported the arrest,

---

[70] There *are* two general allegations in the Complaint that mention Lucey. Paragraph 23 alleges that when the donations from OUR ceased, "Defendant Reyes, the AGO, SECURE, and Defendant Lucey took steps to obtain additional funding … includ[ing] the actions of Defendants to provide false and misleading information in the affidavits for the warrants in the criminal case against Plaintiffs." (*Id.* ¶ 23.) And paragraph 27 alleges that "acting on directions from Defendant Lucey and other senior leadership of the AGO, Defendant Beckett was motivated to knowingly bring manufactured, unsupported criminal charges [against Plaintiffs]." (*Id.* ¶ 27.) These are exactly the kind of conclusory allegations that the Supreme Court has held to insufficient to state a claim. *Iqbal.* 556 U.S. at 680-84; *see also Robbins*, 519 F.3d at 1250 ("[T]he complaint [must] make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations ….").

confinement, or prosecution; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages. *Shrum*, 60 F.4th at 1310-13 (dismissing § 1983 malicious prosecution claim for failure to plead with specificity) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).

Here, the Fourth Claim for Relief generally purports to be brought collectively on behalf of all "Plaintiffs" and alleges at least a billion dollars in damages collectively on behalf of all "Plaintiffs."[71] But the more specific allegations of the Fourth Claim for Relief only assert that "Defendants maliciously prosecuted *Mr. Larsen and Ms. Larsen* without probable cause in violation of *their* Fourth Amendment rights."[72] Nowhere does the Fourth Claim for Relief or any other paragraph of the Complaint allege that any of the three Rubicon entities was continuously confined or prosecuted at all, let alone maliciously. That is because they were *not* prosecuted in any state criminal action.[73] As a result, the Complaint plainly fails to satisfy either of the first two elements required for a malicious prosecution of any of the three Rubicon entities.

In addition, it has long been a "well-settled principle" in the Tenth Circuit that "a section 1983 claim must be based upon the violation of the plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990). That means the three Rubicon entities cannot bring a § 1983 claim for the Larsens.

Accordingly, to the extent that any of the three Rubicon-entity-Plaintiffs is seeking to recover for any alleged malicious prosecution, the Court must dismiss that claim.

---

[71] (Compl. ¶¶ 236; 238 ("Defendants' unlawful investigatory conduct caused *Plaintiffs* to incur damages and out of pocket expenses, which *Plaintiffs* are entitled to recover, in an amount not less than $1,000,000,000.") (emphasis added); 245 (same except omits "investigatory").)

[72] (*Id.* ¶ 244 (emphasis added).)

[73] (*See id.* ¶¶ 151-57, 236-44 (alleging that Defendants prosecuted the Larsens and other Rubicon employees but failing to allege that the Defendants prosecuted Rubicon.)

33

**B.** **The Fourth Claim Fails in Its Entirety Because the Larsens Were Not "Seized," as Required by the Fourth Amendment.**

The Fourth Claim also fails as to all Defendants because the Larsens have not alleged facts necessary to establish a § 1983 claim for malicious prosecution in that the Complaint fails to allege the Larsens were unconstitutionally seized under the Fourth Amendment.

In order to state any claim under Section 1983, a plaintiff must plead a constitutional violation.[74] *Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007). "The Court has been careful to tie all actions under § 1983 to specifically protected constitutional rights in order to avoid creating a free-standing constitutional tort regime under § 1983." *Id.* It is now firmly established that a 1983 malicious prosecution is based on the Fourth Amendment. *See Manuel v. Joliet*, 580 U.S. 357, 365-66 (2017). The Fourth Amendment, of course, bans unreasonable searches and seizures. For a 1983 malicious prosecution claim, then, a plaintiff must prove that he or she was *seized*, i.e., *arrested or detained*. *See, e.g.*, *Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2022) ("Because this claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff."). As the Tenth Circuit has explained, "To extend liability in cases without a traditional seizure would expand the notion of seizure beyond recognition and fall into the trap carefully avoided by the *Albright* majority—every charging decision would support a § 1983 malicious prosecution-type claim no matter the context." *Becker*, 494 F.3d at 915.

Tenth Circuit authority establishes that a § 1983 malicious prosecution claim fails if a plaintiff does not allege that he or she was physically arrested or detained. *See Becker*, 494 F.3d

_____

[74] A plaintiff could also, in theory, bring a § 1983 claim based on a violation of federal statute, but Plaintiffs have not attempted to do so here.

at 915-16 (claim failed because plaintiff, who "was never arrested, incarcerated, or otherwise placed under the direct physical control of the state … was never 'seized' in the traditional sense"); *Nielander*, 582 F.3d at 1164-65 (rejecting argument that plaintiff had been "seized" because criminal summons had a legal effect on his freedom of movement).

Here, the Larsens do not allege they were detained, arrested, incarcerated, or otherwise physically seized,[75] because they were not. As a result, the Court should find their malicious prosecution fails as a matter of law.

**C.     The Original Action Did Not Terminate in Favor of Plaintiffs, but Instead Was Dismissed Without Prejudice in Deference to a Federal Investigation.**

Last, as noted above, a § 1983 malicious prosecution claim requires proof that "the original action terminated in favor of the plaintiff." *Shrum*, 60 F.4th at 1310. The Supreme Court has described the policies underlying this required element:

> In accord with the elements of the malicious prosecution tort, a Fourth Amendment claim under § 1983 for malicious prosecution requires the plaintiff to show a favorable termination of the underlying criminal case against him. **The favorable termination requirement serves multiple purposes**: (i) it **avoids parallel litigation** in civil and criminal proceedings over the issues of probable cause and guilt; (ii) it **precludes inconsistent civil and criminal judgments** where a claimant could succeed in the tort action after having been convicted in the criminal case; and (iii) it **prevents civil suits from being improperly used as collateral attacks on criminal proceedings**.

*Thompson*, 596 U.S. at 39, 44 (in case where "the charges were dismissed before trial without any explanation by the prosecutor or judge," holding "that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence") (emphasis added).

---

[75] The Complaint alleges only that Jeter "tried" to arrest the Larsens. (Compl. ¶ 204(g).)

To satisfy this element, the Complaint alleges only that "the criminal charges against Mr. Larsen and Ms. Larsen were <u>finally</u> dismissed in February 2025,"[76] that "[t]he criminal case was terminated in favor of Mr. Larsen and Ms. Larsen," and that "[a]ll charges have been dismissed and there is no pending prosecution."[77] These alleged facts are incomplete and contradicted by publicly available court records of which the Court can take judicial notice without converting this Motion to Dismiss into a motion for summary judgment.

More specifically, unlike in *Thompson*, the underlying state criminal charges at issue here were dismissed by the State of Utah *without prejudice in express deference to a "federal investigation into the matter"* by the "Civil Rights Division-Human Trafficking Prosecution Unit of the Department of Justice and the Department of Homeland Security's Center for Counter Human Trafficking."[78] Moreover, in ordering the dismissal without prejudice, the state court "agree[d] that the facts and circumstances giving rise to these charges implicate a number of federal laws and regulations, the violation of which would be better pursued in a federal forum."[79] The state court also expressly found that "it is not yet convinced that the State has engaged in misconduct, a violation of the rules of professional conduct, or unreasonable delay" and expressly recognized that *"[t]he dismissal and discharge do not preclude the state from instituting a subsequent prosecution for the same offense*."[80] And, a now unsealed and publicly available Search and Seizure Warrant (as returned and executed) issued by (now) Chief

---

[76] (Compl. ¶ 44 (emphasis added).)

[77] (Compl. ¶ 243.)

[78] (Ex. 1, at 1-2 (emphasis added).)

[79] (Ex. 2, at 3.)

[80] (*Id*. at 3-4 (quoting Utah R. Crim. P. 7B(c)) (emphasis in original).)

36

Magistrate Judge Cecilia M. Romero of the United States District Court for the District of Utah reveals that the federal government, on January 10, 2025, less than a month before the State of Utah sought dismissal of the state charges in deference to the federal investigation, seized a large amount of "Property involved in investigation of Rubicon previously seized and held as evidence by the Utah Attorney General's Office."[81]

In light of these adjudicative facts, the Court should find that the Complaint fails to plausibly allege that "the original action terminated in favor of the plaintiff." *Shrum*, 60 F.4th at 1310, meriting dismissal of the Third Claim. In doing so, the Court would further all three policies underlying this requirement as set forth in *Thompson*: (i) avoiding parallel litigation in civil and criminal proceedings over the issues of probable cause and guilt; (ii) precluding inconsistent civil and criminal judgments; and (iii) preventing civil suits from being improperly used as collateral attacks on criminal proceedings.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court dismiss the Complaint in its entirety for failure to state a claim on which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

---

[81] (Search and Seizure Warrant Returned Executed, *In the Matter of the Search of Property*, Case No2:24-mj-01219-CMR (D. Utah Jan. 10, 2025), attached hereto as **Exhibit 5** (public unsealing confirmed via PACER on Feb. 10, 2025).) *See* Fed. R. Evid. 201(b)(2); *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

DATED this 11th day of February, 2026.

/s/ Jason W. Hardin
FABIAN VANCOTT
Jason W. Hardin
Jeffery B. Setness
Stephen P. Horvat
J. Mason Kjar
Trevor J. Adkins

OFFICE OF THE UTAH ATTORNEY GENERAL
Bradley R. Blackham
Andrew R. Hopkins
Assistant Utah Attorneys General

*Attorneys for Defendants*