David W. Tufts (#8736)
Lyndon R. Bradshaw (#15097)
DENTONS DURHAM JONES PINEGAR P.C.
111 S. Main Street, Suite 2400
Salt Lake City, UT 84111
(801) 415-3000
david.tufts@dentons.com
lyndon.bradshaw@dentons.com

Stephen R. McAllister (*pro hac vice* forthcoming)
DENTONS U.S. LLP
4520 Main Street, Suite 1100
Kansas City, MO 64111-7700
(816) 460-2400
stephen.mcallister@dentons.com

Keith M. Woodwell (#7353)
Jake Taylor (#10840)
Katherine E. Pepin (#16925)
Vicki B. Zgodny (#19753)
CLYDE SNOW & SESSIONS
201 South Main Street, #2200
Salt Lake City, UT  84111
(801) 322-2516
kmw@clydesnow.com
jst@clydesnow.com
kep@clydesnow.com
vbz@clydesnow.com

*Attorneys for Plaintiffs Rudy Larsen,
Jena Larsen, Rubicon Contracting,
LLC, Scandia Company, LLC, and
Smart Rain Systems, LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUDY LARSEN, an individual; JENA LARSEN, an individual; RUBICON CONTRACTING, LLC, a Utah limited liability company; SCANDIA COMPANY, LLC, a Utah limited liability company; and SMART RAIN SYSTEMS, LLC, a Utah limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> SEAN D. REYES, an individual; LEO LUCEY, an individual; MICHAEL ADAM JETER, an individual; and KAYTLIN VIRGINIA BECKETT, an individual, <br><br> Defendants. | **OPPOSITION TO MOTION TO DISMISS** <br><br> Case No. 2:25-cv-00963 <br><br> District Judge Howard C. Nielson, Jr. <br><br> Magistrate Judge Jared C. Bennett |

**TABLE OF CONTENTS**

RELIEF SOUGHT AND GROUNDS ................................................................................. 1

STATEMENT OF RELEVANT FACTS ........................................................................... 6

    1.   Parties and Procedural Background ................................................................. 6

    2.   Background and Alleged Motive ..................................................................... 6

    3.   The False Affidavits and Warrants .................................................................. 7

    4.   The August 1, 2024 *Franks* Order ................................................................ 8

    5.   Continued False Statements After Explicit Notice ......................................... 9

    6.   Media Coordination and Fourth Amendment Violations ................................ 9

    7.   Seizure of Funds and Business Interference ................................................. 10

    8.   Dismissal of Criminal Charges ..................................................................... 10

LEGAL STANDARD ...................................................................................................... 10

ARGUMENT ....................................................................................................................11

    I.   Several Threshold Issues and Preliminary Objections Apply to the Motion. ....................11

        A.   The State Criminal Court's Orders and Decisions Preclude Many of Defendants' Factual Contradictions and Arguments ..............................................................11

        B.   Defendants' Motion Contains Procedurally Improper Tactics That Violate Tenth Circuit Precedent ................................................................................... 13

    II.   Each Defendant is Liable to Each Plaintiff under Each of the Four Claims in the Complaint ............................................................................................... 20

        A.   Conspiracy Liability Binds All Defendants to All Constitutional Violations. ............... 20

        B.   Each Defendant is Liable for Each Claim Because There is a Causal Link Between Their Participation and the Deprivation of Plaintiffs' Constitutional Rights ................. 21

        C.   Defendants Reyes and Lucey Have Supervisory Liability for Each Claim. .................. 22

        D.   Each Defendant is Liable for Each Claim for Their Failure to Intervene and Under the Doctrine of Ratification. ................................................................... 24

        E.   The Rubicon Entities Have Independent Standing for All Claims. .............................. 25

    III.   Neither Beckett nor Reyes is Entitled to Absolute Immunity for the Claims Alleged in the Complaint. ................................................................................... 26

        A.   Defendant Beckett's Pre-Prosecution Investigative Acts Are Not Entitled to Absolute Immunity ....................................................................................... 27

        B.   Defendant Reyes' Administrative Acts Are Not Entitled to Absolute Immunity. .......... 28

C.  *Nielander v. Board of County Commissioners* Does Not Support the Sweeping Prosecutorial Immunity the Defendants Claim; Respectfully, It Misstates Controlling Supreme Court Precedent. ............................................................... 29

D.  Prosecutors Cannot Launder Wrongful Acts Through Judicial Proceedings. ................. 30

IV.  Defendants are Not Entitled to Qualified Immunity for Bringing the Media to the Execution of a Sealed Search Warrant. .................................................................. 30

A.  Media Ride-Along Liability Under *Wilson v. Layne* Extends to Commercial Premises. ................................................................................. 30

B.  The Sealed-Warrant Violation Independently Defeats Qualified Immunity for the Media Ride-Along. .................................................................... 35

V.  Defendants are Not Entitled to Qualified Immunity on a Theory of Arguable Probable Cause or Any Other Basis. ..................................................................... 35

A.  Plaintiffs Allege Constitutional Violations. .................................................... 36

B.  The Rights Violated Were Clearly Established. ............................................... 36

C.  The Arguable Probable Cause Defense Fails. .................................................. 39

VI.  Plaintiffs Have Stated a Claim for Malicious Prosecution. ............................................ 40

A.  The Larsens were Seized and Have Standing to Bring a Malicious Prosecution Claim. ............................................................................... 40

B.  The Prosecution Terminated in Favor of the Plaintiffs. ................................................ 41

CONCLUSION ........................................................................................................ 42

## TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*, 449 U.S. 90 (1980) ................................................................................. 17

*Anderson v. Creighton* 483 U.S. 635 (1987) ...................................................................... 43

*Arizona v. Hicks*, 480 U.S. 321 (1987) .............................................................................. 36

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................. 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 16

*Berger v. Hanlo*n 129 F.3d 505 (9th Cir. 1997) .................................................................. 38

*Bills v. Aseltine* 958 F.2d 697 (6th Cir. 1992) .................................................................... 39

*Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019) ................................................. 9, 35

*Botello v. Gammick*, 413 F.3d 971 (9th Cir. 2005) ............................................................ 33

Brown v City of Tulsa 124 F.4th 1251 (10th Cir. 2025). ............................................... 20, 24

*Brown v. Zavaras*, 63 F.3d 967 (10th Cir. 1995) ............................................................... 25

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ..................................................... 9, 19, 33, 34, 35

*Burns v. Reed*, 500 U.S. 478 (1991) ....................................................................... 16, 32, 33, 35

*City of Los Angeles v. Patel* 576 U.S. 409 (2015) ............................................................. 39

*Cuervo v. Sorenson*, 112 F.4th 1307 (10th Cir. 2024) ............................................. 17, 20, 25

*DeLoach v. Bevers*, 922 F.2d 618 (10th Cir. 1990) ...................................................... 41, 47

*Dennis v. Sparks*, 449 U.S. 24 (1980) ............................................................................... 26

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) ................................................. 28, 29

*Dodge v. Cotter Corp.*, 203 F.3d 1190 (10th Cir. 2000) ................................................... 17

*Donahoe v. Arpaio*, 869 F. Supp. 2d 1020 (D. Ariz. 2012) .......................................... 17, 36

*Forrester v. White*, 484 U.S. 219 (1988) ........................................................................... 32

*Frandsen v. Westinghouse Corp.*, 46 F.3d 975 (10th Cir. 1995) ....................................... 18

*Franks v. Delaware*, 438 U.S. 154 (1978) ............ 14, 15, 17, 18, 21, 22, 23, 28, 31, 40, 41, 45, 47

*Fuqua v. Santa Fe County Sheriff's Office*, 157 F.4th 1288 (10th Cir. 2025) .................... 21

*GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381 (10th Cir. 1997) ................ 17

*Hanlon v. Berger*, 526 U.S. 808 (1999) ................................................................. 10, 36, 37, 40

*Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995) .................................................................... 18

*Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995) ....................................................... 36

*Hope v. Pelzer* 536 U.S. 730 (2002) .................................................................................. 43

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ........................................................................ 32

*Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002) ......................................... 25

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) ................................................... 26

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ........................................................................ 9, 32

*Katz v. United States*, 389 U.S. 347 (1967) ...................................................................... 42

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) ............................................ 16

*Klen v. City of Loveland*, 661 F.3d 498 (10th Cir. 2011) .............................................. 42, 47

*Lander v. Summit Cnty. Sch. Dist.*, 109 F. App'x 215 (10th Cir. 2004) ............................ 24

*Lauro v. Charles* 219 F.3d 202 (2d Cir. 2000) .................................................................. 39

*Lone Star Industries, Inc. v. Horman Family Trust* 960 F.2d 917 (10th Cir. 1992).................... 24

*Malley v. Briggs*, 475 U.S. 335 (1986) .............................................................................. 42

*Mancusi v. DeForte* 392 U.S. 364 (1968)......................................................................... 39

*Manuel v. Jolie* 580 U.S. 357 (2017) ................................................................................ 31

*Marshall v. Barlow's, Inc.* 436 U.S. 307 (1978) ................................................................ 39

*Maryland v. Garrison*, 480 U.S. 79 (1987)........................................................................ 36

*McCoy v. Alamu*, 141 S. Ct. 1364 (2021) .......................................................................... 44

*Mink v. Suthers*, 482 F.3d 1224 (10th Cir. 2007) ........................................................ 33, 35

*Murdock v. Ute Indian Tribe*, 975 F.2d 683 (10th Cir. 1992) ............................................. 18

*New York v. Burger* 482 U.S. 691 (1987)......................................................................... 39

*Nielander v. Board of County Commissioners*, 582 F.3d 1155 (10th Cir. 2009) ................... 34, 35

*O'Connor v. Ortega* 480 U.S. 709 (1987).......................................................................... 39

*Pace v. Swerdlow*, 519 F.3d 1067 (10th Cir. 2008)........................................................... 17

*Paine v. City of Lompoc*, 265 F.3d 975 (9th Cir. 2001)....................................................... 35

*Peterson v. Jensen* 371 F.3d 1199 (10th Cir. 2004)......................................................... 24

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004)............................................ 9, 40, 42, 44, 45

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174 (10th Cir. 2007).............................. 16

*Rivas v. State Bd. for Cmty. Colleges & Occupational Ed.*, 517 F. Supp. 467 (D. Colo. 1981) ... 27

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ......................................................................... 16

*See v. City of Seattle* 387 U.S. 541 (1967)....................................................................... 38

*Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009) .................................................... 17

*Smith v. Wade*, 461 U.S. 30 (1983)................................................................................. 41

*Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) ........................................................... 26, 27

*Soldal v. Cook County*, 506 U.S. 56 (1992)................................................................ 19, 31, 46

*Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990) ........................................................... 18

*Stonecipher v. Valles*, 759 F.3d 1134 (10th Cir. 2014).................................................. 44, 45

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) .......................................................... 17, 21, 22, 23

*Taylor v. Riojas* 592 U.S. 7 (2020) ............................................................................ 43, 44

*Thomas v. Kaven*, 765 F.3d 1183 (10th Cir. 2014)....................................................... 32, 42

*Thompson v. Clark*, 596 U.S. 36 (2022) .................................................................11, 46, 47, 48

*Truman v. Orem City*, 1 F.4th 1227 (10th Cir. 2021) ........................................... 9, 10, 20, 35, 44

*United States v. $8,850*, 461 U.S. 555 (1983)................................................................... 19

*United States v. Anderson*, 154 F.3d 1225 (10th Cir. 1998).............................................. 38

*United States v. Angevine*, 281 F.3d 1130 (10th Cir. 2002) .............................................. 40

*United States v. Jacobsen*, 466 U.S. 109 (1984)............................................................... 19

*United States v. Lanier*, 520 U.S. 259 (1997)............................................................. 10, 43

*United States v. Place*, 462 U.S. 696 (1983) .................................................................... 19

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009).............................................................. 32

*Vondrak v. City of Las Cruces*, 535 F.3d 1198 (10th Cir. 2008)........................................... 30

*Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) ..................................................... 41

*Wilson v. Layne*, 526 U.S. 603 (1999) ............................................... 10, 30, 36, 37, 39, 40

*Wise v. City of Richfield*. 2005 WL 361492 (D. Minn. Feb. 14, 2005) ....................................... 38

*Wolford v. Lasater*, 78 F.3d 484 (10th Cir. 1996) ................................................... 18, 24

*Youngs v. City of St. George*, 2019 WL 2994227 (D. Utah July 9, 2019).................................... 30

**Statutes**

42 U.S.C. § 1985 ...................................................................................................... 27

42 U.S.C. § 1983 ...................................................................................................... 27

**Rules**

Fed. R. Evid. 201 ............................................................................................ 17, 20, 23

**RELIEF SOUGHT AND GROUNDS**

Plaintiffs Rudy Larsen, Jena Larsen, Rubicon Contracting, LLC, Scandia Company, LLC, and Smart Rain Systems, LLC (collectively, "Plaintiffs"), by and through undersigned counsel, submit this memorandum in opposition to the Motion to Dismiss (the "Motion") filed by Defendants Sean D. Reyes, Leo Lucey, Michael Adam Jeter, and Kaytlin Virginia Beckett (collectively, "Defendants"). The Court should deny the Motion.

Defendant Sean Reyes was supposed to be Utah's top law enforcement officer. Instead, he ran the Utah Attorney General's Office ("AGO") like a personal propaganda machine, manufacturing human trafficking charges against innocent people so he could hold press conferences, secure millions in federal and state funding, and distract the public from his increasingly toxic alliance with Tim Ballard, a man under criminal investigation for the very conduct Reyes accused Plaintiffs of committing. The irony would be poetic if the consequences for the Plaintiffs were not so devastating.

Under Reyes's direction, Defendants did not investigate a crime. They invented one. A six-month investigation uncovered no evidence to support probable cause for human trafficking or for any other crime. (Complaint ¶ 39). No matter. Defendant Beckett wrote search warrant affidavits anyway, and these affidavits were so riddled with fabrications that a state court judge later found substantial evidence that the government knowingly lied under oath to obtain the warrants. Defendant Jeter signed those affidavits under penalty of perjury, swearing to statements the investigation had already disproven. Defendant Lucey then called Fox 13 News, invited their cameras to a sealed warrant execution at Plaintiffs' private offices, and personally escorted reporters through the building, turning a constitutionally protected legal proceeding into

made-for-television perp walk designed to convict Plaintiffs in the court of public opinion before they ever saw the inside of a courtroom.

The charges carried potential life sentences. The warrants froze over $5 million in personal and corporate assets. Three employees were jailed for eleven days on no-bail warrants. A restraining order prevented Plaintiffs from speaking to each other and running their own businesses. Reyes appeared in the media calling Plaintiffs' lawful employment practices "subhuman", a word chosen not because it was accurate, but because it made for a better headline. (*Id*. ¶ 171.) The human trafficking victim count for SECURE jumped over 1,000% in a single year (*Id*. ¶ 27). The funding followed. So did Beckett's pay raise. Mission accomplished.

Then the house of cards collapsed.

When Plaintiffs filed a *Franks* motion, the legal mechanism that forced Defendants to defend their false affidavits under oath and cross-examination, the AGO's plan began to collapse. Utah District Court Judge Rita Cornish granted the motion, finding four categories of knowingly false or recklessly misleading statements in the affidavits. Rather than face a dismissal on the merits, the State voluntarily dismissed every single charge and attempted to launder the illegally seized evidence by citing a "federal investigation" that Beckett herself initiated as a Special Assistant U.S. Attorney and part of the SECURE task force. No trial. No conviction. No evidence. Just a quiet retreat wrapped in a press release. Judge Cornish herself noted that the State had "prematurely filed charges" (*Id*. ¶ 187), a diplomatic way of saying Defendants charged innocent people without a factual or legal basis to do so.

And now, having destroyed Plaintiffs' hard-won reputations, businesses, finances, and freedom, all based on fabricated evidence, these same Defendants stand before this Court and

2

demand total immunity from any consequences. That is not a legal argument. That is an attempted cover-up.

In the Motion, Defendants complain that the Complaint "does its best to smear Prosecutor Beckett and demonize her actions." (Motion at p. 8.) Plaintiffs are not demonizing anyone. They are reciting facts which are drawn from court records, sworn exhibits, and a *Franks* Order entered by the judge who reviewed and considered the actual evidence. If the recitation reads like an indictment, it is a narrative of the Defendants' own making.

The Motion's legal arguments are no more persuasive than its rhetoric. Defendants Reyes and Beckett claim absolute prosecutorial immunity, but the Supreme Court held in *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993), that prosecutors who fabricate evidence during an investigation are not advocates, but are instead investigators entitled only to qualified immunity. *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997), held that a prosecutor who swears to false facts acts as a complaining witness and is only entitled to qualified immunity. Both the U.S. Supreme Court and the Tenth Circuit have held that there is no absolute immunity for a prosecutor who participates in fabricating evidence during an investigation in order to build a case to charge. *See Buckley*, 509 U.S. at 275 n.7 (fabrication of evidence during an investigation "fall[s] on the administrative, rather than the judicial, end of the prosecutor's activities, and therefore [is] entitled only to qualified immunity."); *Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019); *Truman v. Orem City*, 1 F.4th 1227 (10th Cir. 2021); *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004). Lastly, prosecutors do not receive absolute immunity for statements made to the media about potential or pending cases; such comments are entitled to at most qualified immunity. *Buckley*, 509 U.S. at 277–78 (prosecutors are not entitled to absolute immunity for extra-judicial public statements concerning criminal proceedings).

Defendants argue they could receive qualified immunity because they can find no appellate cases that address media ride-alongs at "commercial property." This argument fails for several reasons. For one, *Wilson v. Layne*, 526 U.S. 603 (1999), does not limit its holding to media presence inside a home, and the decision was unanimous, which, as Justice Stevens pointed out, is unusual in Fourth Amendment cases, stressing the clarity of the prohibition even in the absence of appellate case law. Moreover, in a companion case decided the same day as *Wilson v. Layne*, the Supreme Court condemned the presence of CNN during the execution of a warrant on private premises that were not confined to a home. *Hanlon v. Berger*, 526 U.S. 808 (1999). Lastly, both the Supreme Court and the Tenth Circuit have recognized that some constitutional violations are so apparent and obvious that factually identical precedent is not necessary to establish that the law was clearly settled. *United States v. Lanier*, 520 U.S. 259, 269–70 (1997); *Truman v. Orem City*, 1 F.4th 1227, 1235, 1240 (10th Cir. 2021).

Defendants' attacks on the Plaintiffs' malicious prosecution claim fare no better. First, Defendants remarkably claim the Larsen Plaintiffs were never "seized." Apart from the fact that an actual criminal prosecution always and necessarily involves a Fourth Amendment "seizure", the facts alleged in the Complaint demonstrate a high level of government coercion and control over the Plaintiffs. A Fourth Amendment "seizure" is not limited to situations where law enforcement officers tackle, apply force to, handcuff, and/or arrest a person.

Here, Plaintiffs were compelled to self-surrender at the jail, they were booked, and thereafter subject to the legal process of the court. Further, Defendants sought no-bail warrants and pursued efforts to limit the freedom of Plaintiffs with respect to their own children, any travel, and communication with their friends and business partners.  If all that, including being

4

charged with offenses that carry up to a life sentence, is not a seizure, the word "seized" has no meaning, and the Fourth Amendment would become a chimerical protection.

Defendants go on to claim, remarkably, that the case was not terminated in Plaintiffs' favor. That argument utterly lacks legal merit. Under *Thompson v. Clark*, 596 U.S. 36 (2022), this requirement for a Section 1983 malicious prosecution claim is satisfied whenever the prosecution ends without a conviction, *for any reason or no explained reason at all*. Here, after adverse trial court rulings, the State abandoned its case and moved for dismissal of the charges.

Defendants claim the Complaint fails to allege Reyes's personal involvement. They are wrong. It alleges he directed the investigation strategy (Complaint ¶¶, 10, 16–28), built the funding model that incentivized false charges (*Id*. ¶¶ 25–27), partnered with Ballard to create the political motive (*Id*. ¶¶ 19–21), made false public statements about "subhuman" conditions (*Id*. ¶ 171), and coordinated media coverage to rehabilitate his office's image (*Id*. ¶¶ 143-145). If that is not personal involvement, then no Attorney General could ever be held accountable for anything their office does in their name, at their direction, and for their benefit.

And that is the point. Accountability is what Plaintiffs seek to impose and what Defendants are trying mightily to avoid. Indeed, Defendants simply walked away from the damage they caused. Reyes left office with his task force funded, his headlines secured, and his alliance with Ballard buried. Beckett got her pay raise. Lucey got to put footage on the evening news. Jeter swore to later judicially determined lies with no consequences. Meanwhile, Plaintiffs were left with the wreckage of their lives, their businesses, and their reputations, not to mention the substantial legal costs and debilitating emotional distress they endured. They, ultimately, got nothing but a "dismissed without prejudice" stamp on their case.

Section 1983 was enacted to provide remedies against state officials who abuse the substantial power they exercise to violate the federal rights of those they, ironically, have taken a constitutional oath to protect. That happened here. This case should proceed. The Motion to Dismiss should be denied in its entirety.

## STATEMENT OF RELEVANT FACTS

### 1. Parties and Procedural Background

Plaintiffs Rudy and Jena Larsen are Utah residents and longtime spouses with three minor children. They co-founded Rubicon Contracting, LLC in 2011. (Complaint ¶¶ 3–4.) At the time of the events described herein, Rubicon's enterprise value exceeded $300 million; Scandia had over $250 million in real estate projects; and Smart Rain was a growing irrigation technology company. (*Id*. ¶¶ 4–6.)

Defendant Reyes was Utah's Attorney General during the relevant period. Defendant Lucey was Chief Investigator for the AGO and supervisor of the SECURE Strike Force. Defendant Jeter was an Agent with the SECURE Strike Force and lead investigator on this case. Defendant Beckett was an Assistant Attorney General who drafted the search warrant affidavits and charging documents. (*Id*. ¶¶ 10–13, 49.) All Defendants acted under color of state law. (*Id*. ¶¶ 210, 218.)

### 2. Background and Alleged Motive

Since 2014, Defendant Reyes promoted himself as "Utah's top cop," personally involving himself in investigations, traveling on privately funded trips to South America, and donning tactical gear at warrant executions. (*Id*. ¶ 16.) Reyes partnered with Tim Ballard and his anti-human trafficking non-profit organization, Operation Underground Railroad ("OUR"), which donated millions to support AGO/SECURE operations. (*Id*. ¶¶ 17-19)

By late 2023, OUR and Ballard were subjects of misconduct and fraud investigations. (*Id.* ¶ 21-.) On November 14, 2023, the Utah Legislature authorized an audit of the AGO's use of OUR funds. (*Id.* ¶ 22.) Under political pressure, three days later, the AGO obtained the search warrants in this case based on affidavits containing knowingly false statements. (*Id.* ¶¶ 25, 40–41.)

In addition, the AGO/SECURE sought new grants as OUR donations waned. In a Federal OVC grant application for almost $1 million, the AGO reported victim counts of 69 (2021), 26 (2022), and 310 (2023), *an increase of over 1,000%*, (*Id.* ¶¶ 24.), *which was possible solely because of the case against Plaintiffs*. (Id. ¶ 27.) Moreover, Defendant Beckett was promoted to Section Director during this time. (*Id.*)

### 3. The False Affidavits and Warrants

Between May and November 2023, AGO/SECURE investigated Rubicon and interviewed approximately a dozen H-2B visa workers and U.S. citizen employees. No evidence of human trafficking or other crimes emerged. (*Id.* ¶ 39.)

On November 17, 2023, Defendant Beckett drafted and Defendant Jeter swore under penalty of perjury to affidavits seeking ten sealed warrants. Under Defendant Lucey's supervision and direction, Defendant Jeter was the lead investigator. (*Id.* ¶ 49.) These affidavits were riddled with false statements and material omissions. (*Id.* ¶¶ 40–41.) Specifically:

- Immigration Documents: The affidavits claimed victims lacked I-797A forms and that Rubicon withheld government IDs. However, multiple victims told Jeter directly that they retained their documents, and Jeter photographed victims' passports and visas during interviews. (*Id.* ¶¶ 60-66.)

7

- Forced Housing: The affidavits claimed all seven victims were forced to live in Rubicon-provided housing and sign a rent-deduction agreement. However, documents in Jeter's possession showed an opt-in/opt-out choice signed by workers while they were still in Mexico before visas were ever issued. (*Id.* ¶¶ 89–99.)

- FinTwist Accounts: The affidavits stated that Rubicon closed H-2B visa workers' pay card accounts and kept the funds. However, FinTwist pay cards belonged to employees, who retained spending and withdrawal ability post-employment, facts Jeter possessed at the time. (*Id.* ¶¶ 100–117.)

- Deportation Threats: The affidavits recited threats of deportation, but the statements occurred in the context of explaining federal H-2B compliance requirements, which required reporting H-2B visa workers to the U.S. Dept. of Labor if those workers abandoned their jobs, which Jeter later admitted was legally correct. (*Id.* ¶¶ 118–136.)

4. **The August 1, 2024 *Franks* Order**

On August 1, 2024, Judge Cornish issued a detailed Order Granting Movants' *Franks* Motion in Part, finding that the criminal defendants made a substantial preliminary showing under *Franks v. Delaware*, 438 U.S. 154 (1978). (Complaint ¶¶ 88, 117, 136–137.) Specifically, Judge Cornish found:

- "[T]here has been a sufficient proffer of evidence that, at the time Agent Jeter made the statements, he either knew that they were false or had information in his possession that would have contradicted what he said, and he had a reckless disregard for the truth." (*Id.* ¶ 117.)

- "Considering the omitted information and purging the information claimed to be misleading, *there would not have been probable cause* to support the broad searches

approved here. . . . The Subject Warrants as written would have been rejected." (*Id.*, Ex. B, the *Frank's Order*, pg. 15.) (emphasis added).

### 5. Continued False Statements After Explicit Notice

On March 6, 2024, the Larsens filed a detailed *Franks* Motion documenting that Agent Jeter's affidavit statements were false, with specific citations to contradictory evidence. (*Id.* ¶ 72.) On May 10, 2024, after the *Franks* Motion had been fully briefed and all Defendants had been put on explicit notice that the original statements were challenged as knowingly false, Defendant Beckett prepared and Defendant Jeter signed a Second Amended Information under penalty of perjury *containing the same false statements*. (*Id.* ¶¶ 155-157.) In addition to maintaining the same false statements, Defendants added seven new first-degree felony charges. (*Id.* ¶ 156.)

### 6. Media Coordination and Fourth Amendment Violations

On November 20, 2023, despite the warrants being sealed, Defendant Lucey invited media from Fox 13 to witness the raid at Rubicon's headquarters and shared Jeter's sealed affidavits with the media. The media was escorted inside the private building during the warrant execution. (*Id.* ¶¶ 139–146, 227–232.) A Fox 13 reporter confirmed on-air: "Leo Lucey invited Fox 13 to be part of today's operation." (*Id.* ¶ 141.) When a Rubicon employee asked the media to leave because they were trespassing, Defendant Lucey interjected himself, rejected the request, and insisted the media could remain, stating "neither you nor the owner have any right to privacy." (*Id.* ¶¶ 142, 229–230.)

The unlawful disclosure of the sealed documents and the presence of the media during the execution of the sealed warrants served absolutely no legitimate law enforcement purpose. (*Id.* ¶¶ 231–233.)

### 7. Seizure of Funds and Business Interference

On November 20, 2023, the AGO seized over $5 million across corporate and personal accounts, causing bounced payments to vendors, employees, and partners. (*Id*. ¶¶ 148–150.) Defendants seized Plaintiffs' accounts "to inflict pain and bankrupt the Plaintiffs." (*Id*. ¶ 149.) The AGO also directly contacted Rubicon's major customers, including Walmart, damaging business relationships and causing Plaintiffs to lose tens of millions of dollars in ongoing business. (*Id*. ¶¶ 158–162.)

### 8. Dismissal of Criminal Charges

On February 24, 2025, Judge Cornish dismissed all criminal charges against Plaintiffs, finding that "the State prematurely filed charges before having adequate evidence to support them." (*Id*. ¶¶ 187, 243.) The criminal case was terminated in favor of the Larsens. (*Id*. ¶ 243.) All charges have been dismissed and there is no pending state or federal prosecution. (*Id*.)

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

At this stage, the Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012); *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "The

10

issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Immunity is an affirmative defense. An official seeking absolute immunity "bears the burden of showing that such immunity is justified." *Burns v. Reed*, 500 U.S. 478, 486–87 (1991). When it cannot be conclusively determined from a complaint whether a prosecutor's conduct was performed in an advocacy role, absolute immunity cannot be decided on a motion to dismiss. *See Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1059 (D. Ariz. 2012).

## ARGUMENT

### I. Several Threshold Issues and Preliminary Objections Apply to the Motion.

#### A. The State Criminal Court's Orders and Decisions Preclude Many of Defendants' Factual Contradictions and Arguments.

This Court should recognize that two state court orders—the *Franks* Order (Complaint, Exhibit B) and the Return of Funds Order (Complaint, Exhibit A)—fundamentally shape the legal landscape and require rejection of the Motion to Dismiss. The Motion completely ignores the Return of Funds Order and fails to grapple with the preclusive effect of these orders. The legal errors here are manifest.

First, these orders are attached to the Complaint as exhibits, making them part of the pleading under Fed. R. Civ. P. 10(c). *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Under *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997), when a document is part of the complaint, "the document controls." Second, under *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024), documents attached to the complaint, incorporated by reference, or central to claims and indisputably authentic are cognizable at the 12(b)(6) stage. Third, as public

11

court records, the orders are subject to judicial notice under Fed. R. Evid. 201. *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

General principles of collateral estoppel apply in Section 1983 actions. *Allen v. McCurry*, 449 U.S. 90 (1980). The Tenth Circuit applied this doctrine in *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000). The Tenth Circuit applies collateral estoppel when: (1) the issue previously decided is identical; (2) the prior action was finally adjudicated on the merits; (3) the party against whom estoppel is invoked was a party, or in privity with a party, to the prior adjudication; and (4) that party had a full and fair opportunity to litigate the issue. *Murdock v. Ute Indian Tribe*, 975 F.2d 683, 687 (10th Cir. 1992); *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995).

The Ninth Circuit has addressed the showing of a constitutional violation for Section 1983 purposes in the *Franks* hearing context: "The showing necessary to get to a jury in a section 1983 action is the same as the showing necessary to get an evidentiary hearing under *Franks*." *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995). Because both proceedings ask identical questions, whether the officer knowingly or recklessly made false statements, and whether those falsehoods were material to probable cause, the state court's *Franks* finding directly establishes the constitutional violation element of the Section 1983 claim. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). Further, the *Franks* holding has been clearly established law since 1978, eliminating any claim of qualified immunity. *Stewart v. Donges*, 915 F.2d 572, 583 (10th Cir. 1990) (false affidavits clearly established even as of 1986).

The Return of Funds Order is also a strong candidate for formal collateral estoppel on the issue of the illegal seizure of the corporate and personal bank accounts of Plaintiffs because it is unambiguously a final order on the merits. The state court adjudicated the motion for mandatory

12

return of seized property after full briefing, considered all arguments, and entered a definitive ruling, ordering the return of all funds. The court found: (1) the AGO seized funds exceeding $6.5 million; (2) the AGO failed to take any of four required statutory actions within the 75-day deadline, a failure the AGO "does not argue" against; and (3) the AGO's affirmative defenses were rejected. The subsequent Attorney Fees Order (Complaint, Exhibit C) further confirms finality.

The Fourth Amendment protects property interests, *Soldal v. Cook County*, 506 U.S. 56 (1992), and a seizure without legal authority constitutes a "meaningful interference with an individual's possessory interests" that is presumptively unreasonable. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Even assuming, for the sake of argument, the initial seizure was valid, the AGO's failure to take any action to preserve the property rendered the continued retention unlawful. The Supreme Court has recognized that even initially lawful seizures may become unreasonable if prolonged beyond necessity. *See United States v. Place*, 462 U.S. 696, 709–10 (1983); *United States v. $8,850*, 461 U.S. 555 (1983).

Plaintiffs respectfully request that this Court: (1) treat the state court orders as part of the complaint under Rule 10(c) and give them their full evidentiary weight; (2) apply collateral estoppel to preclude Defendants from relitigating the factual findings in the orders; and (3) in the alternative, reserve the collateral estoppel argument for consideration at summary judgment.

B.  **Defendants' Motion Contains Procedurally Improper Tactics That Violate Tenth Circuit Precedent.**

Before addressing the merits of the Motion, Plaintiffs respectfully direct the Court's attention to multiple procedural improprieties in the Motion that independently require the Court to disregard significant portions of Defendants' arguments. The Motion openly denies complaint allegations, attaches extrinsic exhibits outside the four permitted categories, and invites the Court

13

to conduct fact-intensive probable cause analysis, all of which are impermissible at the Rule 12(b)(6) stage under binding Tenth Circuit precedent.

Defendants repeatedly deny the Complaint's factual allegations, including in footnotes 1, 12, and 27 of the Motion. This is flatly improper. In *Brown v. City of Tulsa*, the Tenth Circuit reversed a dismissal where the district court credited the defendants' factual assertions over the complaint's allegations, holding: "Contrary to the district court's suggestion, Brown was not required to controvert any facts alleged by the City of Tulsa at the 12(b)(6) stage." 124 F.4th 1251, 1270 (10th Cir. 2025). "In fact, no plaintiff is . . ." *Id*. The court further found reversible error where the district court was "constru[ing] Brown's allegation *against him*, rather than in his favor, as required by the Rule 12(b)(6) standard." *Id*. at 1271 (emphasis in original).

Similarly, in *Truman v. Orem City*, a fabricated-evidence case strikingly similar to this one, the Tenth Circuit rejected a defendant's attempt to introduce an alternative factual narrative, holding: "This argument fails, however, because it is premised on the assumption that the prosecutor lacked personal knowledge of the inaccurate evidence. This is contrary to the allegations in the amended complaint . . . which must be accepted as true at this stage." 1 F.4th 1227, 1241 n.8 (10th Cir. 2021). Every factual denial in the Motion must be disregarded.

Defendants attach five exhibits to the Motion, including a redlined version of the search warrant affidavit (Exhibit 4 to the Motion) that is a defendant-created demonstrative annotated with their own characterizations of what is "allegedly false" and "allegedly omitted." Under *Cuervo v. Sorenson*, a court ruling on a 12(b)(6) motion may consider only four categories of materials: (1) documents attached to the complaint; (2) documents incorporated by reference; (3) documents referred to in the complaint that are central to the claim and indisputably authentic; and (4) matters subject to judicial notice under Fed. R. Evid. 201. 112 F.4th 1307, 1312 (10th

14

Cir. 2024). Defendants' redlined affidavit falls outside all four categories. It was not attached to, incorporated in, or referred to in the Complaint. It is a defendant-created interpretive overlay containing subjective annotations—not an "indisputably authentic" document. And a party's own demonstrative exhibit is not a judicially noticeable fact.

The Tenth Circuit's decision in *Fuqua v. Santa Fe County Sheriff's Office*, 157 F.4th 1288 (10th Cir. 2025), is directly on point. There, officers attached body-camera and dash-camera footage to their 12(b)(6) motion showing the suspect had fired a BB gun, directly contradicting the complaint's allegation that the suspect was "unarmed and fleeing." *Id*. at 1296. The Tenth Circuit affirmed exclusion, holding that the videos' "mere presence in the record did not give the court leeway to consider them when deciding the officers' motion to dismiss." *Id*. at 1298. The court explicitly refused to adopt a "blatant contradiction" doctrine, declaring: "[o]ur caselaw instructs us not to consider contradictory evidence on a motion to dismiss." *Id*. at 1299. The court stated unequivocally: "The officers must wait until summary judgment (or trial) to attack the complaint's factual allegations." *Id*. at 1301. If the Tenth Circuit refused to consider actual video evidence that appeared to directly contradict a complaint, this Court should not consider a defendant-created redlined document designed to show probable cause existed when the Complaint alleges the underlying facts were fabricated.

Exhibits 1 and 2 to the Motion (state court filings) and Exhibit 5 (federal warrant) are court records that may be judicially noticed for their existence. But Defendants use them not merely to show they exist. Defendants use the substance of these documents to argue the criminal case terminated unfavorably and that a federal investigation proves guilt. This crosses the line from noticing existence to proving truth, which the 10th Circuit in *Tal v. Hogan* expressly

15

prohibits. 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Judicially noticed documents "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Id.*

Specifically, Defendants cite Judge Cornish's statement that she is "not yet convinced that the State has engaged in misconduct" (Exhibit 2 to the Motion, pp. 3–4). But the Complaint alleges the *Franks* Order, also issued by Judge Cornish, found the affidavits contained false or misleading statements sufficient to put probable cause in doubt. Defendants cherry-pick one judicial statement while ignoring the *Franks* finding that cuts against them. The Court cannot weigh these competing judicial statements at the 12(b)(6) stage—that is evidence weighing, not pleading analysis. *Tal v. Hogan* makes clear that motions to dismiss are "not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint." 453 F.3d at 1265–66.

Exhibit 5 of the Motion (the federal search warrant) is equally improper for the purpose Defendants intend it to serve. Defendants cite the existence of a federal investigation to imply Plaintiffs' guilt and to suggest the state criminal case had a legitimate basis. But the mere alleged existence of a separate federal investigation proves nothing about the validity of the state prosecution that is the subject of this lawsuit. Indeed, the Complaint alleges the state case was manufactured with fabricated evidence. The federal government's decision to possibly investigate does not retroactively validate what was done by these Defendants. Using Exhibit 5 to argue Plaintiffs are guilty is precisely the kind of truth-of-the-matter use that judicial notice does not permit.

If this court considers the federal search warrant in the context of this Motion, the court should also take judicial notice of the search warrant application (attached as Exhibit 1) and the motion to seal the search warrant application (attached as Exhibit 2) used to obtain the federal

16

search warrant.[1] The federal search warrant was not part of an independent federal investigation as Defendant Beckett represented to Judge Cornish in her motion to dismiss the state criminal case. Instead, it was Beckett, in her capacity as a Special Assistant U.S. Attorney, who was seeking the federal search warrant. (*See* Exhibit 2.)

The federal search warrant application repeats many of the same false statements that Judge Cornish had previously identified as negating probable cause in her *Franks* order in the state criminal case, including the false statements related to housing conditions, forced participation in the rent deduction program, the FinTwist accounts, and threats of deportation. Far more concerning are the glaring false statements in the federal search warrant application that the state search warrants were "legally obtained" and that the "federal search warrant is being sought in an abundance of caution to ensure that federal agents have proper authorization to seize and search" the evidence the AGO had seized pursuant to the state search warrants. (*See* Exhibit 1, page 5.) Nowhere in the federal search warrant application did Defendant Beckett disclose that the AGO had already lost a *Franks* motion related to the *illegally* seized evidence or that the AGO was subject to a protective order from Judge Cornish that prevented the AGO from reviewing any of the evidence it had seized.

Even if the original affidavit (Exhibit 3 to the Motion) is properly before the Court, it cannot be used for the purpose Defendants intend. *See* analysis of *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) above. When the Complaint alleges the affidavit contains fabricated statements, the facts within the affidavit are by definition disputed, making judicial notice of the

---

[1] The federal search warrant was not unsealed until after the filing of the Complaint in this case and thus was not referenced in the complaint. Plaintiffs may seek leave to amend the complaint to include additional Section 1983 violations related to Defendant Beckett's application for the federal search warrant in her capacity as a Special Assistant U.S. Attorney.

truth of those statements impossible under Fed. R. Evid. 201(b). Defendants' entire "arguable probable cause" analysis (Motion, Section IV, pp. 24–31) asks the Court to credit the unchallenged portions of the affidavit as true while excising only the challenged portions. This is quintessential evidence weighing on a motion that is "not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint." *Id*. at 1265–66.

The "corrected affidavit" analysis that Defendants put forth requires the Court to determine which statements were actually false and whether the remaining content supports probable cause, an inherently fact-intensive inquiry that presupposes discovery. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). This analysis cannot be performed on the pleadings.

Finally, the Motion omits the most critical Tenth Circuit precedent on qualified immunity at the pleading stage. In *Peterson v. Jensen*, the Tenth Circuit held: "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." 371 F.3d 1199, 1201 (10th Cir. 2004). The court emphasized its prior holding in *Lone Star Industries, Inc. v. Horman Family Trust*: "A motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted." 960 F.2d 917, 920 (10th Cir. 1992). This "more challenging standard" exists because defendants who choose to assert immunity at the 12(b)(6) stage, rather than waiting for discovery and summary judgment, accept the constraint that the analysis proceeds entirely on the Complaint's allegations. They cannot have it both ways: filing early to avoid discovery while simultaneously asking the Court to credit facts outside the Complaint.

*Brown v. City of Tulsa*, while decided in the context of a First Amendment retaliation claim rather than a Fourth Amendment claim as here, is nevertheless instructive. 124 F.4th 1251 (10th Cir. 2025). In *Brown*, the Tenth Circuit reaffirmed that "qualified immunity usually cannot

be afforded at the motion to dismiss stage either," and that factual balancing tests requiring evidence development are "inappropriate in evaluating a dismissal under [Rule] 12(b)(6) as no countervailing state interest could have been alleged since the claim is evaluated solely upon the pleadings of the plaintiff." *Id*. at 1269 (quoting *Lander v. Summit Cnty. Sch. Dist.*, 109 F. App'x 215, 221 (10th Cir. 2004) (unpublished)).

Should the Court consider converting the Motion to one for summary judgment under Fed. R. Civ. P. 12(d) in order to consider Defendants' extrinsic exhibits, Plaintiffs respectfully oppose conversion. Rule 12(d) requires that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." No discovery has occurred. Plaintiffs would need to depose Defendant Jeter about what he actually knew when preparing the affidavits, depose Defendant Beckett about her role in drafting the affidavits, and obtain the complete investigative file. The Tenth Circuit has recognized that conversion without adequate discovery opportunity is reversible error. *Brown v. Zavaras*, 63 F.3d 967, 970 (10th Cir. 1995).

Plaintiffs respectfully request that the Court: (1) strike or disregard Defendants' Exhibit 4 as improper extrinsic evidence that falls outside the four categories permitted under *Cuervo v. Sorenson*, 112 F.4th 1307 (10th Cir. 2024), and *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002); (2) strike or disregard all factual denials in the Motion, including those in footnotes 1, 12, and 27; (3) decline to conduct the "corrected affidavit" probable cause analysis in Section IV because it depends on excluded exhibits and impermissible fact-finding; and (4) evaluate the Motion solely on the well-pleaded allegations of the Complaint, as binding Tenth Circuit precedent requires.

## II.    Each Defendant is Liable to Each Plaintiff under Each of the Four Claims in the Complaint.

Before addressing immunity defenses, Plaintiffs establish why each Defendant is liable to each Plaintiff for each of the four claims. The Complaint supports the liability of each Defendant for each of the four claims through five overlapping theories: (1) direct participation; (2) conspiracy; (3) integral participation; (4) supervisory liability; and (5) failure to intervene. Under any of these theories, all Defendants are liable for all claims. Additionally, the entity Plaintiffs (Rubicon Contracting, LLC; Scandia Company, LLC; and Smart Rain Systems, LLC) have standing to bring each of the four claims in the Complaint.

### A.  Conspiracy Liability Binds All Defendants to All Constitutional Violations.

Under Section 1983, a plaintiff may hold any member of a conspiracy liable for the constitutional violations committed by co-conspirators in furtherance of the conspiracy. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). The agreement to conspire "may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990). Once a conspiracy is established, "each conspirator is liable for the acts of the other conspirators performed in furtherance of the conspiracy, even if the conspirator did not participate directly in those acts." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

The Complaint alleges a conspiracy among all four Defendants to manufacture false trafficking charges for personal and political gain. (Complaint ¶¶ 18–28.) The circumstantial evidence is overwhelming:

- Common Motive: All Defendants shared the goal of generating publicity, securing funding, and deflecting from the Ballard/OUR scandals. (*Id.* ¶¶ 22–28.)

20

- Coordinated Timing: The warrants were obtained three days after the Legislature opened an audit of the AGO, indicating top-level coordination involving Defendant Reyes. (*Id.* ¶¶ 22–25.)

- Joint Actions: Defendant Beckett drafted affidavits that Defendant Jeter swore to, under Defendant Lucey's supervision, to advance Defendant Reyes's political agenda. (*Id.* ¶¶ 40–41, 49.)

- Media Coordination: Defendant Lucey invited media while Defendant Reyes made false public statements, demonstrating a unified strategy. (*Id.* ¶¶ 140–142, 171.)

- Continued Prosecution: Even after the *Franks* Motion put all Defendants on notice, they collectively doubled down by filing the Second Amended Information with seven additional charges, repeating false allegations under oath. (*Id.* ¶ 157.)

Because all Defendants are co-conspirators, each is liable for every constitutional violation committed by any conspirator in furtherance of the scheme, including the illegal searches (Claim 1), illegal seizures (Claim 2), media ride-along (Claim 3), and malicious prosecution (Claim 4).[2]

**B. Each Defendant is Liable for Each Claim Because There is a Causal Link Between Their Participation and the Deprivation of Plaintiffs' Constitutional Rights.**

---

[2] If the court dismisses any of the claims as to an individual Defendant for lack of direct participation in the unconstitutional actions alleged under that claim, Plaintiffs request that the court do so without prejudice to allow Plaintiffs an opportunity to seek leave to amend the Complaint to include a claim for specific conspiracy liability under 42 U.S.C. § 1985. *Rivas v. State Bd. for Cmty. Colleges & Occupational Ed.*, 517 F. Supp. 467, 471 (D. Colo. 1981) (finding the appropriate remedy for plaintiff's failure to allege which defendants were responsible for specific discrimination acts under 42 U.S.C. §1983 and §1985, was leave to amend, rather than dismissal.)

"[F]or liability under section 1983, direct participation is not necessary. Any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable. The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990). Here, each Defendant was an integral participant in violating Plaintiffs' constitutional rights: Each defendant knowingly participated in conduct that set in a motion the series of events that deprived plaintiffs of their constitutional rights.

- Defendant Jeter: Swore to the false affidavits, executed the warrants, participated in the seizures, was present during the media ride-along, and continued the prosecution. (Complaint ¶¶ 40–41, 147–150, 157–158.)

- Defendant Beckett: Drafted the false affidavits, prepared the charging documents, and continued and expanded the prosecution after the *Franks* Motion was fully briefed and after being put on notice of falsity. (*Id.* ¶¶ 40–41, 151–152, 157.)

- Defendant Lucey: Supervised the investigation, directed the raid, invited the media, and oversaw the seizure. (*Id.* ¶¶ 11, 49, 140–142, 147–150.)

- Defendant Reyes: Directed the overall strategy, implemented the funding policy that motivated the violations, and exploited the prosecution for personal benefit through false public statements. (*Id.* ¶¶18–28, 171.)

**C. Defendants Reyes and Lucey Have Supervisory Liability for Each Claim.**

The Tenth Circuit has recognized that Section 1983 does not require "direct participation" for liability because the statute explicitly reaches any defendant "who subjects or causes to be subjected" any citizen to a violation of federal rights. *Dodds v. Richardson*, 614

22

F.3d 1185, 1195 (10th Cir. 2010) (citing cases); *Id*. at 1208 (Tymkovich, J., concurring) ("The phrase 'causes to be subjected' suggests that liability exists for officials who did not directly violate constitutional rights …."). Put another way, a defendant must have personal involvement in the violation, but that involvement is "not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him." *Id*. at 1195 (citing and quoting Tenth Circuit cases).

Thus, supervisory liability under Section 1983 exists where a plaintiff can demonstrate that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Defendant Reyes, as the supervisor of the other three Defendants, satisfies all three *Dodds* elements:

- Policy: Defendant Reyes, as the elected Attorney General of the State of Utah with supervisory authority over the staff at the AGO, including the other Defendants in this case, adopted and directed those in his office to follow a policy that incentivized creating dramatic increases in the number of human trafficking cases the office brought. (Complaint ¶¶ 25–27.)

- Causation: This policy directly caused the violations—Defendants responded to and implemented the policy by manufacturing the Rubicon prosecution which inflated the alleged trafficking victim count by 1000% in a single year from 2022 to 2023. (*Id*. ¶¶ 24–27.)

23

- State of Mind: Defendant Reyes adopted the policy with at least deliberate indifference to constitutional rights, if not outright intent to deflect public attention from his scandals. (*Id*. ¶¶ 22–28.)

Defendant Lucey satisfies the three elements of *Dodds* as the direct supervisor of Defendant Jeter:

- Policy: "Under Defendant Lucey's supervision and direction, Defendant Jeter was lead investigator." (Complaint ¶ 49.) Defendant Lucey implemented the media coordination policy. (*Id*. ¶¶ 140–142.)

- Causation: Defendant Lucey's direction of the investigation and media strategy directly caused all four violations.

- State of Mind: Defendant Lucey personally invited media, rejected removal requests, and stated Plaintiffs had "no right to privacy", demonstrating intent, far more than deliberate indifference. (*Id*. ¶¶ 142, 229–230.)

### D. Each Defendant is Liable for Each Claim for Their Failure to Intervene and Under the Doctrine of Ratification.

As law enforcement officers, each Defendant has "an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). An officer who fails to intervene is liable for the constitutional violation as if he committed it himself. *See id*. Defendant Jeter was the lead case agent present during the media ride-along. (Complaint ¶ 147.) He either knew of the media presence and acquiesced or failed in his duty to intervene. Under *Vondrak*, Defendant Jeter is liable for the *Wilson v. Layne* violation even if Defendant Lucey was the one who invited the media.

24

Similarly, all Defendants who knew of the false affidavits and failed to correct them, including Defendants Beckett and Lucey, are liable for the false statements even if Defendant Jeter was the one who swore to them.

A supervisor who ratifies unconstitutional conduct after the fact may be held liable for that conduct. *See Youngs v. City of St. George*, 2019 WL 2994227, at *8 (D. Utah July 9, 2019). Ratification occurs when a supervisor learns of the conduct and approves or fails to repudiate it. Defendant Reyes ratified all constitutional violations and is therefore liable for all claims. He ratified the violations by:

- Making false public statements exploiting the prosecution after the raid. (Complaint ¶ 171.)

- Allowing the prosecution to continue after the *Franks* Motion and *Franks* Order from Judge Cornish put the AGO on notice of the false statements. (*Id.* ¶ 157.)

- Failing to discipline any Defendant or correct the false statements.

**E. The Rubicon Entities Have Independent Standing for All Claims.**

Defendants argue in Section VI.A of the Motion that the three entity Plaintiffs lack standing for Claim 4 (Malicious Prosecution) because they were not defendants in the criminal case. This argument fails because the corporate entities suffered their own independent constitutional injuries and have independent Fourth Amendment standing.

The entities' property was searched and seized, including over $5 million from corporate bank accounts. (Complaint ¶¶ 148–150, 216–223.) Under *Soldal v. Cook County*, the Fourth Amendment protects property interests, and a seizure of corporate property constitutes a "meaningful interference with an individual's possessory interests in that property." 506 U.S. 56,

25

61 (1992). The entities have independent Fourth Amendment standing based on the seizure of their own property.

Although the entities were not named as defendants in the criminal case, they were compelled to join the criminal case as intervenors and file multiple motions in the criminal case to protect their property rights. In this context, they were subjected to the same malicious prosecution tactics suffered by the individual defendants in the criminal case. The criminal investigation and charges targeted the companies' operations, not just the individuals. The criminal charges related to the companies' employment practices. (Complaint ¶¶ 39–41.) Under *Manuel v. Joliet*, a Fourth Amendment malicious prosecution claim is rooted in the "seizure" of the person or their property. 580 U.S. 357 (2017). The corporate entities' property was seized, giving them independent standing for the malicious prosecution claim. The malicious prosecution caused direct corporate harm through destruction of business relationships, loss of customers, and corporate paralysis from the restraining order. (Complaint ¶¶ 192–207.)

### III.    Neither Beckett nor Reyes is Entitled to Absolute Immunity for the Claims Alleged in the Complaint.

Plaintiffs' claims against Defendants Beckett and Reyes arise from investigative conduct, policy decisions, false statements to the media, and efforts to fraudulently obtain additional funding from the U.S. Department of Labor and the Utah State Legislature, not prosecutorial advocacy. None of these actions are protected by absolute immunity.

Prosecutors are entitled to absolute immunity only when an alleged action is "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 340–41 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Qualified immunity "represents the norm" for executive officers, and the scope of absolute immunity must

be carefully circumscribed. *See Kalina v. Fletcher*, 522 U.S. 118, 127 (1997). An official seeking absolute immunity bears the burden of demonstrating that it is justified. *See Burns v. Reed*, 500 U.S. 478, 486–87 (1991).

### A. Defendant Beckett's Pre-Prosecution Investigative Acts Are Not Entitled to Absolute Immunity.

The determination of whether an action is judicial, administrative, or investigative depends on "the nature of the function performed, not the identity of the actor who performed it." *Kalina*, 522 U.S. at 127 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)); *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014) (immunity determined by "the nature of the function performed, not the identity of the actor who performed it"). Thus, prosecutors are not entitled to absolute immunity when: (1) advising police officers during the investigative phase, *Burns v. Reed*, 500 U.S. 478 (1991); (2) participating in investigations and pre-charge police activities, *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); and (3) making extra-judicial public statements to the media and others concerning criminal proceedings. *See Botello v. Gammick*, 413 F.3d 971, 976–77 (9th Cir. 2005).

Here, the Complaint alleges that Defendant Reyes made statements to the press about pending criminal charges, and that Defendant Beckett drafted false affidavits to obtain search warrants to pursue an investigation before any criminal charges were filed. Those acts were not prosecutorial advocacy intimately associated with the judicial phase of the criminal process; they are not protected by absolute immunity.

The Motion ignores the most directly relevant Supreme Court precedent on the limits of absolute immunity. In *Buckley v. Fitzsimmons*, the Supreme Court found absolute immunity unavailable to prosecutors who allegedly manufactured evidence while investigating a crime.

509 U.S. 259 (1993). The Court warned that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id*. at 274. Similarly, in *Mink v. Suthers*, the Tenth Circuit held that "a prosecutor was not entitled to absolute immunity for actions in reviewing and approving a detective's application for a search warrant." 482 F.3d 1224 (10th Cir. 2007). Here, Defendant Beckett not only reviewed and approved the offending search warrant applications, she wrote them.

## B. Defendant Reyes' Administrative Acts Are Not Entitled to Absolute Immunity.

Defendants argue that Defendant Reyes is entitled to absolute prosecutorial immunity for any personal involvement in the state criminal case. (Motion at 17–18.) However, this argument is a fundamental misreading of the Complaint. The claims against Defendant Reyes are not based on any prosecutorial role that he played in the state criminal action. Instead, the claims against Defendant Reyes are based on the allegations that he:

- Made false public statements describing Plaintiffs' employment of the H-2B workers as "subhuman" and "indentured servitude." (Complaint ¶ 171.)

- Coordinated and directed the media strategy that was designed to "help exonerate the AGO under Defendant Reyes." (*Id*. ¶ 144.)

- Directed the investigation and prosecution to generate publicity and secure funding. (*Id*. ¶¶ 18–28.)

- Implemented the policies and funding model for SECURE, creating perverse financial incentives to inflate victim counts. (*Id*. ¶¶ 24–27.)

As Attorney General, Defendant Reyes was both the chief law enforcement officer of Utah and its chief prosecutor. Defendant Reyes' actions alleged in the Complaint are not prosecutorial actions, acting as an in-court advocate. Even if it could be argued that Defendant

28

Reyes was acting as a prosecutor, under *Buckley*, prosecutors are not entitled to absolute immunity for "extra-judicial public statements concerning criminal proceedings." 509 U.S. at 277–78. Defendant Reyes is not entitled to absolute immunity on any of the claims.

   C.  ***Nielander v. Board of County Commissioners* Does Not Support the Sweeping Prosecutorial Immunity the Defendants Claim; Respectfully, It Misstates Controlling Supreme Court Precedent.**

Defendants' reliance on *Nielander v. Board of County Commissioners*, 582 F.3d 1155, 1164 (10th Cir. 2009), is misplaced. The case involved a county attorney who merely evaluated evidence gathered by others and filed a charging document without personally vouching for any facts—the filing of charges is core advocacy. But the case's broad and incorrect dictum about bestowing absolute immunity on the county attorney's "investigatory" actions is, simply and respectfully, erroneous. As explained above, a prosecutor involved in the "investigatory" phase shares only the immunity of police colleagues: qualified immunity. That fundamental principle is made absolutely clear by the Supreme Court's decisions in *Burns v Reed*, 500 U.S. 478 (1991) (only qualified immunity for a prosecutor giving legal advice to police during an investigation) and *Buckley v. Fitzsimmons*, 509 U.S. 259, 275 n.7 (1993), where the Court held that alleged fabrication of evidence during an investigation  "fall on the administrative, rather than the judicial, end of the prosecutor's activities, and therefore [are] entitled only to qualified immunity."

*Buckley* denied absolute immunity to prosecutors who fabricated evidence during an investigation because "[w]hen the functions of prosecutors and detectives are the same . . . the immunity that protects them is also the same"—qualified only. *Id*. at 276. Here, Defendants directed an investigation before probable cause existed (Complaint ¶¶ 39–41).

29

The Tenth Circuit has applied these limits post-*Nielander*, denying absolute immunity for fabricating evidence in *Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019); for reviewing a warrant affidavit during investigation in *Mink v. Suthers*, 482 F.3d 1224 (10th Cir. 2007); and for presenting fabricated evidence in *Truman v. Orem City*, 1 F.4th 1227 (10th Cir. 2021).

### D. **Prosecutors Cannot Launder Wrongful Acts Through Judicial Proceedings.**

Defendants cannot bootstrap investigative misconduct into protected advocacy by forcing a judicial proceeding because *Buckley* forbids it: "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because . . . that work may be retrospectively described as 'preparation' for a possible trial . . ." 509 U.S. at 275–76*; see also Paine v. City of Lompoc*, 265 F.3d 975, 983 (9th Cir. 2001) ("Allowing witnesses to so launder their non-testimonial activities through their testimony would transform the immunity from a 'shield' . . . into a 'sword allowing them to trample the statutory and constitutional rights of others'").

When it cannot be conclusively determined from a complaint whether a prosecutor's conduct was performed in an advocacy role, absolute immunity cannot be decided on a motion to dismiss. *See Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1059 (D. Ariz. 2012); *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995).

### IV. Defendants are Not Entitled to Qualified Immunity for Bringing the Media to the Execution of a Sealed Search Warrant.

#### A. Media Ride-Along Liability Under *Wilson v. Layne* Extends to Commercial Premises.

Defendants incorrectly argue that *Wilson v. Layne*, 526 U.S. 603 (1999) applies only to residential premises. *Wilson's* functional test, whether third-party presence aids warrant execution, is inherently premises-neutral, and the Supreme Court applied its holding to non-

30

residential property in the companion case, *Hanlon v. Berger* 526 U.S. 808 (1999). Combined

with longstanding Fourth Amendment protection for commercial spaces, *Wilson* and *Hanlon*

prohibit media ride-alongs at non-public commercial office buildings like Rubicon's

headquarters.

In *Wilson*, the Supreme Court unanimously held that media ride-alongs during warrant

execution in a home violate the Fourth Amendment. *Id*. at 614. Chief Justice Rehnquist

articulated the core principle: "[T]he Fourth Amendment does require that police actions in

execution of a warrant be related to the objectives of the authorized intrusion." *Id*. at 611 (citing

*Arizona v. Hicks*, 480 U.S. 321, 325 (1987)). The Court drew on *Maryland v. Garrison*, 480 U.S.

79, 87 (1987), for the premise-neutral principle that "the purposes justifying a police search

strictly limit the permissible extent of the search . . ." *Id*. at 611.

*Wilson's* functional test asks whether third-party presence aids warrant execution, not

whether the premises is a home. Media presence at the search of a non-public commercial

building no more aids warrant execution than media presence at a residential search. The Court's

reasoning contains no premises-based limitation. Justice Stevens, concurring, stated the rule even

more broadly: "Police action in the execution of a warrant must be strictly limited to the

objectives of the authorized intrusion." *Wilson*, 526 U.S. at 619.

Defendants claim "they are unaware of any . . . controlling case law . . . extending any

such constitutional right prohibiting media presence from the execution of warrants *on

commercial or business property*". (Motion at 22.) However, Defendants cite *Hanlon v. Berger*,

526 U.S. 808 (1999), which does exactly what Defendants deny. In *Hanlon*, Fish & Wildlife

Service agents invited CNN to accompany them during execution of a search warrant for "The

Paul W. Berger ranch with appurtenant structures, excluding the residence" for wildlife

31

poisoning violations. *Id*. at 809. The search was of ranch outbuildings and commercial agricultural property, not the residence located on the property. *Id*.

The *Hanlon* Court applied *Wilson's* holding directly: "Review of the complaint's much more detailed allegations... satisfies us that respondents alleged a Fourth Amendment violation under our decision today in *Wilson v. Layne*." *Hanlon*, 526 U.S. at 809. The Court found a constitutional violation even though the search was of combined residential and commercial property. *Id*. at 810. The Ninth Circuit's prior analysis in *Berger v. Hanlo*n had rejected arguments that the open fields doctrine would immunize media presence, holding: "The open fields doctrine is not a license for the police to bring trespassers on to private property. It allows law enforcement officers to obtain evidence while on privately owned open fields . . .It does not immunize the officers from liability for conduct that has no law enforcement purpose." 129 F.3d 505, 515 (9th Cir. 1997).

In this case, the Fourth Amendment violation is more egregious. Rather than an open field, Defendant Lucey brought the media to the non-public commercial offices of Rubicon, and when a Rubicon manager told the media they were trespassing on private property and asked them to leave, Defendant Lucey told the Rubicon manager: "neither you nor the owner have any right to privacy and if you have a problem with it call your f***ing attorney and I'll call my f***ing attorney and you will f***ing lose because I do this every day!" (Complaint ¶ 142.)

A robust line of Supreme Court precedent establishes that businesses enjoy meaningful Fourth Amendment protection. *See v. City of Seattle* is foundational: "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." 387 U.S. 541, 543 (1967). The Court held that "the basic component of a reasonable search under the Fourth Amendment—

that it not be enforced without a suitable warrant procedure—is applicable in this context, as in others, to business as well as to residential premises." *Id*. at 546.

Most directly on point, *Wise v. City of Richfield* applied *Wilson* to commercial property, holding Fourth Amendment protections against unauthorized third-party presence extend to business premises. 2005 WL 361492, at *4 (D. Minn. Feb. 14, 2005); *see also United States v. Anderson*, 154 F.3d 1225, 1230–31 (10th Cir. 1998) (multi-factor test for reasonable expectations of privacy in commercial settings).

*Marshall v. Barlow's, Inc*. reinforces this principle: "The Warrant Clause of the Fourth Amendment protects commercial buildings as well as private homes. To hold otherwise would belie the origin of that Amendment, and the American colonial experience." 436 U.S. 307, 311 (1978). Critically for office settings: "The owner of a business has not, by the necessary utilization of employees in his operation, thrown open the areas where employees alone are permitted to the warrantless scrutiny of Government agents." *Id*. at 315. For office privacy specifically, *Mancusi v. DeForte* recognized: "It has long been settled that one has standing to object to a search of his office as well as of his home …" 392 U.S. 364, 367 (1968). *O'Connor v. Ortega* confirmed that an expectation of privacy "in one's place of work is 'based upon societal expectations that have deep roots in the history of the Amendment.'" 480 U.S. 709, 716 (1987).

While *New York v. Burger* acknowledged that commercial privacy expectations may be somewhat diminished, the "closely regulated industry" exception is narrow. 482 U.S. 691, 700 (1987). *City of Los Angeles v. Patel* confirmed that only four industries qualify: liquor, firearms, mining, and automobile junkyards. 576 U.S. 409, 424 (2015). Rubicon's commercial office building does not fall within this exception.

33

Circuit courts have applied *Wilson's* principles to non-residential contexts. *Lauro v. Charles* stated explicitly: "It is not the case, however, that the holdings in *Ayeni* and *Wilson* turned solely on the special status of the home, or that the Fourth Amendment's privacy protections end at the door of one's house." 219 F.3d 202, 211 (2d Cir. 2000). *Bills v. Aseltine* articulated a "trust" theory applicable to any premises: "Where an intrusion is justified... police are temporarily placed in control of the premises and its occupants. It is as though the premises were given to the officers in trust for such time as may be required to execute their search in safety and then depart." 958 F.2d 697, 703 (6th Cir. 1992). Officers exceed this trust when they "permit unauthorized invasions of privacy by third parties who have no connection to the search warrant or the officers' purposes for being on the premises." *Id*. at 704.

Defendant Lucey invited Fox 13 to accompany officers during execution of a sealed search warrant at Rubicon's commercial headquarters. (Complaint ¶¶ 139–146.) He escorted media inside the private building and rejected requests to remove them, stating that Plaintiffs had "no right to privacy." (*Id*. ¶¶ 142, 229–230.) This conduct violated the Fourth Amendment under *Wilson* and *Hanlon* regardless of the commercial nature of the premises. *Cf. United States v. Angevine*, 281 F.3d 1130, 1134 (10th Cir. 2002) (privacy expectations eliminated only by employer computer-use policies; where property is personally owned and affirmative steps maintain privacy, full Fourth Amendment protections and the *Franks* framework apply).

Here, the constitutional violation is clear under *Hanlo*n, as the Tenth Circuit also would recognize under its "sliding scale" in *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004).

**B. The Sealed-Warrant Violation Independently Defeats Qualified Immunity for the Media Ride-Along.**

Even if this Court were to find that *Wilson's* application to commercial premises was not "clearly established," the undisputed and alleged fact that the warrants were sealed alone defeats qualified immunity. No reasonable officer could believe that disclosing sealed warrant and supporting affidavit information to the media, before and as the warrants were being executed, and inviting the media to join law enforcement officers and film the execution was lawful, regardless of premises type. The sealed nature of the warrants was a court order mandating confidentiality. Defendant Lucey's invitation to Fox 13, which included sharing Defendant Jeter's sealed affidavit, was in direct and clear violation of a court order. There is no possible legal justification for Defendant Lucey's actions. And Defendant Lucey demonstrated his willful disregard of the law when he openly declared during the search that Plaintiffs had "no right to privacy"; he simply and indisputably demonstrated deliberate disregard for both constitutional requirements and the court's order. *See Washington Post v. Robinson*, 935 F.2d 282, 287–88 (D.C. Cir. 1991) (sealed judicial documents carry heightened procedural protections; sealing requires specific findings narrowly tailored to a compelling interest).

This egregious behavior goes far beyond anything qualified immunity might protect; indeed, it may well, ultimately, warrant an award of punitive damages for violations of constitutional rights engaged in with evil motive or intent, or in reckless disregard of those rights. *See Smith v. Wade*, 461 U.S. 30 (1983) (punitive damages are available in a Section 1983 civil rights action if a defendant's conduct shows "reckless or callous disregard" for a plaintiff's rights).

**V.    Defendants are Not Entitled to Qualified Immunity on a Theory of Arguable Probable Cause or Any Other Basis.**

35

### A. Plaintiffs Allege Constitutional Violations.

Plaintiffs allege multiple Fourth Amendment violations: illegal search (Claim 1, Complaint ¶¶ 208–215), illegal seizure (Claim 2, *id*. ¶¶ 216–223), media ride-along (Claim 3, *id*. ¶¶ 224–235), and malicious prosecution (Claim 4, *id*. ¶¶ 236–246).

Under *Franks v. Delaware*, a search warrant is invalid if the affiant made false statements "knowingly and intentionally, or with reckless disregard for the truth" and the false statements were "necessary to the finding of probable cause." 438 U.S. 154, 155–56 (1978). Judge Cornish's findings satisfy both elements: Defendant Jeter's statements "were knowingly false or, at a minimum, made with a reckless disregard for the truth" and "[t]he Subject Warrants as written would have been rejected." (Complaint ¶¶ 88, 117, 136.)*; see also DeLoach v. Bevers*, 922 F.2d 618, 621–22 (10th Cir. 1990) (*Franks* applies to affidavit omissions "so probative they would vitiate probable cause"; officers who "deliberately supply misleading information" to magistrates "cannot hide behind the officials whom they have defrauded"); *Katz v. United States*, 389 U.S. 347, 357 (1967) (a warrant procured through fabricated affidavits is functionally no warrant at all because the "procedure of antecedent justification" was corrupted).

Under *Malley v. Briggs*, qualified immunity does not shield officers who act with reckless disregard for the truth in warrant affidavits. 475 U.S. 335 (1986). A state court has already found that Defendant Jeter made statements that were "knowingly false or, at a minimum, made with a reckless disregard for the truth." (Complaint ¶ 88.) This judicial determination precludes any claim of "good faith" or "objective reasonableness" by any Defendant.

### B. The Rights Violated Were Clearly Established.

The Tenth Circuit has explicitly held that "[n]o one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was

firmly established as of 1986 in the context of information supplied to support a warrant for arrest." *Pierce v. Gilchrist*, 359 F.3d 1279, 1286 (10th Cir. 2004). The court emphasized that "the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* at 1298*; see also*, *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011) (government officials' forgery and perjury to facilitate prosecution are actionable Section 1983 violations; "clearly established" standard may be met by "the clearly established weight of authority from other courts"); *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (defendants face "a more challenging standard of review" at the 12(b)(6) stage).

Even if factually identical precedent were required—which it is not—Defendants' conduct was so obviously unconstitutional that qualified immunity is defeated under the "obvious clarity" exception recognized by the Supreme Court. The Supreme Court has repeatedly rejected the requirement that officials must have been on notice through factually identical precedent. In *United States v. Lanier*, the Court established that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'"520 U.S. 259, 271 (1997).

*Anderson v. Creighton* provides the foundational framework: "it is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." 483 U.S. 635, 640 (1987). This "unlawfulness must be apparent" language evolved into the "obvious clarity" exception in *United States v. Lanier*, 520 U.S. 259 (1997) and *Hope v. Pelzer* 536 U.S. 730 (2002). Fabricating search warrant affidavits is

37

so obviously unconstitutional that no factually identical precedent is required. In *Hope v. Pelzer*, the Supreme Court held that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id*. at 741. The Court explained that "the salient question" is whether the state of the law gave officials "fair warning" that their conduct was unconstitutional—not whether a prior case had "fundamentally similar" or "materially similar" facts. *Id*. at 741.

In *Taylor v. Riojas*, the Supreme Court reinforced the "obvious clarity" exception, holding that constitutional violations can be "clearly established" through obvious clarity alone, even absent prior cases with identical facts. 592 U.S. 7 (2020). The Court reversed the Fifth Circuit's grant of qualified immunity, holding that "no reasonable correctional officer could have concluded" that the challenged conduct was constitutional. *Id*. at 9. In light of *Taylor*, the Court also vacated a lower court grant of immunity where an officer pepper-sprayed an inmate without provocation. *McCoy v. Alamu*, 141 S. Ct. 1364 (2021).

In deciding qualified immunity claims, the Tenth Circuit has expressly and correctly recognized that "the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). In *Truman v. Orem City*, 1 F.4th 1227, 1235, 1240 (10th Cir. 2021), the Tenth Circuit applied *Taylor v. Riojas* to deny qualified immunity to a prosecutor who allegedly fabricated evidence, holding this was "the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances."

Defendants' conduct falls squarely within the "obvious clarity" exception. The Complaint alleges a pattern of misconduct so egregious that no reasonable officer could have believed it was constitutionally permissible.[3]

## C. The Arguable Probable Cause Defense Fails.

Defendants argue they are entitled to qualified immunity because there was "arguable probable cause" for the searches and seizures under *Stonecipher v. Valles*, 759 F.3d 1134 (10th Cir. 2014). This defense fails for three independent reasons.

First, Judge Cornish expressly found that "[t]he Subject Warrants as written would have been rejected" because "there would not have been probable cause." (Complaint, Exhibit B, p. 15) When a court has already determined that probable cause did not exist, Defendants are estopped from arguing otherwise. (See Section I.A. above.)

Second, the *Franks* Order found that Jeter possessed contradictory evidence at the time he swore to the affidavits. Under *Stonecipher*, a "factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." 759 F.3d at 1142. When the affiant himself possesses evidence directly contradicting his sworn statements, no "arguable" basis for probable cause exists.

Third, the pattern of misconduct eliminates any possible argument of good faith. Defendant Jeter signed false affidavits in November 2023, was put on explicit notice of the

---

[3] As examples: Defendant Jeter swore that victims lacked immigration documents while possessing photographs he took of their passports and visas during interviews. (Complaint ¶¶ 53–73.) Defendant Jeter swore that all seven victims were "forced" into rent deductions, but the only two victims he asked about the housing policy admitted that they had a choice and Jeter possessed the opt-in/opt-out forms showing a voluntary choice. (*Id.* ¶¶ 89–99.) Defendant Jeter swore that Rubicon closed FinTwist accounts and kept employee funds while possessing information showing employees owned and could access those accounts. (*Id.* ¶¶ 100–117.) Defendant Jeter swore that victims were threatened with deportation but later admitted the described conduct was "legally correct" H-2B compliance. (*Id.* ¶¶ 118—136.)

39

misstatements and omissions in the affidavits through the *Franks* Motion in March 2024, and then signed a Second Amended Information on May 10, 2024, *containing the same false statements while adding seven new charges*, only to admit his "mistakes" under oath days later. (Complaint ¶¶ 155, 157.) In *Pierce v. Gilchrist*, the Tenth Circuit held that officers "cannot hide behind the officials whom they have defrauded." 359 F.3d at 1292. Here, Defendants did not merely make initial false statements, *they doubled down after being put on explicit notice of the false statements*. This pattern of continuing misconduct demonstrates deliberate indifference to constitutional rights and eliminates any claim of qualified immunity.

## VI.   Plaintiffs Have Stated a Claim for Malicious Prosecution.

### A.  The Larsens were Seized and Have Standing to Bring a Malicious Prosecution Claim.

Defendants argue that the claim for malicious prosecution fails because the Larsens were never "seized." (Motion at 34-35.) This argument ignores the Complaint's extensive allegations of seizure through multiple independent mechanisms.

First, arrest warrants were issued and actively pursued. The Complaint alleges Defendants obtained no-bail arrest warrants for both Mr. and Ms. Larsen based on false statements. (Complaint ¶¶ 178–86.) Further, the Larsens were both *arrested and booked* when they self-surrendered at the Davis County jail on November 30, 2023. This court can and should take judicial notice of the booking record (Utah State case #231702289) (posted December 1st, 2023).

Second, the criminal prosecution itself constituted an ongoing seizure. The prosecution continued from November 2023 through February 2025. (Complaint ¶¶ 43-44, 187.) During this period, the Larsens were *subject to court orders*, including a restraining order preventing them from communicating with their business partners for four months. (*Id*. ¶¶ 193–96.) Under

40

*Thompson v. Clark*, a Fourth Amendment malicious prosecution claim challenges "the wrongful initiation of charges without probable cause," and the "seizure" encompasses the entirety of the prosecution's restriction on liberty. 596 U.S. 36, 43–44 (2022)

Third, the Larsens' property was seized. Over $5 million in personal and corporate accounts were seized. (Complaint ¶¶ 148–50.) Under *Soldal v. Cook County*, property seizure independently satisfies the Fourth Amendment's "seizure" requirement. 506 U.S. 56 (1992). The seizure of the Larsens' personal accounts constitutes a direct seizure of their property.

### B.  The Prosecution Terminated in Favor of the Plaintiffs.

"[A] Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). Here, the criminal case indisputably terminated in favor of Plaintiffs and without a conviction because all charges have been dismissed. (Complaint ¶ 243.)

Judge Cornish's dismissal finding that "the State prematurely filed charges before having adequate evidence" far more than satisfies the *Thompson* favorable termination requirement. *See DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (affirming malicious prosecution liability where prosecution was dismissed after undisclosed exculpatory evidence came to light); *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011) (perjury and forgery to facilitate prosecution state actionable Section 1983 malicious prosecution claims). As in *DeLoach*, where the criminal case was dismissed after previously undisclosed exculpatory evidence was discovered, here, the State dismissed all charges rather than face a *Franks* hearing.

41

Defendants cite the *Thompson* standard in the Motion but argue that the criminal case was not terminated "in favor of" Plaintiffs because Judge Cornish dismissed it "without prejudice in deference to a federal investigation." (Motion at 36.) The issuance of a federal search warrant to seize the same evidence that was illegally seized from Plaintiffs by the Utah Attorney General's Office does not change the conclusion that the criminal case terminated in favor of Plaintiffs. No federal criminal charges have been filed against Plaintiffs. Defendants cite no case law to support the argument that the issuance of a federal search warrant without the filing of a federal criminal case somehow turns the dismissal of the state criminal charges into a termination that is not in favor of the Plaintiffs. This argument cuts directly against the clear holding of *Thompson*.

Additionally, as outlined above in Section I.B. of this memo, the federal search warrant was not part of an independent federal investigation. Instead, Defendant Beckett was behind both the state and federal investigations and misled both Judge Cornish (in the motion to dismiss the state criminal case without prejudice) and the federal magistrate (in the application for the federal search warrant).

**CONCLUSION**

Defendants know the factual allegations in the Complaint are not speculative. The allegations are supported by an extensive evidentiary record, a record primarily created by Defendants, already in their possession, and much of which Defendants have made available to the public. The state court proceedings, including Judge Cornish's findings that Defendant Jeter's statements were "knowingly false or, at a minimum, made with a reckless disregard for the truth", that "The Subject Warrants as written would have been rejected," and that the prosecution of Plaintiffs was "premature", are judicial determinations that should have preclusive effect.

42

Plaintiffs seek to avoid unnecessary delay and are prepared to move forward expeditiously to complete discovery before likely summary judgment motions. Plaintiffs will also be prepared to proceed to trial (if necessary) on an expedited schedule. Plaintiffs have no desire to slow or drag out these proceedings; quite the contrary.

Respectfully, Plaintiffs ask the Court to deny the Motion to Dismiss and allow the case to proceed. The liability of each Defendant here for each claim in the Complaint is justified and based on multiple theories. Further, Defendants are not entitled to absolute or qualified immunity for their unconstitutional actions.

Plaintiffs seek justice. Prosecutors and investigators must follow the rule of law; they are among the most important guardians of our liberties. When they fail us, the system fails.

Plaintiffs respectfully request that the Motion be denied, that Defendants be required to answer the complaint, and that discovery then proceed. If this court decides to grant any part of the Motion, it should be without prejudice so that Plaintiffs may seek leave to amend their Complaint in light of any ruling by this Court.

DATED:    March 3, 2026.    */s/ David W. Tufts*

DENTONS DURHAM JONES PINEGAR P.C.
David W. Tufts
Lyndon R. Bradshaw

DENTONS U.S. LLP
Stephen R. McAllister

CLYDE SNOW & SESSIONS
Keith M. Woodwell
Jake Taylor
Katherine E. Pepin
Vicki B. Zgodney

*Attorneys for Plaintiffs Rudy Larsen, Jena Larsen, Rubicon Contracting, LLC, Scandia Company, LLC, and Smart Rain Systems, LLC*

43

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2026, I filed the foregoing with the Clerk of Court using the Court's CM/ECF filing system and which sent electronic notification of the filing to counsel of record in this matter.

/s/Molly Mallard