Jason W. Hardin (8793)
Jeffery B. Setness (20026)
Stephen P. Horvat (6249)
J. Mason Kjar (14227)
Trevor J. Adkins (18297)
FABIAN VANCOTT
95 South State Street, Ste. 2300
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
jhardin@fabianvancott.com
jsetness@fabianvancott.com
shorvat@fabianvancott.com
mkjar@fabianvancott.com
tadkins@fabianvancott.com

Bradley R. Blackham (8703)
Andrew R. Hopkins (13748)
Assistant Utah Attorneys General
Derek E. Brown (10476)
Utah Attorney General
160 East 300 South, 6th Floor
P.O. Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
bblackham@agutah.gov
arhopkins@agutah.gov

*Attorneys for Defendants Sean D. Reyes, Leo Lucey, Michael Adam Jeter, and Kaytlin Virginia Beckett*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| RUDY LARSEN, an individual; JENA LARSEN, an individual; RUBICON CONTRACTING, LLC, a Utah limited liability company; SCANDIA COMPANY, LLC, a Utah limited liability company; and SMART RAIN SYSTEMS, LLC, a Utah limited liability company,<br><br>    Plaintiffs,<br><br>v.<br><br>SEAN D. REYES, an individual; LEO LUCEY, an individual; MICHAEL ADAM JETER, an individual; and KAYTLIN VIRGINIA BECKETT, an individual,<br><br>    Defendants. | **REPLY SUPPORTING MOTION TO DISMISS**<br><br>Case No. 2:25-CV-00963-HCN-JCB<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Jared C. Bennett |

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................I

TABLE OF AUTHORITIES.......................................................................................... III

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.    DEFENDANT BECKETT IS ABSOLUTELY IMMUNE. ................................... 1

II.   THE COURT SHOULD DISMISS ALL CLAIMS AGAINST DEFENDANT
      REYES.................................................................................................................... 5

      A.    Reyes's Alleged Public Statements Are Immaterial................................... 5

      B.    The Complaint Fails to Plead Facts Making Reyes Personally Liable for
            Other Defendants' Alleged Illegal Searches, Seizures, or Malicious
            Prosecution................................................................................................... 6

            1.    Reyes Is Not Liable for a "Policy" of Prosecuting Human
                  Trafficking....................................................................................... 6

            2.    Plaintiffs Have Not Plausibly Pleaded That Defendants Engaged in
                  a Conspiracy to Violate Plaintiffs' Rights..................................... 8

            3.    The Complaint Does Not Plausibly Plead a "Failure to Intervene."......... 10

            4.    Plaintiffs' "Ratification" Argument Is Based on **a Case that Does
                  Not Exist** and Otherwise Lacks Merit. .........................................11

      C.    Defendant Reyes Is Absolutely Immune from Liability for Any Claim
            Based on Participating in the Prosecution or Allowing It to Continue. ................ 13

III.  THE COURT SHOULD DISMISS THE THIRD CLAIM (MEDIA PRESENCE
      AT WARRANT EXECUTION)............................................................................ 13

      A.    There Is No Clearly Established Constitutional Right Prohibiting Media
            Presence at the Execution of a Warrant *on Commercial Property*...................... 13

      B.    Plaintiffs' New "Sealed-Warrant Violation" Argument Does Not Defeat
            Qualified Immunity...................................................................................... 18

      C.    Plaintiffs Have Presented No Basis to Hold Defendants Reyes, Beckett, or
            Jeter Liable for the Media Involvement in the Warrant Execution..................... 19

IV.     ARGUABLE PROBABLE CAUSE EXISTED FOR THE SEARCH AND PROSECUTION, MERITING DISMISSAL OF CLAIMS 1, 2, AND 4. ......................... 19

     A.    Criminal Defendants Turned Civil Rights Plaintiffs Cannot Invoke Offensive Collateral Estoppel When Suing Government Employees *Individually*. ................................................................................ 20

     B.    Demonstrative Exhibit 4 Is Simply an Illustrative Aid Based Solely on an Exhibit to the Complaint and the Complaint's Allegations, Nothing More .......... 23

     C.    Arguable Probable Cause at the Motion to Dismiss Stags Is an Objective Test Based on a Hypothetical Affidavit Modified Based on the Complaint. ......... 24

V.     THE COURT SHOULD DISMISS CLAIMS 1, 2, AND 4 AGAINST LUCEY BECAUSE OF A FAILURE OF ADEQUATE PLEADING. ........................................... 25

VI.     THE FOURTH CLAIM (MALICIOUS PROSECUTION) FAILS IN ITS ENTIRETY. ...................................................................................................... 25

     A.    The Larsens Were Not "Seized" as Required by the Fourth Amendment. ........... 25

     B.    The Prosecution Did Not Terminate in Plaintiffs' Favor. .................................... 27

CONCLUSION ............................................................................................................. 29

ADDENDUM ............................................................................................................... 31

**TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Branen*
  17 F.3d 552 (2d Cir. 1994) ...........................................................................................11

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ....................................................................................................... 8

*Bailey v. Twomey*
  791 F. App'x 724 (10th Cir. 2019) ................................................................... 14, 20, 24

*Becker v. Kroll*
  494 F.3d 904 (10th Cir. 2007) ..................................................................................... 26

*Bell Atlantic v. Twombley*
  550 U.S. 544 (2007) ....................................................................................................... 9

*Berger v. Hanlon*
  129 F.3d 505 (9th Cir. 1997) ................................................................................. 16, 17

*Bills v. Homer Consol. Sch. Dist.*
  959 F. Supp. 507 (N.D. Ill. 1997) ............................................................................... 22

*Bledsoe v. Carreno*
  53 F.4th 589 (10th Cir. 2022) ....................................................................................... 9

*Bledsoe v. Vanderbilt*
  934 F.3d 1112 (10th Cir. 2019) .................................................................................... 3

*Bryson v. City of Oklahoma City*
  627 F.3d 784 (10th Cir. 2010) .................................................................................... 12

*Buckley v. Fitzsimmons*
  509 U.S. 259 (1993) ............................................................................................. 1, 2, 3

*Burns v. Reed*
  500 U.S. 478 (1991) ................................................................................................. 4, 5

*Chilcoat v. San Juan County*
  41 F.4th 1196 (10th Cir. 2022) .................................................................................... 1

*City and Cnty. of S.F. v. Sheehan*
  575 U.S. 600 (2015) .................................................................................................... 14

*City of Escondido v. Emmons*
  586 U.S. 38 (2019) ........................................................................................... 15

*Cuervo v. Sorenson*
  112 F.4th 1307 (10th Cir. 2024) ....................................................................... 23

*Dayton v. City and County of Denver*
  649 F. Supp. 3d 1124 (D. Colo. 2023) ............................................................... 7

*DeLoach v. Bevers*
  922 F.2d 618 (10th Cir. 1990) .......................................................................... 27

*Dennis v. Sparks*
  449 U.S. 24 (1980) ........................................................................................... 10

*Dodds v. Richardson*
  614 F.3d 1185 (10th Cir. 2010) ..................................................................... 7, 8

*Fogarty v. Gallegos*
  523 F.3d 1147 (10th Cir. 2008) ........................................................................ 11

*Frasier v Evans*
  992 F.3d 1003 (10th Cir. 2021) .......................................................................... 8

*Gonzalez v. Hernandez*
  175 F.3d 1202 (10th Cir. 1999) ....................................................................... 22

*Gray v. Lacke*
  885 F.2d 399 (7th Cir.1989) ............................................................................ 22

*Green v. Padilla*
  697 F. Supp. 3d 1115 (D.N.M. 2023) ................................................................. 6

*Griffin v. Strong*
  739 F. Supp. 1496 (D. Utah 1990) ............................................................... 21, 23

*Hanlon v. Berger*
  526 U.S. 808 (1999) .................................................................................... 14, 15

*Harris v. Jones*
  471 N.W.2d 818 (Iowa 1991) .......................................................................... 21

*Haskell v. Wakefield & Assocs.*
  2024 UT App 123, 557 P.3d 245 ..................................................................... 23

iv

*Headley v. Bacon*
  828 F.2d 1272 (8th Cir.1987) ....................................................................... 22

*Heck v. Humphrey*
  512 U.S. 477 (1994) ....................................................................................... 28

*Hester v. United States*
  265 U.S. 57 (1924) ......................................................................................... 16

*Imbler v. Pachtman*
  424 U.S. 409 (1976) ..................................................................................... 4, 5

*Jacobsen v. Deseret Book Co.*
  287 F.3d 936 (10th Cir. 2002) ...................................................................... 23

*Janny v. Gamez*
  8 F.4th 883 (10th Cir. 2021) ..................................................................... 9, 10

*Kalina v. Fletcher*
  522 U.S. 118 (1997) ......................................................................................... 5

*Kinslow v. Ratzlaff*
  158 F.3d 1104 (10th Cir. 1998) ........................................................... 21, 22, 23

*Klen v. City of Loveland*
  661 F.3d 498 (10th Cir. 2011) ...................................................................... 27

*Mata v. Anderson*
  635 F.3d 1250 (10th Cir. 2011) .................................................................... 26

*McDonough v. Smith*
  588 U.S. 109 (2019) .................................................................................. 28, 29

*Meade v. Grubbs*
  841 F.2d 1512 (10th Cir. 1988) ...................................................................... 6

*Mick v. Brewer*
  76 F.3d 1127 (10th Cir. 1996) ........................................................................11

*Nielander v. Board of County Comm'rs*
  582 F.3d 1155 (10th Cir. 2009) ............................................................ 1, 25, 26

*Parsons v. Velasquez*
  551 F. Supp. 3d 1085 (D.N.M. 2021) ............................................................. 7

*Pearson v. Callahan*
   555 U.S. 223 (2009)............................................................................................ 14

*Pierce v. Gilchrist*
   359 F.3d 1279 (10th Cir. 2004) ........................................................................... 3

*Puller v. Baca*
   781 F.3d 1190 (10th Cir. 2015) .................................................................... 20, 24

*Robbins v. Oklahoma*
   519 F.3d 1242 (10th Cir. 2008) ........................................................................... 9

*Rodgers v. Torrez*
   Case No. 24-2046, 2025 WL 1904542 (10th Cir. July 10, 2025) ........................ 6

*Roy v. City of Augusta*
   712 F.2d 1517 (1st Cir.1983) ............................................................................. 22

*Rustgi v. Reams*
   536 F. Supp. 3d 802 (D. Colo. 2021) .................................................................11

*Sherry v. Iron County*
   No. 2:05-CV-843, 2006 WL 1982792 (D. Utah July 12, 2006)......................... 23

*Shrum v. Cooke*
   60 F.4th 1304 (10th Cir. 2023).......................................................................... 27

*Smith v. Allbaugh*
   987 F.3d 905 (10th Cir. 2021) ............................................................................. 8

*Soldal v. Cook County*
   506 U.S. 56 (1992)............................................................................................. 26

*Stonecipher v. Valles*
   759 F.3d 1134 (10th Cir. 2014) ......................................................................... 24

*Thompson v. Clark*
   596 U.S. 36 (2022)....................................................................................... 27, 28

*Truman v. Orem City*
   1 F.4th 1227 (10th Cir. 2021)......................................................................... 3, 4

*Van de Kamp v. Goldstein*
   555 U.S. 335 (2009).......................................................................................... 13

*Vondrak v. City of Las Cruces*
   535 F.3d 1198 (10th Cir. 2008) ...............................................................................10, 11

*Wanger v. Bonner*
   621 F.2d 675 (5th Cir. 1980) ............................................................................... 7

*Warnick v. Cooley*
   895 F.3d 746 (10th Cir. 2018) ............................................................................. 5

*White v. Pauly*
   580 U.S. 73 (2017)............................................................................................. 14

*Willner v. Budig*
   848 F.2d 1032 (10th Cir.1988) ........................................................................... 22

*Wilson v. Layne*
   526 U.S. 603 (1999)........................................................................................... 14

*Wise v. City of Richfield*
   No. Civ. 02-4274, 2005 WL 361492 (D. Minn. Feb. 14, 2005).................................. 14, 17, 18

*Young v. Bd. of Supervisors of Humphreys County*
   927 F.3d 8985 (5th Cir. 2019 ............................................................................. 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 29

Fed. R. Evid. 201(c)(2) ............................................................................................ 26

**Other Authorities**

18 Wright & Miller's , *Federal Practice & Procedure* § 4458 (1981 & Supp.1999) ................... 22

18 *Moore's Federal Practice* § 131.40(3)(e)(ii)(A) (3d ed.1999) ............................................. 22

## INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion to Dismiss fails to track the structure of either the Motion or the Complaint and as such creates a morass of arguments. The Court should not be misdirected. This Reply tracks the initial Motion and in doing so attempts to respond to all the new material raised in the Opposition. In the end, Defendants respectfully request that the Court grant the Motion to Dismiss in its entirety as to all Defendants.[1]

## ARGUMENT

### I.   DEFENDANT BECKETT IS ABSOLUTELY IMMUNE.

A prosecutor is absolutely immune from claims under § 1983 for actions the prosecutor takes in initiating or pursuing a criminal prosecution. *Nielander v. Board of County Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009). The key to such immunity is advocacy: if the prosecutor is fulfilling her role as an advocate for the state, the prosecutor is immune from § 1983 liability. *Chilcoat v. San Juan County*, 41 F.4th 1196, 1208-13 (10th Cir. 2022). Immunity thus covers obtaining search and arrest warrants, filing charges, appearing at preliminary hearings, presenting witness testimony at trial, and the like.[2]

Plaintiffs counter that because Defendant Beckett supposedly "manufactured evidence," she is not immune for her "pre-prosecution investigative acts" under *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).[3] But this case is nothing like *Buckley*. In *Buckley*, an eleven-year-old girl was

---

[1] To aid the Court in keeping track of the grounds for dismissal of each claim against each Defendant, we have attached a table in the Addendum.

[2] *See* cases cited at page 10 of our Motion.

[3] Note that even if this argument had merit, Defendant Beckett would still be immune from liability for filing and pursuing criminal charges.

the victim of a highly publicized disappearance and murder. *Id.* at 261. The killer left a bootprint on the door of the victim's house. *Id.* at 262. The prosecutors, working jointly with the police, submitted the bootprint and the plaintiff's boots to three governmental crime labs, all of whom were unable to connect the print with the boots. *Id*. The prosecutors and police then located an anthropologist in North Carolina who was well known for her willingness to fabricate unreliable expert testimony, and she provided a positive identification. *Id.* Subsequently, the prosecutors convened a special grand jury to investigate. *Id.* at 263-64. The grand jury worked for eight months, hearing more than 100 witnesses, including the bootprint experts. *Id.* at 264. Yet, it was unable to return an indictment. *Id*. Shortly before the next primary election, however—and with no new evidence—the district attorney managed to obtain an indictment. *Id*. The plaintiff was imprisoned for three years, during which a third party confessed to the crime. *Id*.

The Supreme Court held that the prosecutors were not immune for their actions in seeking out the dishonest anthropologist. *Id.* at 267-76. The Court distinguished between acts that were "intimately associated with the judicial phase of criminal process," which are entitled to immunity, and actions of "investigation or administration," which are not. *Id.* at 270. The Court noted that the prosecutor obtained the false bootprint testimony before the grand jury had even been convened, which itself was more than ten months before the plaintiff was arrested. *Id.* at 274-75. The prosecutors' mission at that time "was entirely investigative in character." *Id.* at 274. The Court reasoned, "Under these circumstances, the prosecutors' conduct occurred well before they could properly claim to be acting as advocates." *Id.* at 275.

Here, to the contrary, Defendant Beckett's actions occurred after the six-month investigation (Compl. ¶¶ 39-40), and she is not alleged to have "manufactured" anything. She

allegedly drafted for filing an affidavit that Plaintiffs claim contained false statements. Further, Beckett was clearly acting as an advocate in drafting the warrant affidavits: *drafting affidavits is a basic aspect of a litigator's job*. In short, *Buckley d*oes not apply to the facts as alleged.

Plaintiffs' other cases are distinguishable as well. In *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), the court's discussion about fabricating evidence focused entirely on a forensic chemist who "fabricated inculpatory evidence and disregard[ed] exculpatory evidence." *Id.* at 1281. The court did not discuss absolute prosecutorial immunity in this context.[4] In *Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019), the court held that immunity did not apply because the prosecutor's actions occurred "during the preliminary investigation" of the crime. *Id.* at 1121. Quoting *Buckley*, the court reasoned that "fabricating evidence while a crime remains unsolved is more akin to 'the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested.'" *Id.* at 1117 (quoting *Buckley*, 509 U.S. at 273). Again, Beckett is not accused of misconduct in the investigation. Finally, in *Truman v. Orem City*, 1 F.4th 1227 (10th Cir. 2021), the prosecutor created a false crime scene diagram to persuade the medical examiner to change a decedent's manner of death from "could not be determined" to "homicide." *Id.* at 1233. The plaintiff did not bring a claim for malicious prosecution, but rather for a violation of his "constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer." *Id.* at 1235. And the case did not

---

[4] In *Pierce*, the trial court had found that the prosecutor <u>was</u> immune from claims based on his allegedly encouraging, directing, aiding, and abetting the chemist's false testimony. *See* 359 F.3d at 1300. The trial court found that immunity did not apply to claims alleging that the prosecutor had established a policy of using false evidence at trial or deliberately ignoring the risk that subordinates would use false evidence. *Id.* The prosecutor purported to appeal these rulings but failed to properly challenge the trial court's conclusions. *Id.* at 1300-01.

3

turn on absolute prosecutorial immunity; the district court dismissed the § 1983 claim against the prosecutor under *qualified* immunity. *Id.* at 1234-35. Except for some dicta in a footnote, *id.* at 1241 n.8, the court did not address absolute immunity. In short, Plaintiffs have not cited any cases allowing Beckett to face a § 1983 claim for drafting or filing a false warrant affidavit.

Moreover, subjecting Beckett to such a claim would run afoul of *Burns v. Reed*, 500 U.S. 478 (1991). In *Burns*, a deputy prosecutor was sued under § 1983 for knowingly presenting materially misleading and incomplete testimony from a police officer at a hearing to obtain a search warrant. *Id.* at 482-83. The Court held that the prosecutor was absolutely immune for his conduct in appearing as a lawyer for the State in the warrant hearing. *Id.* at 487-92. As the Court had done in *Imbler v. Pachtman*, 424 U.S. 409 (1976), the *Burns* Court recognized that prosecutorial immunity originated in the doctrine of judicial immunity and that under the common law, prosecutors "were absolutely immune from damages liability … for making false or defamatory statements in judicial proceedings … and also for eliciting false and defamatory testimony from witnesses." *Id.* at 489-90. This immunity "extended to any hearing before a tribunal which performed a judicial function." *Id.* at 490 (cleaned up). The Court explained that "the prosecutor's actions at issue here—appearing before a judge and presenting evidence in support of a motion for a search warrant—clearly involve the prosecutor's 'role as an advocate for the State,' rather than his role as 'administrator or investigative officer.'" *Id.* at 491 (quoting *Imbler*, 424 U.S. at 430-31). The Court further reasoned that "since the issuance of a search warrant is unquestionably a judicial act … , *appearing at a [search warrant] hearing is 'intimately associated with the judicial phase of the criminal process*." *Id.* at 492 (quoting *Imbler* at 430) (emphasis added).

4

Just as in *Burns*, Defendant Beckett is accused of presenting false testimony from a witness to obtain a search warrant. The only difference is that Defendant Beckett presented the State's evidence by affidavit, while the prosecutor in *Burns* presented the State's evidence through live testimony.[5] *Burns* thus precludes the Court from denying immunity on the ground that by presenting false witness testimony, Defendant Beckett "manufactured evidence."[6]

## II.   THE COURT SHOULD DISMISS ALL CLAIMS AGAINST DEFENDANT REYES.

### A.   Reyes's Alleged Public Statements Are Immaterial.

The Court should disregard Plaintiffs' argument that Defendant Reyes is liable under § 1983 because of public statements he allegedly made at a press conference. Even assuming the truth of the Complaint's allegations, Plaintiffs have not explained how those statements violated their constitutional rights. Plaintiffs have brought four claims, all under the Fourth Amendment: illegal search (no probable cause), illegal seizure (no probable cause), illegal search (media presence), and malicious prosecution. Plaintiffs have not brought any claims based on Defendant Reyes's alleged public statements. (*See* Compl. ¶¶ 208-46 (setting forth Claims for Relief but not

---

[5] Note that *Kalina v. Fletcher*, 522 U.S. 118 (1997), discussed in the Motion, found the prosecutor to be immune for drafting the warrant affidavit. The only act for which the prosecutor was not immune was acting as a witness *by personally swearing* to the accuracy of the certification. Because Defendant Beckett did not personally certify under oath the truth of the statements in the warrant affidavits, her immunity remains.

[6] If presenting false testimony to a court constituted "manufacturing evidence" under *Buckley*, then prosecutorial immunity would be meaningless. The foundation case, *Imbler*, involved a prosecutor knowingly presenting false witness testimony to put the plaintiff on death row. 424 U.S. at 411-12. For similar reasons, it would be illogical to read *Buckley* as somehow precluding immunity if a prosecution was initiated before a prosecutor had probable cause. Such immunity would be meaningless if it did not protect a prosecutor when bringing a case without probable cause. *See Warnick v. Cooley*, 895 F.3d 746, 752 (10th Cir. 2018) (actions related to prosecutor's role as advocate are "protected by absolute immunity whether or not probable cause exists.").

mentioning press statements).) Nor have Plaintiffs explained how statements to the press could possibly violate their rights under the Fourth Amendment. Thus these public statements do not support any claim for relief against Defendant Reyes.

**B.      The Complaint Fails to Plead Facts Making Reyes Personally Liable for Other Defendants' Alleged Illegal Searches, Seizures, or Malicious Prosecution.**

Plaintiffs have not pointed to any factual allegations that would plausibly show that Defendant Reyes <u>personally</u> directed or was involved in the search of the Rubicon offices, the seizure of Plaintiffs' property and funds, the presence of the media at the warrant execution, or (with one minor exception) the allegedly malicious prosecution. Plaintiffs try to get around this problem by offering various theories as to why Defendant Reyes is liable for the alleged misconduct of others. But none of these theories have merit.

1.      <u>Reyes Is Not Liable for a "Policy" of Prosecuting Human Trafficking.</u>

Plaintiffs assert that Defendant Reyes is subject to supervisory liability because he pursued a "policy" that supposedly caused the constitutional harms.  Plaintiffs are wrong.

First, Plaintiffs have not pleaded an actionable policy. For a "policy" to support liability on such a theory, the policy *itself* must be unconstitutional or improper. *See, e.g.*, *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) ("Unless a supervisor has established or utilized *an unconstitutional policy or custom*, a plaintiff must show that the supervisory defendant breached a duty imposed by state or local law which caused the constitutional violation.");[7] *Green v. Padilla*, 697 F. Supp. 3d 1115, 1151 (D.N.M. 2023) ("Supervisors can be held liable *only* for their own *unconstitutional or illegal policies*, and not for their employees' tortious

---

[7] Another part of *Meade*, dealing with a different issue, was "abrogated in part" by *Iqbal*.  *See Rodgers v. Torrez*, Case No. 24-2046, 2025 WL 1904542, *3 (10th Cir. July 10, 2025) (unpub.).

acts.") (emphasis added); *Parsons v. Velasquez*, 551 F. Supp. 3d 1085, 1192 (D.N.M. 2021) (same). Thus, for example, in *Dodds v. Richardson*, 614 F.3d 1185, 1202-04 (10th Cir. 2010), the county jail had a "polic[y] of not allowing felony arrestees to post lawfully set bail after hours or until they had seen a judge." *Id.* at 1203. This policy *itself* was the reason the plaintiff was detained even though a judge had fixed the bond amount in issuing the arrest warrant. *Id.* Similarly, in *Wanger v. Bonner*, 621 F.2d 675, 679-80 (5th Cir. 1980), supervisory liability for an illegal house search was found where "the standard instructions from the Sheriff's Department were always to search the premises when informed that the person named in the warrant was not present at the address listed in the warrant."

Here, the only "policy" alleged in the Complaint was Defendant Reyes' focus on human trafficking. (Compl. ¶¶ 25-27.) But nothing about that policy is even remotely unconstitutional, illegal, or improper. And Plaintiffs have cited no authority suggesting that such a policy could support § 1983 liability. Politicians commonly run for office promising to focus on a certain type of crime. If Defendant Reyes were to face § 1983 liability for focusing on human trafficking cases, then every elected sheriff, district attorney, attorney general, and governor would automatically be liable every time a police officer violated the Constitution.

Second, Plaintiffs have not alleged facts plausibly showing that the other Defendants' actions were "caused" by this alleged policy. Imposing supervisory liability requires an "affirmative link" between the supervisor's acts and the violation. *E.g.*, *Dayton v. City and County of Denver,* 649 F. Supp. 3d 1124, 1139 (D. Colo. 2023) (finding supervisor liable where he authorized the use of flash-bang grenades against protestors and issued such grenades to subordinates knowing that they had no training on such devices).

Finally, Plaintiffs have not alleged facts that plausibly establish that Defendant Reyes acted with the state of mind required to subject him to liability for his policy. At least "deliberate indifference" is required. *Dodds*, 614 F.3d at 1204-05. As with the other elements of this theory of liability, a plaintiff "must plead facts sufficient to support such a claim and may not stand on mere conclusory allegations." *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Citing paragraphs 22-28 of the Complaint, Plaintiffs insist that "Defendant Reyes adopted the policy with at least deliberate indifference to constitutional rights, if not outright intent to deflect public attention from his scandals." (Opp'n at 24.) But Defendants have not pleaded or identified any facts that make such a conclusion plausible. *Cf. Iqbal* at 680 (rejecting as conclusory allegation that defendants "knew of, condoned, and maliciously agreed to subject [plaintiff] to harsh conditions of confinement … solely on account of his religion, race, or national origin"). Plaintiffs' claim boils down to the allegation that Reyes wanted to target human trafficking. But absent specific allegations that Reyes encouraged his subordinates to violate the Constitution in doing so, the claim fails.

Plaintiffs have not cited a single case where a court held that allegations like those in the Complaint were sufficient to satisfy *any* of the elements for supervisory liability, let alone all three. Thus, the Court cannot hold Reyes liable for the alleged constitutional violations of others.

2.    Plaintiffs Have Not Plausibly Pleaded That Defendants Engaged in a Conspiracy to Violate Plaintiffs' Rights.

Plaintiffs also have argued that "all Defendants" are liable to each of Plaintiffs for each claimed constitutional violation because they all allegedly conspired to violate Plaintiffs' rights. (Opp'n at 20-21.) However, "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Frasier v Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021). A § 1983 plaintiff

8

must "make clear exactly <u>who</u> is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). To state a conspiracy claim against a defendant, a plaintiff must plead "specific facts showing an agreement and concerted action among defendants." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022). A plaintiff must plead that the defendants agreed "upon a common, unconstitutional goal" and took "concerted action" to "advance that goal." *Janny v. Gamez*, 8 F.4th 883, 919 (10th Cir. 2021) (cleaned up).

The Complaint does not come close to meeting these requirements. First, the word "conspiracy" doesn't appear at all in the Complaint. The word "conspired" only appears twice, and not in the Claims for Relief: the Introduction "alleges that Defendants, state officials, conspired to manufacture bogus criminal charges," (Compl. at 2), and paragraph 38 asserts that "Defendants … conspired to charge [Plaintiffs] with first degree felonies." These conclusory allegations are precisely the type that the Supreme Court held to be inadequate. *See Bell Atlantic v. Twombley*, 550 U.S. 544, 557 (2007) ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Thus, the Complaint does not give any Defendant notice that he or she is being accused of an actionable conspiracy.

Second, the Complaint does not allege facts supporting a plausible inference that the Defendant agreed on "a common, *unconstitutional* goal." *Janny*, 8 F.4th at 919 (emphasis added). The Opposition asserts that "[a]ll Defendants shared the goal of generating publicity, securing funding, and deflecting from the Ballard/OUR scandals." (Opp'n at 20.) The goals are not unconstitutional.

9

Third, the Complaint does not allege <u>facts</u> showing that all four of Defendants took "concerted action." *Id.* There are a few conclusory allegations that Defendant Jeter made false statements in the warrant affidavit "with the assistance and support of Defendant Beckett" or that Beckett prepared probable cause statements and charges "with Defendant Jeter's assistance." (Compl. ¶¶ 53, 55, 151.) But the Complaint does not provide specific facts supporting these allegations, nor does the Complaint allege facts showing that (i) Defendants Reyes or Lucey were involved in any of this "assistance" or (ii) Defendants Beckett and Jeter were collectively involved in any of the other allegedly illegal actions.

At worst, the Complaint alleges a common goal among the Defendants to fight human trafficking. Defendants have cited absolutely no authority suggesting that agreeing to fight a certain type of crime subjects the parties to conspiracy liability under § 1983.[8]

### 3.    The Complaint Does Not Plausibly Plead a "Failure to Intervene."

As with the conspiracy argument, Plaintiffs' new "failure to intervene" argument lacks merit because, among other things, the Complaint does not allege that. Once again, a complaint must give every defendant fair notice of the claims against them.

Further, Plaintiffs have not cited any authority that would allow "failure to intervene" liability on the types of violations alleged here. The only case Plaintiffs cite for this theory is *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008), (Opp'n at 24-25), which

---

[8] Moreover, Defendants Beckett or Reyes cannot be subject to conspiracy liability for matters covered by prosecutorial immunity. For example, where a prosecutor is sued under § 1983 for presenting false testimony at a criminal trial, the prosecutor is clearly immune. *E.g.*, *Imbler*. That immunity would be rendered meaningless, however, if the prosecutor could be sued for conspiring with the witness to present such testimony. *Cf. Dennis v. Sparks*, 449 U.S. 24 (1980) (where judge and private parties conspired to have an injunction issued, claims against the judge were properly dismissed under judicial immunity).

was an excessive force case relying on excessive force cases. *See id.* (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994), *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("An officer who fails to intervene *to prevent a fellow officer's excessive use of force* may be liable under § 1983.") (emphasis added).

At a minimum, a claim for failure to intervene would require Plaintiffs to allege facts establishing that Defendants knew of the violation. *Vondrak*, 535 F.3d at 1210. Plaintiffs have not pointed to any allegation in the Complaint that Defendants Beckett, Lucey, or Reyes even knew that the search warrants or charges were based on allegedly false affidavits.[9] Moreover, as applied to Reyes, mere knowledge of a subordinate's constitutional violations is insufficient to establish liability. *E.g.*, *Rustgi v. Reams*, 536 F. Supp. 3d 802, 817 (D. Colo. 2021).

In short, there is neither a legal nor factual basis for the new failure to intervene claim.

4.    Plaintiffs' "Ratification" Argument Is Based on **a Case that Does Not Exist** and Otherwise Lacks Merit.

Finally, Plaintiffs argue that "Reyes ratified all constitutional violations and is therefore liable for all claims." (Opp'n at 25.) The ratification argument states the law as follows:

> A supervisor who ratifies unconstitutional conduct after the fact may be held liable for that conduct. *See Youngs v. City of St. George*, 2019 WL 2994227, at *8 (D. Utah July 9, 2019).

---

[9] Paragraphs 53 and 55 allege that Jeter, "with the assistance and support of Defendant Beckett," testified falsely in the warrant affidavits and omitted material information. (Compl. ¶¶ 53, 55.) But Plaintiffs do not allege Beckett knew that Jeter's testimony was false. Plaintiffs also argue the *Franks* motion put Beckett "on notice" that the affidavit testimony was false, but the *Franks* filings did not do that. The *Franks* filings merely put Beckett on notice that the Larsens claimed the testimony was false. Judge Cornish never found that Jeter's testimony actually was false.

(Opp'n at 25.) **But *Youngs v. City of St. George* is a case that does not exist.**[10]

On March 12, after we made Plaintiffs' counsel aware that we could not locate *Youngs*, Plaintiffs filed what purports to be a "Notice of Errata Correcting a Citation Error" (the "**Errata**"). (Dkt. 43.) But the Errata is actually an improper supplemental memorandum or notice of supplemental authority, which the Court should strike or disregard. (*See* Motion to Strike Errata, Dkt. 49.)

Even if the Court were to consider the new ratification argument, there would still be no basis for liability against Reyes. First, as with the conspiracy and failure to intervene theories, Plaintiffs have not pleaded that Defendant Reyes is liable for ratifying anything. Neither the word "ratify" nor any related word appears anywhere in the Complaint. Second, the cases cited in the March 12 "Errata" are inapplicable. All three cases deal with <u>*municipal*</u> liability. To hold a municipality liable under § 1983, a plaintiff must show the harm to have resulted from a "policy or custom." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). As *Bryson* explains, there are at least five ways to establish the existence of a "municipal policy or custom," one of which is "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom the authority was delegated subject to these policymakers' review and approval." *Id.* (cleaned up); *see also Young v. Bd. of Supervisors of Humphreys County*, 927 F.3d 898, 904-05 (5th Cir. 2019) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the

---

[10] Westlaw does not have a document with the 2019 WL 2994227. Nor is there a case with that name or description on either Westlaw or PACER. When Defendants' counsel asked Plaintiffs' counsel to provide a correct citation or a copy of *Youngs v. City of St. George*, they refused.

municipality because their decision is final."). Plaintiffs' claims here are all against individuals, not municipalities, and Plaintiffs have alleged no facts in the Complaint suggesting that this kind of "ratification" took place.

### C. Defendant Reyes Is Absolutely Immune from Liability for Any Claim Based on Participating in the Prosecution or Allowing It to Continue.

Finally, any claims against Defendant Reyes for his oversight of or involvement in the actual prosecution are barred by absolute immunity. We are arguing (at present) that absolute immunity bars any purported claims based on public statements, media strategies, or funding decisions by Reyes. But to the extent that Defendant Reyes is claimed to be liable for allowing the prosecution to begin or to continue after Plaintiffs filed their *Franks* motion, immunity applies. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 343-49 (2009) (recognizing that even where a claim is based on a supervising prosecutor's administrative responsibilities, immunity applied where the administrative responsibilities were "directly connected with the prosecutor's basic trial advocacy duties").

### III. THE COURT SHOULD DISMISS THE THIRD CLAIM (MEDIA PRESENCE AT WARRANT EXECUTION).

### A. There Is No Clearly Established Constitutional Right Prohibiting Media Presence at the Execution of a Warrant *on Commercial Property.*

To recap, the Third Claim alleges a Fourth Amendment violation because "Defendants invited members of the media to join the AGO, SECURE, and Lucey in the execution of the Warrants at Rubicon's headquarters." (Compl. ¶ 227.) As detailed in the Motion, there is no "clearly established" constitutional right prohibiting media presence from the execution of warrants *on commercial property*, such as Rubicon's offices, meaning the Court should dismiss the Third Claim as to all Defendants *even if* the Court finds that allowing the news crew to attend

the execution of the warrants violated a constitutional right. *Bailey v. Twomey*, 791 F. App'x 724, 727 (10th Cir. 2019) (unpublished); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

To try and get around the dearth of any legal support prohibiting media presence from the execution of warrants on commercial property, Plaintiffs take two tacks in their Opposition: (1) mischaracterizing the facts and reach of two Supreme Court cases discussed in the Motion, *Wilson v. Layne*, 526 U.S. 603 (1999) and *Hanlon v. Berger*, 526 U.S. 808 (1999), going so far as to claim that "*Wilson* and *Hanlon* prohibit media ride-alongs at non-public commercial office buildings like Rubicon's headquarters," (Opp'n at 31); and (2) discussing at length the uncontested point that businesses enjoy some level of Fourth Amendment protections, but in the process relying on a case, *Wise v. City of Richfield*, No. Civ.02-4274, 2005 WL 361492 (D. Minn. Feb. 14, 2005), that actually supports the point raised in the Motion.

First, neither *Wilson* nor *Hanlon* can be read as creating a "clearly established" constitutional right prohibiting media presence from the execution of warrants *on commercial property* as the Opposition claims. To the contrary, these decisions only establish such a right for searches of homes and residential property. The Opposition does not dispute that *Wilson* concerned a media presence *in a home* and thus was expressly based on "the importance of the right of <u>residential</u> privacy at the core of the Fourth Amendment." 526 U.S. at 606, 612 (emphasis added). Instead, the Opposition asks the Court to expand *Wilson's* holdings into a different fact pattern, to wit, media presence on commercial property. (Opp'n at 30-32.) But the Supreme Court has repeatedly told lower courts "not to define clearly established law at a high level of generality," *City and Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015) (cleaned up), and that "the clearly established law must be 'particularized' to the facts of the case," *White v. Pauly*, 580

U.S. 73, 79 (2017); s*ee also City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) ("[T]he clearly established right must be defined with specificity."). Tellingly, the Opposition fails to grapple with these Supreme Court mandates and instead ignores them altogether. (*See generally* Opp'n.) In short, *Wilson* is not a barrier to dismissal but supports it.

The Opposition also mischaracterizes the facts and holdings of *Hanlon*. The Opposition claims that "[t]he search [there] was of ranch outbuildings *and commercial agricultural property*, *not the residence* located on the property," and that "[t]he Court found a constitutional violation even though the search was of *combined* residential *and commercial property*." (Opp'n at 32 (emphasis added).) These characterizations are belied by the facts of the case explicitly stated in the Per Curiam decision of the Supreme Court and the underlying Ninth Circuit opinion quoted in the Opposition. The Per Curiam decision states that "Respondents *live* on a … ranch near Jordan, Montana," that the "warrant authorizing the search" extended to "The Paul W. Berger ranch with appurtenant structures, excluding the residence," that (citing to the petitioner's brief), "[o]ver the course of the day, the officers searched the ranch and its outbuildings pursuant to the authority conferred by the search warrant," the "CNN media crew ... accompanied and observed the officers," and the "media crew recorded the officers' conduct in executing the warrant." *Hanlon*, 526 U.S. at 809 (emphasis added). The Per Curiam decision *never* uses the descriptions "commercial," "business," or "agricultural" used in the Opposition.

The underlying Ninth Circuit opinion adds more specificity to the facts, revealing the boldness of the Opposition's mischaracterizations. Specifically, the Ninth Circuit opinion discusses that while the ranch house itself was outside the scope of the warrant, the agent there was invited into the home but "wore a microphone that transmitted live to the media the

conversations between him and the Bergers *in their house*." *Berger v. Hanlon*, 129 F.3d 505, 513 (9th Cir. 1997) (emphasis added). More importantly, the Ninth Circuit opinion found that the outbuildings searched in that case were within the curtilage of the home, stating that "there is evidence in the record that the shed and other outbuildings that were a focus of the cameras *were places in which the Bergers did have a reasonable expectation of privacy, in that they were located close to the house and guarded by a dog*." *Id* at 512-13 (emphasis added). And like the Supreme Court's Per Curiam decision, the Ninth Circuit opinion *never* uses the descriptions "commercial," "business," or "agricultural" that are thrown around in the Opposition.

The Opposition also attempts to spin the Ninth Circuit opinion in its favor by claiming its

> prior analysis … had rejected arguments that the open fields doctrine would immunize media presence, holding: 'The open fields doctrine is not a license for the police to bring trespassers on to private property. It allows law enforcement officers to obtain evidence while on privately owned open fields . . . It does not immunize the officers from liability for conduct that has no law enforcement purpose.' 129 F.3d 505, 515 (9th Cir. 1997).

(Opp'n at 32.) This too is a mischaracterization of that opinion. Indeed, to reach its self-serving conclusion, the Opposition omits two critical points that contradict its claim. One, the Ninth Circuit opinion begins the open fields discussion by recognizing the longstanding rule: "Because the Fourth Amendment speaks only to 'persons, houses, papers, and effects,' an individual cannot claim a constitutional violation on account of law enforcement officers' warrantless searches of their 'open fields.'" 129 F.3d at 512 (citing *Hester v. United States*, 265 U.S. 57, 59 (1924) (Holmes, J.)).[11] Two, the Opposition's quote of the Ninth Circuit's opinion (Opp'n at 32)

---

[11] Justice Holmes described that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law." 265 U.S. at 59.

16

selectively omits (at the ellipsis) that the open fields doctrine "*would* thus entitle the officers to prevail <u>if</u> the Bergers were suing them for a warrantless search of open fields for evidence of criminal activity." *Id.* at 512 (emphasis added). The doctrine did not shield the officers because there was evidence, as noted above, "that the shed and other outbuildings that were a focus of the cameras were places in which the Bergers did have a reasonable expectation of privacy, in that they were located close to the house and guarded by a dog," *id*. at 512-13, i.e., within the curtilage of the home. In other words, *Hanlon* stands—at most—as a "clearly established" constitutional right prohibiting media presence from the execution of a warrant in a home on a ranch or in the curtilage of the ranch's home (including outbuildings and open space in that curtilage). *Hanlon* cannot be read as extending to commercial property.

Second, the Opposition spends two pages insisting that a business is entitled to some level of Fourth Amendment protection. But the Motion openly admits this, stating that, "[w]hile the Fourth Amendment applies to commercial premises, … commercial property is treated *with less protection* than homes and residential property." (Mot. at 22 (citations omitted).) The Opposition's case law does not get Plaintiffs the "clearly established" constitutional right they so badly want. The decisions simply stand for the admitted proposition that the Fourth Amendment applies to commercial premises. In fact, one case on which the Opposition relies, *Wise v. City of Richfield*, was <u>cited by *Defendants*</u> because it did ***not*** find a "clearly established" constitutional right prohibiting media presence during execution of a warrant on commercial property. (Mot. at 22 (citing *Wise*, No. Civ.02-4274, 2005 WL 361492 (D. Minn. Feb. 14, 2005)).) Conspicuously, the Opposition fails to recognize or take issue with the relevant, on-point holding of *Wise*. There, the "Plaintiffs assert[ed] that the presence of the news crew during the search [of a commercial

17

strip club] violated their constitutional rights." 2005 WL 361492 at *3. The District of Minnesota distinguished *Wilson* and *Hanlon* as concerning "searches of private or residential property, where one's expectation of privacy is at its highest," concluding that "Plaintiffs have not called to the Court's attention any controlling authority indicating that this protection extends to a commercial property during business hours when the property is open to the public." *Id*. (finding qualified immunity). Far from supporting Plaintiffs, *Wise* suggests dismissal is appropriate.

Accordingly, the Court should hold there is no "clearly established" constitutional right prohibiting media presence from the execution of warrants *on commercial property*, such as Rubicon's offices, and dismiss the Third Claim as to all Defendants.

### B. Plaintiffs' New "Sealed-Warrant Violation" Argument Does Not Defeat Qualified Immunity.

The Opposition next claims that "[n]o reasonable officer could believe that disclosing sealed warrant and supporting affidavit information to the media, before and as the warrants were being executed, and inviting the media to join law enforcement officers and film the execution was lawful, regardless of premises type." (Opp'n at 35.) But the Complaint does not allege that any of Defendants ever "disclos[ed the] sealed warrant and supporting affidavit information to the media" (*see generally* Compl.), meaning this new argument must fail. Separately, even assuming the warrant or affidavit were disclosed to the media, the Opposition fails to cite any authority that—or otherwise explain how—such a disclosure would amount to a *constitutional violation*. (*See* Opp'n at 35.) Accordingly, this new argument does not change the calculus of there being no "clearly established" constitutional right prohibiting media presence from the execution of warrants on commercial property, meaning the Third Claim should still be dismissed as to all Defendants.

C.    **Plaintiffs Have Presented No Basis to Hold Defendants Reyes, Beckett, or Jeter Liable for the Media Involvement in the Warrant Execution.**

The Motion rightfully argues that the Third Claim fails as to Defendants Reyes, Beckett, and Jeter because the Complaint does not allege that any of them invited the media, brought the news team inside the Rubicon offices, or in any way knew of or affirmatively interacted with the media during execution of the warrants and because the Complaint's broad, collective allegations that "Defendants," "AGO," and/or "SECURE" notified and invited the media are insufficient to state or support a claim against any particular individual Defendant. (Mot. at 23-25.) Plaintiffs apparently contend that these Defendants are liable under the theories of conspiracy and/or failure to intervene. (Opp'n at 20-21, 24-25.) As explained in Sections II.B.2 and 3 above, however, Plaintiffs have not included any such claims in their Complaint, nor have they pleaded specific facts sufficient to make such theories plausible.

IV.    **ARGUABLE PROBABLE CAUSE EXISTED FOR THE SEARCH AND PROSECUTION, MERITING DISMISSAL OF CLAIMS 1, 2, AND 4.**

Section IV of the Motion (at 24-31) argues that the Complaint fails to state a claim under § 1983 arising from the allegedly defective warrant affidavit because at a minimum, *arguable probable cause* existed, meriting qualified immunity for all Defendants as to the First, Second, and Fourth Claims. To recap, the bases for this argument are: (1) the First Claim (illegal search), Second Claim (illegal seizure), and Fourth Claim (malicious prosecution) *all require a lack of probable cause* in regard to the searches, seizures, and prosecution described in the Complaint; (2) the Complaint alleges that the searches, seizures, and subsequent prosecution at issue violated the Fourth Amendment because the affidavits submitted in support of the warrants contained material misstatements and omitted material information necessary for the magistrates to

19

determine whether probable cause existed; and (3) at the motion to dismiss stage courts in the Tenth Circuit routinely assess probable cause by removing any false information from the affidavit, including any omitted material information, and then inquiring whether the modified affidavit establishes arguable probable cause for the warrant. *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015); *Bailey*, 791 F. App'x at 731-34 (affirming district court's finding of arguable probable cause after removing allegedly false statements from affidavit and affirming dismissal of illegal detention and malicious prosecution claims). To this end, the Motion attached such a corrected version of the Affidavit as Exhibit 4, with all information alleged to be false stricken and all allegedly omitted information added.

Plaintiffs have not pointed out any errors in the creation of the demonstrative Exhibit 4, such as a failure to strike testimony that the Complaint alleges was false or a failure to add information that was allegedly omitted. Nor do Plaintiffs address whether Exhibit 4, as corrected, provides probable cause. Instead, the Opposition raises three counter arguments: *first*, the Court should defer to the state court's decisions below and collaterally estop Defendants from arguing otherwise (Opp'n at 11-13, 39); *second*, the Court should strike or disregard Exhibit 4 as improper extrinsic evidence (Opp'n at 14, 19); and *third*, the alleged pattern of misconduct eliminates any possible argument of good faith (Opp'n at 39-40). As detailed below, each of these arguments is easily dispatched, and the Court should find that arguable probable cause exists, meriting qualified immunity for all Defendants as to the First, Second, and Fourth Claims.

> **A.    Criminal Defendants Turned Civil Rights Plaintiffs Cannot Invoke Offensive Collateral Estoppel When Suing Government Employees *Individually*.**

First, Plaintiffs would love nothing more than for this Court to enforce their two hoped-for talismans—the Return of Funds Order (Compl., Ex. A) and the *Franks* Order (Compl., Ex. B)

issued by the state court below—against all Defendants herein. To that end, the Opposition asks the Court to "apply collateral estoppel to preclude Defendants from relitigating the factual findings in the orders" and from raising the arguable probable cause defense or, "in the alternative, reserve the collateral estoppel argument for consideration at summary judgment." (Opp'n at 13, 39.) The Court should reject this baseless argument as a matter of law, now.

Importantly, for collateral estoppel to apply in this case, the Defendants "*must* have been parties to that [underlying state] criminal proceeding or in privity with the parties in that action." *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106 (10th Cir. 1998) (re § 1983 claims, applying "substantially same" collateral estoppel rules from Oklahoma in analysis of prior state court rulings) (emphasis added). In *Kinslow*, the plaintiff contended that the district court erroneously granted defendants qualified immunity because it was precluded from reexamining the legality of the search, seizure, and arrest by a prior state court determination that found no probable cause to prosecute. *See id*. at 1105. The Tenth Circuit found:

> Clearly, the officers were not parties to Plaintiff's criminal proceeding. Plaintiff's opponent was the State …. [The o]fficers … had no control over the prosecution of the criminal …. The officers "could not call witnesses, ... direct the examination of the State's witnesses, ... [or] choose the counsel who represented the State at the suppression hearing. Nor could the officers appeal the ruling once it was made."

*Id*. (quoting *Harris v. Jones*, 471 N.W.2d 818, 820 (Iowa 1991)) (also citing *Griffin v. Strong*, 739 F. Supp. 1496, 1502-03 (D. Utah 1990) (re § 1983 claim, determining that officer was not party to or in privity with state in plaintiff's criminal case where plaintiff attempted to use collateral estoppel offensively to preclude certain arguments and defenses to § 1983 claim)).

Critically, the Tenth Circuit in *Kinslow* recognized that the officers were "being *sued in their individual capacity* in this action and their personal interests, which were not at stake in the

21

criminal proceeding, differ from [the state's] … interests." 158 F.3d at 1106 (emphasis added). Thus, the Tenth Circuit found that "[b]ecause the officers were neither parties nor privies to the prior state court determination and, therefore, did not have a full and fair opportunity to litigate in state court the constitutionality of the issues in this section 1983 action, the doctrine of issue preclusion does not apply to this case." *Id*. at 1106-07 (footnotes omitted). *Kinslow* is on point.

The Tenth Circuit also has recognized that "[t]he general weight of authority appears to be that while **government employees** are in privity with their employer in their official capacities, **they are _not_ in privity in their individual capacities**." *Gonzalez v. Hernandez*, 175 F.3d 1202, 1206 (10th Cir. 1999) (emphasis added).[12] In light of this authority, it is unsurprising that courts appear to unanimously hold that criminal defendants turned § 1983 civil rights plaintiffs, like Plaintiffs here, are not allowed to invoke offensive nonmutual collateral estoppel when suing government employees in their individual capacity because, as individuals, they were not parties to the underlying state action or in privity with the state and have different interests.

Here, all Defendants have been sued in their individual capacities. (*See* Compl.) None were parties to the state cases below, and none were in privity with the state in the prior actions. Instead, any involvement by Defendants in the state court proceedings below was in their official capacities as employees of the state of Utah, not in their individual capacities. Certainly, these

---

[12] In making this statement of authority, the Tenth Circuit cited these authorities as examples: *Gray v. Lacke*, 885 F.2d 399, 404-06 (7th Cir.1989); *Willner v. Budig*, 848 F.2d 1032, 1034 n.2 (10th Cir.1988); *Headley v. Bacon*, 828 F.2d 1272, 1279 (8th Cir.1987); *Roy v. City of Augusta*, 712 F.2d 1517, 1522 (1st Cir.1983); *Bills v. Homer Consol. Sch. Dist.*, 959 F. Supp. 507, 514-15 (N.D. Ill. 1997); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4458 at 506 & n.8, 508-09 & n.12 (1981 & Supp.1999) (citing cases); J. Moore, 18 *Moore's Federal Practice* § 131.40(3)(e)(ii)(A) (3d ed.1999).

Defendants—who are now being targeted individually for a *billion* dollars of damages plus punitive damage—must be allowed to protect their personal interests and defend themselves. And, such defenses include "fully challenging [all] the Fourth Amendment issues in th[is] section 1983 lawsuit." *Sherry v. Iron County*, No. 2:05-CV-843, 2006 WL 1982792 (D. Utah July 12, 2006) (J. Benson) (granting summary judgment for defendants: plaintiff "may not offensively use collateral estoppel" against government employees sued individually) (citing *Kinslow*, 158 F.3d at 1106, and *Griffin*, 739 F. Supp. at 1503) (unpublished).

Finally, this is a question of law that the Court can and should decide at this motion to dismiss stage by assuming the facts as pleaded in the Complaint to be true. *See Haskell v. Wakefield & Assocs.* 2024 UT App 123, ¶18, 557 P.3d 245 (stating whether issue preclusion bars litigation in a subsequent action is a question of law; affirming dismissal via motion to dismiss).

B.      **Demonstrative Exhibit 4 Is Simply an Illustrative Aid Based Solely on an Exhibit to the Complaint and the Complaint's Allegations, Nothing More.**

Next, Plaintiffs ask the Court to strike Exhibit 4 to the Motion "as improper extrinsic evidence that falls outside the four categories permitted under *Cuervo v. Sorenson*, 112 F.4th 1307 (10th Cir. 2024), and *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002)." (Opp'n at 19.) Not so. As explained in the Motion, Exhibit 4 is simply an illustrative demonstrative created from Exhibit 3, which is the Affidavit attached to the Complaint (and mentioned over fifty times therein), and the allegations of material misstatements and omissions in the Affidavit as set forth in the Complaint. As a result, demonstrative Exhibit 4 is *not* itself extrinsic evidence or new evidence of any type but is intended as an aid for the Court in its arguable probable cause analysis, nothing more. And, Exhibit 4 is wholly consistent with the aforementioned cases because, again, it is based on documents and allegations within the four corners of the

Complaint. Notably, other than generalized assertions, Plaintiffs do not point out any inaccuracies in this illustrative corrected affidavit. In sum, the Court should deny this request.

### C. Arguable Probable Cause at the Motion to Dismiss Stags Is an Objective Test Based on a Hypothetical Affidavit Modified Based on the Complaint.

Last, the Opposition suggests that the alleged "pattern of misconduct eliminates any possible argument of good faith," thereby defeating the arguable probable cause argument. (Opp'n at 39-40.) This, however, overlooks that assessing arguable probable cause is an *objective* analysis of a corrected warrant affidavit that (1) removes any false information from the affidavit, (2) includes any omitted material information, and then (3) inquires whether the modified affidavit establishes probable cause for the warrant. *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015); *Stonecipher v. Valles*, 759 F.3d 1134, 1141-42 (10th Cir. 2014). And, Courts routinely use this corrected affidavit procedure at the motion to dismiss stage (by assuming a complaint's allegations to be true and creating a worst-case corrected affidavit) when dismissing § 1983 claims because of qualified immunity. *See*, *e.g.*, *Bailey*, 791 F. App'x at 731-32 (affirming dismissal of § 1983 illegal detention and malicious prosecution claims based on finding of arguable probable cause after removing allegedly false statements from affidavit and stating that "arguable probable cause … [turns] on whether, as a purely objective matter, 'a reasonable officer' in the defendants' position 'could have believed … probable cause existed'"). If § 1983 plaintiffs could simply sidestep this arguable probable cause analysis by alleging defendants acted with malice and thus lacked good faith, qualified immunity would mean very little in the context of at least malicious prosecution claims, which require malice as an element. Of course, courts in the Tenth Circuit routinely use a lack of arguable probable cause to dismiss malicious prosecution claims, highlighting that probable cause is a distinct, objective element.

## V.  THE COURT SHOULD DISMISS CLAIMS 1, 2, AND 4 AGAINST LUCEY BECAUSE OF A FAILURE OF ADEQUATE PLEADING.

Plaintiffs have not alleged facts sufficient to hold Defendant Lucey liable for the First, Second, or Fourth Claims. Plaintiffs argue that Lucey has "supervisory liability for each claim," but the Plaintiffs cite only one fact that relates to the First, Second, or Fourth Claims: "Under Defendant Lucey's supervision and direction, Defendant Jeter was the lead investigator." (Opp'n at 24 (quoting Compl. ¶ 49.).) As established above in connection with Defendant Reyes, this conclusory allegation is nowhere near sufficient to establish supervisory liability. Plaintiffs also appear to suggest that Defendant Lucey is liable for all claims under theories of conspiracy and failure to intervene, but again, neither of these theories has been pleaded, nor have sufficient facts been alleged to support them.

## VI.  THE FOURTH CLAIM (MALICIOUS PROSECUTION) FAILS IN ITS ENTIRETY.

### A.  The Larsens Were Not "Seized" as Required by the Fourth Amendment.

Plaintiffs do not dispute that a malicious prosecution claim fails as a matter of law if a plaintiff does not allege that he or she was physically arrested or detained. *See, e.g.*, *Becker v. Kroll*, 494 F.32d 904, 915 (10th Cir. 2007). Instead, Plaintiffs assert they met this requirement because (i) arrest warrants were issued and pursued, (ii) the Larsens supposedly were arrested and booked when they self-surrendered, (iii) the criminal prosecution constituted an ongoing seizure, and (iv) the Larsens' property was seized. (Opp'n at 40-41.) All four arguments fail.

First, the Opposition cites no authority holding the mere *issuance* of warrants satisfies the seizure requirement. Instead, the law is clear that a plaintiff must be "arrested or incarcerated" to state a constitutional malicious prosecution claim. *E.g.*, *Nielander*, 582 F.3d at 1165.

Second, Plaintiffs' assertion that the Larsens were "arrested and booked" is not supported by the record. Regardless of what Plaintiffs might say in their Opposition, their *Complaint* does not allege any arrest or incarceration.[13]

Third, the Tenth Circuit has established that conditions of pretrial release do *not* constitute a seizure sufficient to support a malicious prosecution claim. *See Becker v. Kroll*, 494 F.3d 904, 914-15 (10th Cir. 2007) (rejecting concept of "ongoing seizure" and holding that requiring person to post bond, compelling appearance in court, and restrictions on interstate travel are insufficient to support a claim); *Nielander*, 582 F.3d at 1165 (criminal summons that inhibited freedom of movement was not a seizure); *Mata v. Anderson*, 635 F.3d 1250, 1254 (10th Cir. 2011) (travel restrictions were not a seizure).

Fourth, Plaintiffs have cited no authority that seizure of <u>property</u> satisfies the requirement that a malicious prosecution plaintiff be "arrested or incarcerated." (Opp'n at 41.) Plaintiffs correctly note that under *Soldal v. Cook County*, 506 U.S. 56 (1992), property seizure can violate the Fourth Amendment. However, *Soldal* was not a malicious prosecution case. If Plaintiffs' property was illegally seized (and they can satisfy all the other requirements), their remedy lies in their Second Claim. But there is no basis to conclude that seizure of property alone allows a plaintiff to bring a § 1983 malicious prosecution claim.[14]

---

[13] The Court should reject Plaintiffs' request to take judicial notice of the "booking record," as Plaintiffs have not provided a copy of the record. *See* Fed. R. Evid. 201(c)(2) (judicial notice requires "the court [be] supplied with the necessary information"). Moreover, Plaintiffs have not cited any authority that being booked and immediately released constitutes a seizure.

[14] For similar reasons, the malicious prosecution claim by the Rubicon Entities fails because the Entities were not prosecuted and thus lack standing. Plaintiffs argue that the seizure of their property gives the Entities standing, but as stated in the text, the Entities' remedy for that claim

**B.      The Prosecution Did Not Terminate in Plaintiffs' Favor.**

A § 1983 malicious prosecution claim requires proof that "the original action terminated in favor of the plaintiff." *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023). Plaintiffs contend that dismissal of the state criminal case against the Larsens constitutes a favorable termination under *Thompson v. Clark*, 596 U.S. 36 (2022).[15] (Opp'n at 41-42.) Of course, the Larsens' original state criminal prosecution was dismissed without a conviction, arguably satisfying this element if applied strictly to the limited, literal outcome of *Thompson*. 596 U.S. at 43. But the Opposition ignores the critical context of the underlying dismissal of the state case against the Larsens, how that factual context differs from that in *Thompson*, and how a finding of no favorable termination in this case supports the policy concerns enunciated in *Thompson*.

Of note, the Supreme Court in *Thompson* addressed the issue of whether a favorable termination must incorporate a finding or indication of actual innocence, as there was a split in the Circuit Courts of Appeal on that particular issue. 596 U.S. at 41. *Thompson* is distinguishable because it did not concern important facts that exist here. Specifically, the state criminal charges against the Larsens were dismissed without prejudice in express deference to a federal investigation by the Department of Justice's Civil Rights Division—Human Trafficking Prosecution Unit and the Department of Homeland Security's Center for Counter Human

---

lies in their Second Claim. Plaintiffs unsurprisingly have not cited any authority holding that a party may pursue a malicious prosecution case *when the party has <u>never been prosecuted</u>*.

[15] The other two cases cited in the Opposition have no bearing on this issue, as neither mentions or discusses in any way the favorable termination prong of the malicious prosecution elements; indeed, strangely, neither case seems to concern a malicious prosecution claim, at least not as commonly alleged. *See generally DeLoach v. Bevers*, 922 F.2d 618 (10th Cir. 1990) (not referencing or discussing "malicious prosecution" or favorable termination element at all); *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011) (same).

Trafficking. (Mot., Ex. 1., at 1-2.) Moreover, the state court's order of dismissal expressly found that "it is not yet convinced that the State has engaged in misconduct" and recognized that "the dismissal and discharge do not preclude the state from instituting a subsequent prosecution for the same offense." (Mot., Ex. 2., at 3-4.) Finally, a federal search warrant issued by (now) Chief Magistrate Judge Romero on January 10, 2025, authorized seizure by the federal government of "Property involved in investigation of Rubicon previously seized and held as evidence by the Utah Attorney General's Office," confirming at a minimum that the federal investigation concerned the same conduct.[16] (Mot., Ex. 5.)

In light of these facts, this is not the type of termination *Thompson* contemplated. The dismissal here carries none of the indicia of favorable termination apart from the original state case having been dismissed without a conviction. The as-alleged and judicially noticed facts indicate a handoff of the case to federal authorities, not an acknowledgment that the charges against the Larsens were unfounded. Thus, finding a favorable termination here would frustrate the policies underlying the requirement as set forth in *Thompson* of (i) avoiding parallel litigation in civil and criminal proceedings over the issues of probable cause and guilt; (ii) precluding inconsistent civil and criminal judgments; and (iii) preventing civil suits from being improperly used as collateral attacks on criminal proceedings. 596 U.S. at 39, 44. The two prior decisions cited by the Supreme Court in *Thompson* in support of these policies, *Heck v. Humphrey*, 512 U.S. 477, 484-485 (1994), and *McDonough v. Smith*, 588 U.S. 109, 117-118 (2019), both

---

[16] The Opposition attempts to downplay the significance of the federal search warrant because Defendant Beckett, as Special Assistant US Attorney, filed the federal application and affidavit. But this feint overlooks that the affidavit and returned executed search warrant were signed by an independent Special Agent for Homeland Security Investigations. (Opp'n, Ex. 1, at 23.)

reinforce the importance of a § 1983 case such as this one *not* being used as a mechanism to undermine parallel criminal proceedings. *McDonough*, 588 U.S. at 118 ("[M]alicious prosecution's favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments" and with avoiding collateral attacks via civil litigation).

Finally, as the Opposition makes clear, the policies underlying *Thompson* raise genuine concerns in this case, where a federal investigation of the same matters appears to have been initiated but Plaintiffs strenuously urge this Court to "move forward expeditiously to complete discovery" and "proceed to trial (if necessary) on an expedited schedule." (Opp'n at 43.) Plaintiffs appear to want this § 1983 case to influence (hopefully in their favor) the parallel federal criminal investigation. The Court should not let this happen, find there was not a favorable termination of the state course action, and dismiss the malicious prosecution claim.

## CONCLUSION

For the reasons set forth above and previously in their Motion, Defendants respectfully request that this Court dismiss the Complaint in its entirety for failure to state a claim on which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).[17]

---

[17] Defendants respectfully submit that because Plaintiffs have not moved for leave to amend or attached a copy of a proposed amendment, any decision about amendment would be premature.

29

DATED this 17th day of March, 2026.

*/s/ Stephen P. Horvat*
FABIAN VANCOTT
Jason W. Hardin
Jeffery B. Setness
Stephen P. Horvat
J. Mason Kjar
Trevor J. Adkins

OFFICE OF THE UTAH ATTORNEY GENERAL
Bradley R. Blackham
Andrew R. Hopkins
Assistant Utah Attorneys General

*Attorneys for Defendants*

30

**ADDENDUM**

**SUMMARY OF GROUNDS FOR DISMISSAL**

|  | Claim 1: Illegal Search | Claim 2: Illegal Seizure | Claim 3: Media Presence | Claim 4: Malicious Prosecution |
|---|---|---|---|---|
| Beckett | Prosecutorial Immunity (Argument Section I)<br><br>Arguable Probable Cause ("PC") (IV) | Prosecutorial Immunity (I)<br><br>Arguable PC (IV) | No personal involvement (III)<br><br>Qualified Immunity (III) | Prosecutorial Immunity (I)<br><br>Arguable PC (IV)<br><br>No Seizure or Favorable Termination (VI) |
| Reyes | No personal involvement (II)<br><br>Arguable PC (IV) | No personal involvement (II)<br><br>Arguable PC (IV) | No personal involvement (II, III)<br><br>Qualified Immunity (III) | Prosecutorial Immunity (I)<br><br>No personal involvement (II)<br><br>Arguable PC (IV)<br><br>No Seizure or Favorable Termination (VI) |
| Lucey | No personal involvement (V)<br><br>Arguable PC (IV) | No personal involvement (V)<br><br>Arguable PC (IV) | Qualified Immunity (III) | No personal involvement (V)<br><br>Arguable PC (IV)<br><br>No Seizure or Favorable Termination (VI) |
| Jeter | Arguable PC (IV) | Arguable PC (IV) | No personal involvement (III)<br><br>Qualified Immunity (III) | Arguable PC (IV)<br><br>No Seizure or Favorable Termination (VI) |

31