Jason W. Hardin (8793)
Jeffery B. Setness (20026)
Stephen P. Horvat (6249)
J. Mason Kjar (14227)
Trevor J. Adkins (18297)
FABIAN VANCOTT
95 South State Street, Ste. 2300
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
jhardin@fabianvancott.com
jsetness@fabianvancott.com
shorvat@fabianvancott.com
mkjar@fabianvancott.com
tadkins@fabianvancott.com

Bradley R. Blackham (8703)
Andrew R. Hopkins (13748)
Assistant Utah Attorneys General
Derek E. Brown (10476)
Utah Attorney General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
bblackham@agutah.gov
arhopkins@agutah.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| RUDY LARSEN, an individual; JENA LARSEN, an individual; RUBICON CONTRACTING, LLC, a Utah limited liability company; SCANDIA COMPANY, LLC, a Utah limited liability company; and SMART RAIN SYSTEMS, LLC, a Utah limited liability company,, <br><br> Plaintiffs, <br><br> v. <br><br> SEAN D. REYES, an individual; LEO LUCEY, an individual; MICHAEL ADAM JETER, an individual; and KAYTLIN VIRGINIA BECKETT, an individual, <br><br> Defendants. | **NOTICE OF SUPPLEMENTAL AUTHORITIES SUPPORTING MOTION TO DISMISS** <br><br> Case No. 2:25-CV-00963-HCN-JCB <br><br> District Judge Howard C. Nielson, Jr. <br><br> Magistrate Judge Jared C. Bennett |

Pursuant to Local Rule 7-1(c), Defendants hereby direct the Court to two pertinent and significant cases relevant to Defendants' Motion to Dismiss (Dkt. 37) that have recently come to

counsel's attention.  Both cases were issued after we filed our Reply supporting the Motion (Dkt. 050).

A.      *Morphew v. Chaffee County, Colorado*, Case 24-1424, 2026 WL 925539 (10th Cir. Apr. 6, 2026) (Ex. A hereto).

*Morphew* pertains to the point argued on page 27 of the Motion and page 24 of the Reply.  It is relevant to establish that whether a corrected warrant affidavit establishes probable cause is appropriately decided on a motion to dismiss.  *Morphew* supports Defendants' argument on this point.

B.      *Zorn v. Linton*, 146 S. Ct. 926 (2026).

*Zorn* pertains to the point argued on pages 20-21 of the Motion and 14-15 of the Reply.  It is relevant to establish that in determining whether an officer's alleged actions violate a "clearly established" constitutional right, qualified immunity applies unless the officer "could have 'read' the relevant precedent beforehand and 'known' that it proscribed their specific conduct."  *Id.* at 930. *Zorn* supports Defendants' argument on this point.

DATED this 15th day of April, 2026.

**FABIAN VANCOTT**

*/s/ Stephen P. Horvat*
Jason W. Hardin
Jeffery B. Setness
Stephen P. Horvat
J. Mason Kjar
Trevor J. Adkins

*Attorneys for Defendants*

# EXHIBIT A

2026 WL 925539
Only the Westlaw citation is currently available.
United States Court of Appeals, Tenth Circuit.

Barry MORPHEW, Plaintiff - Appellant,

v.

CHAFFEE COUNTY, COLORADO; Board of County Commissioners of Chaffee County, Colorado; Chaffee County Sheriff's Department; Linda Stanley, District Attorney, in her official and individual capacities; John Spezze, Chaffee County Sheriff, in his official and individual capacities; Alex Walker, Eleventh Judicial District Attorney's Office Investigator; Jeffrey Lindsey, Deputy District Attorney; Mark Hurlbert, Deputy District Attorney; Andrew Rohrich, Chaffee County Undersheriff; John Camper, Colorado Bureau of Investigation Director; Scott Himschoot, Chaffee County Sheriff's Department; Joseph Cahill, Colorado Bureau of Investigation Agent; Megan Duge, Colorado Bureau of Investigation Agent; Caitlin Rogers, Colorado Bureau of Investigation Agent; Derek Graham, Colorado Bureau of Investigation Agent; Kevin Koback, Colorado Bureau of Investigation Agent; Kirby Lewis, Colorado Bureau of Investigation Agent; Chris Schaefer, Colorado Bureau of Investigation Deputy Director of Investigations; John/Jane Does, 1-10, and other unknown employees of the Eleventh Judicial District Attorney, and other unknown officers of the Chaffee County Sheriff's Department; William Plackner, Chaffee County Sheriff's Sergeant; Randy Carricato, Chaffee County Sheriff's Detective; Robin Burgess, Chaffee County Sheriff's Detective, Defendants - Appellees,
and
Claudette Hysjulien, Chaffee County Sheriff's Sergeant; Jonathan Grusing, Federal Bureau of Investigation Unit; Kenneth Harris, Federal Bureau of Investigation Unit, Defendants.

No. 24-1424
|
FILED April 6, 2026

**Synopsis**
**Background:** Former defendant to murder prosecution, which arose from disappearance of former defendant's wife and which was dismissed by prosecution, brought §

1983 action against the state prosecutors, law enforcement officers, and municipalities involved in former defendant's arrest and abandoned prosecution, alleging fabrication of evidence, conspiracy, and malicious prosecution. The United States District Court for the District of Colorado, Daniel D. Domenico, J., 2024 WL 5673501, granted prosecutors', officers', and municipalities' motions to dismiss for failure to state claim. Former defendant appealed.

**Holdings:** The Court of Appeals, Rossman, Circuit Judge, held that:

[1] probable cause existed for arrest and prosecution of former defendant, precluding his Fourth Amendment claims under § 1983 for malicious prosecution and fabrication of evidence;

[2] former defendant did not sufficiently allege that evidence purportedly fabricated by prosecutors or state law enforcement officers was the cause of the prosecution, as would be required to state a due process fabrication-of-evidence claim; and

[3] even if a substantive due process cause of action under § 1983 existed for reckless investigation based on pre-arrest misconduct, former defendant's allegations with regard to causation element of such a cause of action did not meet plausibility standard required to survive a motion to dismiss for failure to state a claim.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim; Motion to Strike; Motion to Set Aside or Vacate.

West Headnotes (36)

[1] **Federal Courts** ⚷

In reviewing an order granting a motion to dismiss for failure to state a claim, Court of Appeals' role is like the district court's: Court of Appeals accepts the well-pleaded facts alleged as true and views them in the light most favorable to the plaintiff. Fed. R. Civ. P. 12(b)(6).

**[2]    Federal Civil Procedure** 🔑

A plaintiff who fails to plead a plausible claim is subject to dismissal. Fed. R. Civ. P. 12(b)(6).

**[3]    Federal Civil Procedure** 🔑

To satisfy the plausibility standard for surviving a motion to dismiss for failure to state a claim, the complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Fed. R. Civ. P. 12(b)(6).

**[4]    Federal Civil Procedure** 🔑

The nature and specificity of the allegations required to state a plausible claim, as required to survive motion to dismiss for failure to state claim, will vary based on context. Fed. R. Civ. P. 12(b)(6).

**[5]    Federal Civil Procedure** 🔑

On a motion to dismiss for failure to state claim, court does not accept threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements. Fed. R. Civ. P. 12(b)(6).

**[6]    Federal Civil Procedure** 🔑

On a motion to dismiss for failure to state claim, court does not accept allegations plainly contradicted by properly considered documents or exhibits. Fed. R. Civ. P. 12(b)(6).

**[7]    Federal Civil Procedure** 🔑

In considering whether the complaint's allegations are sufficient to survive a motion to dismiss for failure to state a claim, court eliminates conclusory allegations, mere labels and conclusions, and any formulaic recitation of the elements of a cause of action. Fed. R. Civ. P. 12(b)(6).

**[8]    Federal Civil Procedure** 🔑

In assessing whether plaintiff has stated claim for relief, on a motion to dismiss for failure to state a claim, court must, as general rule, restrict its review to only allegations within four corners of complaint and cannot consider other pleadings or external allegations; however, there are exceptions to this rule, which are limited to: (1) documents attached to the complaint as exhibits, (2) documents referenced in the complaint that are central to the plaintiff's claims, provided their authenticity is undisputed, and (3) matters subject to judicial notice. Fed. R. Civ. P. 12(b)(6).

**[9]    Federal Civil Procedure** 🔑

Arrest affidavit could be considered by court in analysis of motions to dismiss for failure to state claim brought by state prosecutors, law enforcement officers, and municipalities in response to former defendant's § 1983 action alleging fabrication of evidence and malicious prosecution under Fourth and Fourteenth Amendments arising from murder prosecution which had been dismissed by prosecution, where former defendant attached the arrest affidavit to his complaint and referenced it throughout his allegations, and no party challenged the authenticity of the affidavit or the district court's authority to consider it. U.S. Const. Amends. 4, 14; 42 U.S.C.A. § 1983; Fed. R. Civ. P. 12(b)(6).

More cases on this issue

**[10]   Malicious Prosecution** 🔑

Although a plaintiff may have Fourteenth Amendment procedural due process claim analogous to tort claim for malicious prosecution if he has been imprisoned pursuant to legal but wrongful process, this is so only when adequate state remedy does not exist. U.S. Const. Amend. 14.

**[11]   Malicious Prosecution** 🔑

To state a § 1983 claim for malicious prosecution under the Fourth Amendment, a plaintiff must show, among other things, that the original action terminated in favor of the plaintiff, and that no probable cause supported the original arrest, continued confinement, or prosecution. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[12]    Malicious Prosecution**

The absence of probable cause is an element of a § 1983 claim for malicious prosecution under the Fourth Amendment. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[13]    Civil Rights**

Evidence fabrication can violate a pretrial detainee's Fourth Amendment rights. U.S. Const. Amend. 4.

**[14]    Civil Rights**

The Fourth Amendment prohibits pretrial detention of a defendant when there is no probable cause to believe he committed a crime. U.S. Const. Amend. 4.

**[15]    Civil Rights**

When the police's fabrication of evidence results in a person being charged with a crime, that person's Fourth Amendment claims for fabrication of evidence will be defeated if there was independent probable cause for the deprivation of liberty. U.S. Const. Amend. 4.

**[16]    Search, Seizure, and Arrest**

A Fourth Amendment violation occurs if an officer's affidavit supporting an arrest warrant application contains a reckless misstatement or omission that is material because, but for it, the warrant could not have lawfully issued. U.S. Const. Amend. 4.

**[17]    Search, Seizure, and Arrest**

To allege a *Franks* violation of Fourth Amendment based on reckless misstatement or omission in arrest warrant application, arrestee must plausibly claim the false statements and exculpatory omissions were material; that is, he must plausibly allege the arrest affidavit, once stripped of the misstatements and supplied with the omitted exculpatory facts, did not support probable cause. U.S. Const. Amend. 4.

**[18]    Civil Rights**

To recover under § 1983 conspiracy theory, plaintiff must plead and prove not only conspiracy, but also actual deprivation of rights; pleading and proof of one without the other will be insufficient. 42 U.S.C.A. § 1983.

**[19]    Civil Rights**

To state a § 1983 claim for failure to intervene to prevent violation of constitutional rights, a plaintiff must allege (1) a government officer violated his constitutional rights; (2) a different government actor, that is, the defendant, observed or had reasons to know about that constitutional violation; and (3) the defendant had a realistic opportunity to intervene, but failed to do so. 42 U.S.C.A. § 1983.

**[20]    Civil Rights**

To state a § 1983 claim against a municipal entity, a plaintiff must allege facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference. 42 U.S.C.A. § 1983.

**[21]    Civil Rights**

There can be no municipal liability under § 1983 in a *Monell* claim without an underlying constitutional violation. 42 U.S.C.A. § 1983.

**[22]    Malicious Prosecution**

"Probable cause" for arrest and prosecution, as would defeat § 1983 claim of malicious prosecution under Fourth Amendment, is not high bar and requires substantial probability that crime has been committed and that specific individual committed crime. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[23]    Malicious Prosecution**  👈

In a § 1983 action for malicious prosecution under Fourth Amendment, probable cause may be a proper issue for the jury if there is room for a difference of opinion. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[24]    Malicious Prosecution**  👈

Probable cause existed for arrest and prosecution of suspect for first-degree murder of his wife following her disappearance, precluding suspect's Fourth Amendment claims under § 1983 for malicious prosecution and fabrication of evidence, which suspect brought against state prosecutors and law enforcement officers based on assertion that affidavit submitted in support of application for suspect's arrest omitted exculpatory facts and contained fabricated and misleading evidence; the inculpatory facts in arrest affidavit that suspect did not dispute included wife's notes before her death indicating suspect had physically abused and stalked wife, wife's message to suspect a few days before wife disappeared stating, "I'm done," and suspect's change of work schedule on day wife disappeared. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[25]    Federal Courts**  👈

The "party presentation principle" puts the burden on the parties to frame the issues for decision and assigns to courts the role of neutral arbiter of matters the parties present.

**[26]    Federal Courts**  👈

District court's independent analysis of facts asserted in affidavit supporting arrest warrant application to determine whether affidavit, even if it included misleading statements and omitted exculpatory facts, provided probable cause for arrest and prosecution of suspect did not violate the party presentation principle, at motion-to-dismiss stage of suspect's § 1983 action for malicious prosecution under Fourth Amendment against state prosecutors and law enforcement officers following dismissal of murder prosecution of suspect, where defendants' motion to dismiss for failure to state claim raised issue of whether suspect sufficiently alleged lack of probable cause. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Civ. P. 12(b)(6).

More cases on this issue

**[27]    Federal Courts**  👈

On review of grant of motion to dismiss for failure to state a claim, Court of Appeals may affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court. Fed. R. Civ. P. 12(b)(6).

**[28]    Civil Rights**  👈

To state a due process claim based on fabrication of evidence, a plaintiff must plausibly allege (1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt. U.S. Const. Amend. 14.

**[29]    Civil Rights**  👈

To satisfy the "deprivation of liberty" element of a due process claim based on fabrication of evidence, a plaintiff must assert a causal connection between the fabrication of evidence

and the deprivation of liberty. U.S. Const. Amend. 14.

**[30]    Civil Rights** 👈

A due process fabrication-of-evidence claim requires plaintiff to plausibly plead presence of proximate cause, not absence of probable cause. U.S. Const. Amend. 14.

**[31]    Civil Rights** 👈

A due process fabrication-of-evidence claim implicates entire panoply of rights afforded to criminal defendants, and the alleged harm is wrongful initiation of prosecution. U.S. Const. Amend. 14.

**[32]    Civil Rights** 👈

The existence of probable cause does not necessarily defeat a due process fabrication-of-evidence claim. U.S. Const. Amend. 14.

**[33]    Civil Rights** 👈

Former defendant to murder prosecution, which arose from disappearance of former defendant's wife and which was dismissed by prosecution, did not sufficiently allege that evidence purportedly fabricated by prosecutors or state law enforcement officers was the cause of the prosecution, as would be required to state a due process fabrication-of-evidence claim against prosecutors and officers; former defendant made only legal assertions and conclusory allegations, including that "[a]s a proximate result of [d]efendants' unlawful conduct, [former defendant] was arrested, held in custody until he was able to bond out, and lived under bond conditions for over eleven months," and former defendant did not allege that the purportedly fabricated evidence even influenced decision to prosecute him. U.S. Const. Amend. 14.

**[34]    Civil Rights** 👈

Even if a substantive due process cause of action under § 1983 existed for reckless investigation based on pre-arrest misconduct, former defendant's allegations with regard to causation element of such a cause of action did not meet plausibility standard required to survive a motion to dismiss for failure to state a claim, in former defendant's action against state law enforcement officers after a murder prosecution against former defendant was dismissed by prosecution, where former defendant made only the unadorned allegations that asserted constitutional violation "caus[ed] him the injuries and damages set forth" in complaint and that "[a]s a proximate result of [d]efendants' unlawful conduct, [former defendant] was arrested, held in custody until he was able to bond out, and lived under bond conditions for over eleven months." U.S. Const. Amend. 14; 42 U.S.C.A. § 1983; Fed. R. Civ. P. 12(b)(6).

**[35]    Civil Rights** 👈

To establish § 1983 claim for violation of Fourteenth Amendment substantive due process rights, plaintiff must show that government actor intentionally or recklessly caused injury to plaintiff. U.S. Const. Amend. 14.

**[36]    Evidence** 👈

Court of Appeals could take judicial notice of state court indictment charging suspect with murder, which was filed during pendency of suspect's § 1983 action against state prosecutors and law enforcement officers alleging malicious prosecution and fabrication of evidence under Fourth and Fourteenth Amendments, which arose from an earlier murder prosecution against suspect regarding same victim that had been dismissed by prosecutors. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Evid. 201.

More cases on this issue

**Appeal from the United States District Court for the District of Colorado (D.C. No. 1:23-CV-01108-DDD-JPO)**

**Attorneys and Law Firms**

Submitted on the briefs: [*]

Jane Fisher-Byrialsen of Fisher & Byrialsen, P.L.L.C., Denver, Colorado, and Hollis Whitson of Samler and Whitson, PC, Denver, Colorado, for Plaintiff-Appellant.

Philip J. Weiser, Attorney General, Jennifer H. Hunt, Senior Assistant Attorney General, Dmitry B. Vilner, Senior Assistant Attorney General, Office of the Attorney General for the State of Colorado, Denver, Colorado, for Defendants-Appellees John Camper, Megan Duge, Chris Schaefer, Caitlin Rogers, Kevin Koback, Kirby Lewis, and Derek Graham.

Nicholas C. Poppe and J. Andrew Nathan of Nathan Dumm & Mayer P.C., Denver, Colorado, for Defendants-Appellees Chaffee County, Colorado; Board of County Commissioners of Chaffee County, Colorado; Chaffee County Sheriff's Department; Chaffee County Sheriff John Spezze; Chaffee County Undersheriff Andrew Rohrich; Chaffee County Sheriff's Sergeant William Plackner; and Chaffee County Sheriff's Detective Robin Burgess.

Leslie L. Schluter of Dagner|Schluter|Werber LLC, Greenwood Village, Colorado, for Defendant-Appellee Eleventh Judicial District Attorney, Linda Stanley.

William T. O'Connell III of Thompson, Coe, Cousins & Irons LLP, Denver, Colorado, for Defendants-Appellees Alex Walker and Jeffrey Lindsey.

Jonathan N. Eddy and Eric M. Ziporin of SGR, LLC, Denver, Colorado, for Defendant-Appellee Mark Hurlbert.

Rachel L. Bradley, Andrew R. McLetchie, and Eden R. Rolland of Fowler, Schimberg, Flanagan & McLetchie, P.C., Golden, Colorado, for Defendant-Appellee Scott Himschoot.

Scott A. Neckers, Robert I. Lapidow, and Sarah A. Thomas of Overturf McGath & Hull, P.C., Denver, Colorado, for Defendant-Appellee Joseph Cahill.

Before MATHESON, PHILLIPS, and ROSSMAN, Circuit Judges.

## Opinion

ROSSMAN, Circuit Judge.

**\*1** The State of Colorado charged Barry Morphew with first-degree murder in May 2021 after his wife, Suzanne Morphew, disappeared under suspicious circumstances about a year earlier. On the eve of trial, Mr. Morphew's defense team discovered prosecutors had withheld exculpatory information. The State soon dismissed all charges against Mr. Morphew without prejudice. Mr. Morphew sued the state prosecutors, law enforcement officers, and municipalities involved in his arrest and abandoned prosecution. He asserted causes of action under 42 U.S.C. § 1983 and a parallel Colorado civil rights statute, alleging the defendants fabricated evidence, conspired to violate his rights, and maliciously prosecuted him. The defendants filed several motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motions in a comprehensive written order. Mr. Morphew now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

### I

### A [1]

Suzanne Morphew disappeared on Sunday, May 10, 2020. Mr. Morphew last saw his wife sleeping in the couple's bed around 5:00 a.m. that morning, as he was getting ready to leave their Chaffee County home for a scheduled landscaping job a few hours away in Broomfield, Colorado. Their two daughters, ages sixteen and twenty, were away that day on a road trip in Utah. Around 3:00 p.m., Mr. Morphew called his neighbors and asked them to check on his wife at their home because he and his daughters could not reach her. The neighbors did not find Suzanne at home or see her mountain bike, which she rode almost daily. At 5:30 p.m., Mr. Morphew told the neighbors to call the police while he drove home from Broomfield.

Law enforcement located Suzanne's mountain bike in a ravine near the Morphew home later that same evening. When Mr. Morphew arrived on the scene, he gave law enforcement an article of Suzanne's clothing for the scent dog. The dog tracked Suzanne's scent to a river. There, the trail went cold. The ensuing weeks-long search involved law enforcement and local community volunteers but proved fruitless.

Mr. Morphew soon became the prime suspect. Investigators began to suspect he staged Suzanne's mountain bike in the ravine to make her disappearance look like an abduction. Law enforcement searched the Morphew home and the family's vehicles and seized cell phones from Mr. Morphew and his daughters. DNA samples were taken from the Morphew home, Mr. Morphew's truck, Suzanne's car, and Suzanne's mountain bike. Over the course of a year, Mr. Morphew met with investigators over sixty times. He consistently maintained his innocence.

During the investigation, law enforcement discovered Suzanne had been having an extramarital affair for about two years before she disappeared. Investigators believed Mr. Morphew killed Suzanne when he learned of the affair. They hypothesized Mr. Morphew committed the murder around 2:30 p.m. on May 9, 2020—the day before Suzanne was reported missing. Law enforcement suspected Mr. Morphew came home from work on May 9, killed Suzanne with a tranquilizer gun, disposed of her body and evidence of the crime, and then developed an alibi by traveling to the Broomfield landscaping job the next morning.

 **\*2**  In May 2021, prosecutors in Colorado's Eleventh Judicial District submitted an affidavit to a state judge to obtain an arrest warrant for Mr. Morphew. Suzanne's body had not yet been found. [2] The 129-page arrest affidavit outlined the prosecution's theory of the case and—according to Mr. Morphew—included misleading statements and omitted exculpatory facts. A state court judge issued the warrant, and law enforcement arrested Mr. Morphew for first-degree murder.

Mr. Morphew spent the next four months in the Chaffee County Detention Center. He was released on pretrial conditions in September 2021. In January 2022, after much litigation, the prosecution disclosed "thousands of pages of exculpatory material to the defense." RI.157. In April 2022, the State of Colorado voluntarily dismissed the criminal charges against Mr. Morphew without prejudice. [3]

<br>

**B**

In May 2023, Mr. Morphew sued in the United States District Court for the District of Colorado claiming he was arrested and prosecuted for first-degree murder without probable

cause. He named the following twenty-five individuals and entities involved in his state prosecution as defendants:

The Municipal Defendants

- Chaffee County

- Board of County Commissioners of Chaffee County

- Chaffee County Sheriff's Department (CCSD)

The Prosecutor Defendants

- Linda Stanley (District Attorney for the Eleventh Judicial District)

- Jeff Lindsey (Deputy District Attorney for the Eleventh Judicial District)

- Mark Hurlbert (Deputy District Attorney for the Eleventh Judicial District)

The CCSD Defendants

- Alex Walker (Criminal Investigator at the Eleventh Judicial District and, beginning in June 2021, CCSD Investigations Commander)

- John Spezze (Chaffee County Sheriff)

- Andrew Rohrich (Chaffee County Undersheriff)

- Robin Burgess (CCSD Deputy)

- Randy Carricato (CCSD Deputy)

- Scott Himschoot (CCSD Deputy)

- Claudette Hysjulien (CCSD Sergeant) • William Plackner (CCSD Sergeant)

The CBI Defendants

- John Camper (Director of the Colorado Bureau of Investigation (CBI))

- Joseph Cahill (CBI Agent)

- Megan Duge (CBI Agent)

- Caitlin Rogers (CBI Agent)

- Derek Graham (CBI Agent)

- Kevin Koback (CBI Agent)

• Kirby Lewis (Head of CBI Major Crimes Division)

• Chris Schaefer (CBI Deputy Director of Investigations)

• Jason Hebrard (CBI Agent)

The FBI Defendants

• Kenneth Harris (FBI Agent)

• Jonathan Grusing (FBI Agent) [4]

Mr. Morphew asserted claims under § 1983, *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and Colorado Revised Statute § 13-21-131 (the state analog to § 1983). As relevant to this appeal, Mr. Morphew's complaint advanced causes of action for malicious prosecution under the Fourth and Fourteenth Amendments [5]; fabrication of evidence under the Fourth and Fourteenth Amendments [6]; violation of *Franks* v. *Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) under the Fourth and Fourteenth Amendments [7]; unlawful retention of property [8]; conspiracy; failure to intervene; reckless investigation under the Fourteenth Amendment [9]; and municipal liability under *Monell* v. *Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). [10] The complaint sought $15 million in special, compensatory, and punitive damages; injunctive relief; and an order directing the defendants to release his property. Mr. Morphew attached the 129-page arrest affidavit to his complaint and repeatedly referenced it throughout his allegations.

**\*3** Pretrial proceedings ensued. Several defendants were voluntarily dismissed. [11] The remaining defendants filed motions to dismiss for failure to state a claim under Rule 12(b)(6). Mr. Morphew separately opposed each motion. The district court consolidated the motions for decision and, after a hearing, granted them in a single written order.

**C**

We now describe the district court's dismissal order in some detail. The district court began by acknowledging its obligation, under Rule 12(b)(6), to "accept all the well-pleaded allegations of the complaint as true and ... construe them in the light most favorable to the plaintiff." RIV.842

(quoting *Alvarado* v. *KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007)). In the district court's view, Mr. Morphew's allegations "if true, show an investigation and prosecution that was, in a number of senses, *wrongful*." RIV.843. But the question at the motion to dismiss stage, the district court explained, was not "whether the decision to arrest [Mr. Morphew] was wise or whether the government would have been able to prove its case to a jury beyond a reasonable doubt." RIV.845. The dispositive question was whether Mr. Morphew plausibly alleged that arresting and prosecuting him in May 2021 for Suzanne's murder "was unlawful." RIV.845–46.

The district court reviewed the complaint and arrest affidavit, itemized the exculpatory facts that Mr. Morphew claimed were wrongfully omitted, and "ignor[ed] the allegedly false information" that Mr. Morphew said was improperly included. RIV.846. The district court emphasized the "hundreds" of undisputed inculpatory facts in the arrest affidavit. RIV.847. "Accounting for the exculpatory omissions and leaving out the allegedly fabricated or misleading evidence," the district court summarized what the arrest affidavit would tell an objective observer:

• Mr. Morphew was controlling and both physically and emotionally abusive according to his wife. He was suspicious that she was cheating, at least emotionally, and they fought frequently. She didn't feel safe at home with him and tried to break up with him a few days before she disappeared.

• Mr. Morphew's behavior on the Sunday of Suzanne's disappearance was unusual. He had a job planned in Broomfield and was supposed to pick up an employee at 5:30 p.m. to drive to Broomfield and stay overnight in a hotel that he had booked over a week in advance. But he instead left his house at 5:30 a.m. and drove to Broomfield alone. This was Mother's Day, and according to Mr. Morphew's father-in-law, it was strange that he would work the Sunday of Mother's Day, as he rarely worked on Sundays. He was observed throwing trash away in a McDonald's parking lot in Broomfield around 10:00 a.m. and when questioned couldn't remember what it was, stating it was "probably old clothes" or an old pair of boots. He tried to call and text his wife several times throughout this day.

**\*4** • Mr. Morphew was the last person to see Suzanne alive. By his own admission, he was alone with her from the afternoon of May 9 until the morning of May

10, when she disappeared, and he would have had time to murder her and dispose of the evidence. Suzanne's computer and phone exhibited activity late into the evening of May 9, however, indicating she may still have been alive at that time.

• Mr. Morphew's memory regarding the events leading up to Suzanne's disappearance is fuzzy, and he gave conflicting statements about those events, including about whether they went on a hike together the day before her disappearance. He had scratches on his arm after she disappeared.

• Mr. Morphew suggested that saying "I don't recall" is code for not wanting to tell the truth, but himself stated that he didn't recall a number of key events leading to his wife's disappearance.

• Mr. Morphew has previously bought and used tranquilizer chemicals in darts that he filled himself. He had a tranquilizer gun, but it was not operable and hadn't been used recently. He gave conflicting statements about whether he had used the tranquilizer darts in Colorado. An expert was surprised that a civilian would have those tranquilizer chemicals.

• Mr. Morphew started liquidating assets and seeing another woman shortly after Suzanne disappeared, long before her body was found.

• Suzanne's mountain bike was found in a ravine near their home, and dogs detected her scent in that area. Unknown male DNA was found on the bike, on the carpet by their bed and on a stair in their house, and in her car. The DNA from her car potentially matched that from unsolved sexual assault investigations.

• Cadaver dogs did not alert to Mr. Morphew's truck, and GPS data indicated that his Bobcat skid steer had not been moved since before Suzanne's disappearance.

• Mr. Morphew is a skilled hunter and a landscaper and may have had the tools and expertise to kill his wife, bury her body, and destroy the evidence.

RIV.849–50. After examining "the full picture" alleged in the complaint, the district court could not conclude the "uncertainties raised by the omitted and misrepresented evidence erased any substantial probability that [Mr. Morphew] was involved" in the charged offenses. *See* RIV.848, 850–51 (explaining the arrest affidavit marshalled

sufficient evidence that Mr. Morphew had a "motive, means, and opportunity to kill his wife; that his alibi was fabricated (as it was uncorroborated and supported only by his own self-serving statements); and that his credibility was dubious (given his conflicting statements to investigators)").

The district court determined Mr. Morphew's complaint "suffer[ed] from one or more legal deficiencies." RIV.843. The "[c]hief" deficiency identified was Mr. Morphew's failure to plausibly allege a lack of probable cause for his arrest and prosecution. RIV.843. The district court therefore dismissed Mr. Morphew's § 1983 claims for malicious prosecution, fabrication of evidence, [12] *Franks* violations, conspiracy, failure to intervene, and *Monell* liability under Rule 12(b)(6) "on the basis of the existence of probable cause." RIV.852. It also dismissed Mr. Morphew's reckless investigation claim but for a different reason. Noting "the absence of any binding Supreme Court or Tenth Circuit precedent on point," the district court was "persuaded by the majority of other courts that have held there is no such cause of action." RIV.844 n.6.

**\*5** The district court identified other pleading deficiencies, too. Regarding Mr. Morphew's claims for malicious prosecution, fabrication of evidence, and *Franks* violations against the non-prosecutorial defendants, the district court determined Mr. Morphew's "allegations are insufficiently specific as to the role each [defendant] played in causing his arrest" and "failed to directly link these defendants to his alleged injury[.]" RIV.852. The district court similarly concluded Mr. Morphew's conspiracy, unlawful retention of property, [13] and *Monell* claims were supported only by conclusory allegations.

The district court also endorsed certain immunity defenses. All defendants were granted qualified immunity with respect to Mr. Morphew's failure-to-intervene claim. Mr. Walker—the criminal investigator at the Eleventh Judicial District—was shielded by qualified immunity for Mr. Morphew's claims for fabrication of evidence and *Franks* violations. And prosecutorial immunity applied to every claim against the state prosecutors.

Having dismissed all federal claims, the district court declined to exercise pendent jurisdiction over the remaining state claims. It then entered final judgment dismissing Mr. Morphew's lawsuit without prejudice. *See* Fed. R. Civ. P. 58(a). This timely appeal followed.

## II

 **[1]  [2]  [3]** Mr. Morphew challenges the dismissal of his complaint for failure to state a claim under Rule 12(b)(6). "In reviewing an order granting a motion to dismiss, our role is like the district court's: we accept the well-pleaded facts alleged as true and view them in the light most favorable to the plaintiff[.]" *Clinton* v. *Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023). "A plaintiff who fails to plead a plausible claim is subject to dismissal." *Cuervo* v. *Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024); *accord Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "To satisfy the plausibility standard, the complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matney* v. *Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023) (internal quotation marks omitted).

 **[4]  [5]  [6]  [7]** "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC* v. *Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). But we do not "accept '[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements[.]' " *Clinton*, 63 F.4th at 1275 (alterations in original) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)); *see also Brooks* v. *Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."). Nor do we accept "allegations plainly contradicted by properly considered documents or exhibits[.]" *Clinton*, 63 F.4th at 1275. Thus, "[i]n considering whether the complaint's allegations are sufficient, [we] ... eliminate[ ] conclusory allegations, mere 'labels and conclusions,' and any 'formulaic recitation of the elements of a cause of action.' " *Bledsoe* v. *Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

 **[8]  [9]** "[I]n assessing whether a plaintiff has stated a claim for relief, a court must restrict its review to only the 'allegations within the four corners of the complaint,' and cannot consider other pleadings or external allegations." *Brown* v. *City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Waller* v. *City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019)). That is, the sufficiency of a complaint must generally "rest on its contents alone." *Gee*

v. *Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). But there are exceptions to this rule. These "[e]xceptions ... are limited to: (1) documents attached to the complaint as exhibits, (2) documents referenced in the complaint that are central to the plaintiff's claims, provided their authenticity is undisputed, and (3) matters subject to judicial notice." *Brown,* 124 F.4th at 1264. Here, Mr. Morphew attached the arrest affidavit to his complaint and referenced it throughout his allegations. No party challenged the authenticity of the affidavit or the district court's authority to consider it. We likewise consider the affidavit in reviewing the dismissal order and assessing the sufficiency of Mr. Morphew's complaint.

## III

 ***6** Mr. Morphew advances several arguments to support reversal, but there is a dispositive pleading problem that compels affirmance on most of his claims. The complaint fails to plausibly allege Mr. Morphew was arrested and prosecuted without probable cause. Mr. Morphew does not meaningfully disagree that, as a matter of law, plausibly pleading the absence of probable cause is essential to his causes of action for malicious prosecution, *Franks* violations, conspiracy, failure to intervene, and *Monell* liability.[14] He instead insists the arrest affidavit—once "corrected" to account for his allegations about fabricated evidence, false statements, and exculpatory omissions—was not, in fact, supported by probable cause, which means his complaint should withstand dismissal under Rule 12(b)(6). Op. Br. at 17–18 (bolding omitted). As to his fabrication of evidence claim, Mr. Morphew argues the presence of probable cause "is not fatal to" this claim. Op. Br. at 12.

We are not persuaded. We first show each of Mr. Morphew's § 1983 claims—save his Fourteenth Amendment claims for fabrication of evidence and reckless investigation—depend on plausible allegations that he was arrested and prosecuted for Suzanne's murder without probable cause. Then, applying the relevant standards of review, we explain why the district court correctly concluded Mr. Morphew's complaint fails to plausibly allege the defendants lacked probable cause. We separately address Mr. Morphew's Fourteenth Amendment fabrication of evidence claim, which does not turn on pleading a lack of probable cause. Still, that claim must be dismissed on a related, albeit distinct, ground: Mr. Morphew has not plausibly alleged a causal connection between the fabricated evidence and his arrest and prosecution. Mr. Morphew's Fourteenth Amendment reckless investigation claim also

requires sufficient allegations of causation that are absent here.

**A**

Mr. Morphew's claims for malicious prosecution, Fourth Amendment fabrication of evidence, *Franks* violations, reckless investigation, conspiracy, failure to intervene, and *Monell* liability all depend on sufficient allegations that he was arrested and prosecuted without probable cause. As the defendants persuasively put it, these claims are viable only if Mr. Morphew plausibly pleads the "alleged misconduct was material to a violation of [his] rights, such that there would have been no probable cause to arrest him without that misconduct." Resp. Br. at 22. This is not to say lack of probable cause is an *element* of each claim. Rather, it is essential to those claims under Mr. Morphew's theory of the case as alleged in his complaint. We consider each claim in turn.

[10]    [11]    [12] *Malicious prosecution (Fourth Amendment).*[15] Mr. Morphew claims the defendants maliciously prosecuted him when they "fabricated evidence and manufactured inculpatory evidence," "manipulated witness testimony," "suppressed exculpatory evidence," "omitted exculpatory evidence and lied in the [a]rrest [a]ffidavit," and "falsified charges in order to arrest and prosecute [him] without probable cause[.]" RI.166–67; *see also* RI.167 (alleging the defendants "accused [Mr.] Morphew of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against him without any probable cause for doing so[.]"). "To state a § 1983 claim for malicious prosecution, a plaintiff must show, among other things, that the original action terminated in favor of the plaintiff, and that no probable cause supported the original arrest, continued confinement, or prosecution." *Fenn* v. *City of Truth or Consequences*, 983 F.3d 1143, 1149–50 (10th Cir. 2020). The absence of probable cause is an element of a claim for malicious prosecution. *See Pierce* v. *Gilchrist*, 359 F.3d 1279, 1294 (10th Cir. 2004) ("The third element in the tort of malicious prosecution is that there was no probable cause to support the original arrest, continued confinement, or prosecution.").

*7 [13]    [14]    [15] *Fabrication of evidence (Fourth Amendment).* Mr. Morphew alleges the defendants "fabricated evidence and solicited false testimony," and then "obtained [his] prosecution and incarceration using that false evidence[.]" RI.170. "Evidence fabrication could, of course, violate [Mr. Morphew]'s Fourth Amendment rights." *Warnick* v. *Cooley*, 895 F.3d 746, 752 (10th Cir. 2018). The Fourth Amendment prohibits pretrial detention of a defendant when there is no "probable cause to believe he committed a crime." *Manuel* v. *City of Joliet*, 580 U.S. 357, 368–69, 137 S.Ct. 911, 197 L.Ed.2d 312 (2017). So, "[w]hen the police's fabrication of evidence results in a person being charged with a crime, that person's Fourth Amendment claims will be defeated if there was independent probable cause for the deprivation of liberty." *Barnes* v. *City of New York*, 68 F.4th 123, 132 (2d Cir. 2023) (emphasis omitted); *see also Spencer* v. *Peters*, 857 F.3d 789, 802 (9th Cir. 2017) ("Probable cause definitively resolves a Fourth Amendment claim for including false information in a warrant affidavit[.]"). Applying this principle here, Mr. Morphew's Fourth Amendment fabrication of evidence claim fails unless he plausibly alleges, without the fabricated evidence, the defendants lacked probable cause to arrest and prosecute him.

[16]    [17] *Franks violations (Fourth Amendment).*[16] Mr. Morphew claims the defendants "knowingly and intentionally, or with reckless disregard for the truth, caus[ed] false statements to be included in the [a]rrest [a]ffidavit and caus[ed] exculpatory facts to be omitted; and, had they not done [so], probable cause would have been vitiated or diluted." RI.172. "In *Franks*, the Supreme Court held that affiants seeking arrest warrants violate the constitution when they knowingly, or with reckless disregard for the truth, include false statements in a supporting affidavit or omit information which, if included, would prevent the warrant from lawfully issuing." *Kapinski* v. *City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020); *see Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674 (holding "the Fourth Amendment requires that a hearing be held" when the defendant shows "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit" and the statement "is necessary to the finding of probable cause"). A constitutional violation "occurs if (1) an officer's affidavit supporting [an arrest] warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued." *United States* v. *Herrera*, 782 F.3d 571, 573 (10th Cir. 2015). To allege a *Franks* violation, Mr. Morphew must plausibly claim the defendants' false statements and exculpatory omissions were material. That is, he must plausibly allege the arrest affidavit, once stripped of the defendants' misstatements and supplied with the omitted exculpatory facts, did not support probable cause.

 **[18]** *Conspiracy*. Mr. Morphew alleges the defendants "conspired among and between themselves and took overt acts in furtherance of a conspiracy to deprive [him] of his due process rights and his right to be free from seizure, incarceration, deprivation of property and restrictions on liberty[.]" RI.174. He further asserts they conspired to "fabricate evidence against him, to manipulate witness testimony, to suppress, [to] conceal and omit exculpatory evidence, to falsify charges, ... to conceal the knowing and reckless misconduct[,] and to protect one another from liability[.]" RI.174. "[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Dixon* v. *City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990); *see also Snell* v. *Tunnell*, 920 F.2d 673, 701–02 (10th Cir. 1990) ("[A] deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim[.]"). Mr. Morphew's conspiracy claim is derivative in that its viability depends on the underlying constitutional violation. *See, e.g.*, *Hinkle* v. *Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1231 (10th Cir. 2020) (holding district court properly dismissed conspiracy claim premised on false arrest allegations because plaintiff failed to show a false arrest). To the extent the underlying constitutional violations here depend on the defendants lacking probable cause, Mr. Morphew's conspiracy claim rises or falls based on the sufficiency of those allegations.

 **\*8**  **[19]** *Failure to intervene*. Mr. Morphew alleges that "[d]uring the constitutional violations described [in his complaint], all [d]efendants stood by without intervening to prevent the violation of [his] constitutional rights[.]" RI.178. To state a claim for failure to intervene, a plaintiff must allege (1) "a government officer violated his constitutional rights"; (2) "a different government actor (the defendant) observed or had reasons to know about that constitutional violation"; and (3) "the defendant had a realistic opportunity to intervene, but failed to do so." *Bledsoe*, 53 F.4th at 616. A claim for failure to intervene depends on a predicate constitutional violation. *See Jones* v. *Norton*, 809 F.3d 564, 576 (10th Cir. 2015) ("[I]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation[.]" (second alteration in original) (quoting *Harper* v. *Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005))). Again, to the extent the underlying constitutional violations here require Mr. Morphew to plausibly allege the defendants arrested and prosecuted him without probable cause, the plausibility of

those allegations governs whether his failure to intervene claim withstands Rule 12(b)(6) scrutiny.

 **[20]**  **[21]** *Monell*. Mr. Morphew claims the defendants "failed to ensure through custom, policy, practice, training, and supervision that officers ... would ... not fabricate inculpatory evidence; ensure that suspects would not be maliciously prosecuted; [and] ensure that applications for arrest warrants would not contain false and misleading information and/or omit exculpatory information[.]" RI.182–83. Mr. Morphew similarly accuses the defendants of maintaining a policy or custom of "regularly fail[ing] to disclose exculpatory evidence to prosecutors, fabricat[ing] false evidence ..., [and] pursu[ing] wrongful prosecutions through profoundly flawed investigations[.]" RI.184. "To state a claim against a municipal entity, a plaintiff must allege facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas* v. *Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023). Once again, there can be no municipal liability—and thus no *Monell* claim—without an underlying constitutional violation. *See Collins* v. *City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (a claim for municipal liability cannot survive unless the "plaintiff's harm was caused by a constitutional violation"); *Monell*, 436 U.S. at 691, 98 S.Ct. 2018 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *see also, e.g.*, *Hinkle*, 962 F.3d at 1226 (concluding plaintiff's *Monell* claim based on municipality's alleged "policy sanctioning unlawful warrantless arrests" failed because plaintiff "was arrested with probable cause").

### B

Reviewing *de novo*, we agree with the district court that the complaint does not plausibly allege the absence of probable cause.

 **[22]** Probable cause "is not a high bar." *Kaley* v. *United States*, 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d 46 (2014). We have understood probable cause as "something more than a bare suspicion but less than a preponderance of the evidence at hand." *United States* v. *Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022) (internal quotation marks omitted). It requires "a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford* v. *Lasater*, 78 F.3d 484, 489 (10th Cir.

1996). To survive dismissal, Mr. Morphew must "allege[ ] ... specific facts showing there was a lack of probable cause for his arrest and prosecution on the charges of first degree murder." *Erikson* v. *Pawnee Cnty. Bd. of Cnty. Comm'rs,* 263 F.3d 1151, 1154 (10th Cir. 2001) (explaining conclusory allegations are "insufficient to survive defendants' motions to dismiss"); *see Brown* v. *City of Albion,* 136 F.4th 331, 342 (6th Cir. 2025) (to allege the absence of probable cause, plaintiff was required to "plead allegations plausibly suggesting that the [d]efendants did not have sufficient evidence ... to raise a substantial chance of criminal activity.").

**\*9**  We discern no error in the district court's conclusion that Mr. Morphew's allegations do not plausibly state a lack of probable cause. The district court discussed at length the compelling nature of the information the defendants omitted from the arrest affidavit. Notably, the dismissal order is replete with observations about alleged misconduct by the defendants and the mishandling of the state criminal investigation. Still, as the district court correctly observed, "the *legal* ... standard for an arrest does not require the same level of certainty as that for a conviction." RIV.848. Here, the district court emphasized the many inculpatory facts in the arrest affidavit that Mr. Morphew did not dispute. RIV.847.

- [Mr. Morphew's daughter]'s admission that her parents argued a lot and that she feared they would separate or divorce.

- Suzanne's sister, Melinda Baumunk, described Mr. Morphew as one who lives a double life, is a liar, is an adulterer, and is a bully; one who has to have control, is cunning, fools people a lot, and treats his wife and daughters as trophies.

- Suzanne texted the following to her sister two days before she disappeared: "Its hard dealing with the harsh abrasiveness and having to show respect. He's also been abusive, emotionally and physically. There's so much ... I went thru a period of acceptance and I feel more angry now. Anger at what I've allowed."

- Suzanne kept a list of grievances about her husband on the notes application on her phone, which included "Phys abuse," "Stalking Sheila and me in house without telling," "Chase me around resort and threatened," "Took phone," "Not safe alone with you. Can't be trusted," "Oppressive," and "Accused me of bf."

- Suzanne texted Mr. Morphew a few days before she disappeared: "I'm done. I could care less what you're up

to and have been for years. We just need to figure this out civilly."

- Mr. Morphew declined to submit to a polygraph examination regarding his memory of the events leading up to Suzanne's disappearance and his alibi.

- Investigators observed scratches on Mr. Morphew's upper left arm three days after Suzanne disappeared.

- Mr. Morphew thought it was "very suspicious" that Suzanne would not tell him about some of her communications, even if he did not know she was involved in a sexual relationship with another man.

- Mr. Morphew's conflicting statements about whether he went on a hike to Fooses Lake with Suzanne the day before her disappearance.

- Mr. Morphew's conflicting statements about whether he used his tranquilizer or darts in Colorado, including his admissions that "I've shot two deer with my tranq gun, 'cause I used to raise deer, and I collect horns" and that "I've shot deer from that little breezeway from between the garage and the laundry room."

- Mr. Morphew's admission that he used BAM, Telazol, and Xylazine as tranquilizers and that he brought these chemicals, which he knew to be controlled substances, from Indiana.

- Retired Colorado Parks & Wildlife Field Veterinarian Lisa Wolfe's surprise that a civilian would have these animal tranquilizers.

- Mr. Morphew's admission that he kept the tranquilizer chemicals in vials and injected them into darts himself.

- Suzanne's "spy pen" recorded Mr. Morphew listening to several episodes of "Forensic Files"—including three episodes about murders—during a drive to Pueblo less than two months before she disappeared.

- Mr. Morphew was originally scheduled to pick up an employee to drive to Broomfield for a landscaping job around 5:30 p.m. on the day Suzanne disappeared but instead left at 5:00 a.m., twelve hours earlier than planned.

- Mr. Morphew was seen "carrying unknown items in his hands and placing items into two separate trash cans located on the edge of the McDonald's lot between 10:19

AM and 10:41 AM" on May 10, 2020, roughly six hours after Suzanne was last seen alive.

**\*10**  • Mr. Morphew was the last person to see Suzanne alive.

• Mr. Morphew could not recall the items that were in the trash bags, stating that they were "probably old clothes" or boots.

• Mr. Morphew suggested saying "I don't recall" was code for not wanting to tell the truth, but he didn't recall a number of critical facts surrounding Suzanne's disappearance.

• Mr. Morphew began to liquidate the family's assets within a month of Suzanne's disappearance.

• Mr. Morphew was an avid hunter and a professional landscaper and may have possessed the tools and expertise necessary to kill Suzanne, bury her body, and dispose of the evidence.

• Mr. Morphew became intimately involved in a relationship with another woman in the months immediately following Suzanne's disappearance (before her body had been discovered).

• Suzanne's father felt it was odd that neither of his granddaughters nor Mr. Morphew were home on Mother's Day, when Suzanne disappeared, and that it was unusual for Mr. Morphew to work on Mother's Day Sunday when he seldom worked on Sundays.

RIV.836–39 (record citations omitted). Considered against these uncontested facts, Mr. Morphew's allegations, taken as true and viewed in the light most favorable to him, do not plausibly allege a lack of probable cause for his arrest and prosecution.

Mr. Morphew resists this conclusion, making several unavailing arguments. He insists the district court failed to adhere to the applicable standards at the Rule 12(b)(6) stage when reviewing his complaint. In Mr. Morphew's view, the district court improperly "decided witness credibility[,]" "placed too heavy a burden on [him] at the pleading stage[,]" "fail[ed] to give [him] the benefit of all plausible inferences" from his well-pleaded allegations, and "fail[ed] to credit allegations that contradicted" probable cause. Op. Br. at 13–14, 17. As discussed, the district court's thorough accounting belies Mr. Morphew's assertions on appeal.

Mr. Morphew also briefly challenges "the court's broad sweep of all claims into the probable-cause basket." Op. Br. at 12. He does not develop this argument. In any event, we cannot agree with his assertion. Probable cause can serve as "common ground" and "the easiest and most economical way" to address multiple claims at various stages of litigation. *See, e.g.*, *Bledsoe*, 53 F.4th at 606, 614–15 (at motion to dismiss stage, holding allegations "d[id] not establish the existence of arguable probable cause [needed for malicious prosecution claim] when considered with the suppressed exculpatory evidence and without the fabricated evidence of [the plaintiff]'s guilt"); *Brown*, 136 F.4th at 338, 342 (at motion to dismiss stage, holding all of plaintiff's claims "require[d] her to allege an absence of probable cause"); *see also* *Kerns* v. *Bader*, 663 F.3d 1173, 1180, 1187 (10th Cir. 2011) (at summary judgment stage, resolving the plaintiff's claims for false arrest, false imprisonment, and malicious prosecution on the absence of probable cause even though the claims required proof of "a variety of different elements").

**\*11** **[23]** **[24]** Relatedly, Mr. Morphew argues probable cause presents "a jury issue in this case." Op. Br. at 15 (bolding omitted). To be sure, and as the district court acknowledged, probable cause may be "a 'proper issue for the jury if there is room for a difference of opinion.' " RIV.847 (quoting *Bruner* v. *Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007)); *see Brown*, 136 F.4th at 343 (recognizing that whether probable cause exists may be a jury question when "the defendants' theory of probable cause involves material factual disputes," but stating "dismissal is appropriate" if "the plaintiff's allegations fail to plausibly suggest the absence of probable cause"). Here, based on its review of the complaint and the affidavit, the district court determined there was "no room for debate that the relatively low bar of probable cause was met." RIV.850; *see also* RIV.848 (reasoning "[t]he evidence, even as presented by [Mr. Morphew]'s complaint, still supports only one conclusion: that there was ... probable cause"). We discern no error in the district court's reasoning or conclusion. [17]

**[25]** **[26]** Finally, Mr. Morphew argues the district court failed to abide by party presentation because it "picked through the [arrest] [a]ffidavit and came up with [its] own list of purported probable cause [facts]." Op. Br. at 26. The party presentation principle "puts the burden on 'the parties to frame the issues for decision and assign[s] to courts the role of neutral arbiter of matters the parties present.' " *Markley* v. *U.S. Bank Nat'l Ass'n*, 142 F.4th 732, 742 (10th Cir.

2025) (alteration in original) (quoting *State* v. *U.S. EPA*, 989 F.3d 874, 885 (10th Cir. 2021)). The district court did not violate this rule. The defendants raised the issue of whether Mr. Morphew sufficiently alleged lack of probable cause. The governing legal standard obligated the district court to determine whether the modified affidavit provided probable cause. *See United States* v. *Perez*, 127 F.4th 146, 166 (10th Cir. 2025) ("When an issue ... is properly before the court, the court ... retains the independent power to identify and apply the proper construction of governing law.").

We therefore agree with the district court that the "chief" deficiency in Mr. Morphew's complaint is the failure to plausibly allege the absence of probable cause for his arrest and prosecution. On that basis, we affirm the dismissal of Mr. Morphew's claims for malicious prosecution, Fourth Amendment fabrication of evidence, *Franks* violations, conspiracy, failure to intervene, and *Monell* liability.

### C

 **[27]**   We now turn to Mr. Morphew's Fourteenth Amendment claims for fabrication of evidence and reckless investigation. These claims were also properly dismissed.[18]

### 1

 **[28]**    **[29]**    **[30]**    **[31]**    **[32]**  To state a Fourteenth Amendment claim based on fabrication of evidence, a plaintiff must plausibly allege "(1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt." *Truman* v. *Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021) (footnotes omitted). To satisfy the third element, a plaintiff must "assert a causal connection between the fabrication of evidence and the deprivation of liberty." *Id.*; *see also Warnick*, 895 F.3d at 753 ("We are 'aware of no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution.' " (alteration omitted) (quoting *Buckley* v. *Fitzsimmons*, 509 U.S. 259, 281, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (Scalia, J., concurring))); *see generally Martinez* v. *Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (recognizing,

in the § 1983 context, "Defendants are liable for the harm proximately caused by their conduct."). A Fourteenth Amendment fabrication of evidence claim thus requires a plaintiff to plausibly plead the presence of proximate cause, not the absence of probable cause.[19] For Mr. Morphew's Fourth Amendment claims, we do not consider the alleged fabricated evidence to decide whether he alleged a lack of probable cause. But for his Fourteenth Amendment claim, we do consider the alleged fabricated evidence and decide whether, but for that evidence, defendants would not have arrested and charged him.

 **\*12**  **[33]**   To satisfy the causation requirement in this case, Mr. Morphew had to plausibly allege the fabricated evidence caused his prosecution. We cannot say he has done so. Most of Mr. Morphew's allegations on this front are legal assertions. For example, the complaint asserts, "As a proximate result of Defendants' unlawful conduct, Barry Morphew was arrested, held in custody until he was able to bond out, and lived under bond conditions for over eleven months[.]" RI.171; *see also* RI.170 ("Defendants' misconduct resulted directly in the unjust criminal detention and prosecution of Barry Morphew[.]"). Conclusory allegations like these "are not entitled to the assumption of truth[.]" *Khalik* v. *United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012); *see also Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (stating a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " (alteration in original) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955)).

Beyond that, Mr. Morphew alleges the "[d]efendants fabricated evidence and solicited false testimony implicating [him] in the crime that they knew was false[,]" "obtained [his] prosecution and incarceration using that false evidence[,]" and "failed to correct fabricated evidence that they knew to be false when it was used against [him] to effectuate his arrest, detention, and prosecution." RI.170; *see also* RI.147 (alleging the defendants "conspired ... to manufacture probable cause that [Mr. Morphew] had committed murder and ... conspired to fabricate evidence"). These factual allegations might be consistent with liability, but without more, are not enough to state a claim "plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. Importantly, Mr. Morphew does not claim the defendants would have declined to charge and prosecute him for Suzanne's murder without the fabricated evidence. He fails to allege the fabricated evidence even influenced the defendants' decision to prosecute him. Particularly when viewed together with the abundance of uncontested inculpatory facts in the arrest affidavit, Mr. Morphew does

not plausibly plead the requisite "causal connection between the fabrication of evidence and the deprivation of liberty." *Truman*, 1 F.4th at 1236.

We thus affirm the dismissal of Mr. Morphew's Fourteenth Amendment claim for fabrication of evidence. His conspiracy, failure to intervene, and *Monell* claims—to the extent they are premised on this alleged due process violation —likewise must be dismissed under Rule 12(b)(6).

**2**

Mr. Morphew frames his purported reckless investigation claim as a violation of his substantive due process rights under the Fourteenth Amendment.[20] We have recognized an "unreasonable *post-arrest* investigation" can violate substantive due process. *Romero* v. *Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995) (emphasis added); *but see Barham* v. *Town of Greybull*, 483 F. App'x 506, 509 (10th Cir. 2012) (suggesting it is unclear whether "individuals have a constitutional right to a reasonable post-arrest investigation."). But Mr. Morphew's allegations target the defendants' efforts to manufacture probable cause before his arrest; he does not allege a deficient or "unreasonable" post-arrest investigation. As the district court correctly noted, our circuit has not recognized a § 1983 reckless investigation claim based on pre-arrest misconduct. And in an unprecedential decision, we have observed "serious reason to doubt the existence of" such a cause of action. *See Parker* v. *City of Tulsa*, 745 F. App'x 79, 81 n.1 (10th Cir. 2018) (noting "the Eighth Circuit stands alone in recognizing [this claim]" and "[s]everal district courts have also ruled there is no such substantive due process claim.").

 **\*13** **[34]** **[35]** Assuming (without deciding) such a cause of action exists, Mr. Morphew has not plausibly stated it. "Our cases recognize a § 1983 claim for a violation of Fourteenth Amendment substantive due process rights in the narrowest of circumstances." *Becker* v. *Kroll*, 494 F.3d 904, 922 (10th Cir. 2007). As relevant here, a plaintiff must "show that the government actor intentionally or recklessly *caused injury* to the plaintiff[.]" *Tonkovich* v. *Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (emphasis added) (quoting *Uhlrig* v. *Harder*, 64 F.3d 567, 574 (10th Cir. 1995)).

Mr. Morphew claims the defendants "conducted a reckless investigation" by "disregard[ing], conceal[ing], and withh[o]ld[ing] evidence indicating that [he] was innocent and evidence pointing to other leads or suspects[.]"

RI.180. He further alleges the defendants "knowingly ... and with reckless disregard for [his] innocence and constitutional rights" fabricated evidence, coerced false and misleading statements, made false statements, and suppressed exculpatory evidence. RI.180. According to the complaint, the defendants' "fraudulent, outrageous, and egregious acts robbed [Mr. Morphew] of fundamental fairness in the investigation, prosecution, and pretrial proceedings to a degree that shocks the conscience[.]" RI.180–81. Mr. Morphew's complaint has not plausibly alleged facts from which we can infer the defendants' purported reckless investigation caused him injury. Mr. Morphew asserts the defendants' alleged misconduct "violat[ed] [his] clearly-established constitutional right to substantive due process of law as guaranteed by the Fourteenth Amendment and caus[ed] him the injuries and damages set forth" in his complaint. RI.180–81; *see also* RI.181 (asserting "[a]s a proximate result of Defendants' unlawful conduct, Mr. Morphew was arrested, held in custody until he was able to bond out, and lived under bond conditions for over eleven months[.]"). Such "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not meet the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

In sum, even assuming we would recognize a substantive due process claim for reckless investigation, Mr. Morphew's complaint fails to plausibly allege one. His derivative claims for conspiracy, failure to intervene, and *Monell* liability fail to the extent they are premised on this alleged constitutional violation.

\*\*\*

We discern no error in the district court's dismissal of Mr. Morphew's § 1983 claims. Given this conclusion, we need not revisit the district court's decision to decline pendent jurisdiction over his state law claims.[21] *See United States* v. *Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) ("[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.").

**IV**

 **\*14** **[36]** We **AFFIRM** the district court's judgment dismissing Mr. Morphew's complaint.[22]

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 16

Morphew v. Chaffee County, Colorado, --- F.4th ---- (2026)

Case 2:25-cv-00963-HCN-JCB   Document 57   Filed 04/15/26   PageID.602   Page 20 of 22

**All Citations**

--- F.4th ----, 2026 WL 925539

---

## Footnotes

\*      After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

1       We draw from the district court's recitation of the relevant background because it succinctly summarizes the well-pleaded factual allegations in Mr. Morphew's 185-page complaint.

2       Suzanne's remains were discovered in September 2023.

3       In June 2025, while this appeal was pending, a Colorado grand jury re-indicted Mr. Morphew on first-degree murder charges. The renewed criminal prosecution does not bear on our disposition of this appeal.

4       Mr. Morphew's complaint also named as defendants "John/Jane Does 1-10, and other unknown employees of the Eleventh Judicial District Attorney, and other unknown officers of the Chaffee County Sheriff's Department." RI.25. The district court dismissed any claims against the Doe defendants, and Mr. Morphew does not challenge that ruling on appeal. *See Krastev* v. *INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

5       Mr. Morphew brought this claim only against the CCSD Defendants; Prosecutor Defendants; FBI Defendants; and CBI Agents Joseph Cahill, Megan Duge, Caitlin Rogers, Derek Graham, Kevin Koback, and Kirby Lewis.

6       Mr. Morphew brought this claim only against the Prosecutor Defendants; FBI Defendants; Eleventh Judicial District Criminal Investigator Alex Walker; CBI Agents Joseph Cahill and Derek Graham; and Chaffee County Undersheriff Andrew Rohrich.

7       Mr. Morphew brought this claim only against Eleventh Judicial District Criminal Investigator Alex Walker; District Attorney Linda Stanley; Deputy District Attorney Jeff Lindsey; CBI Agents Joseph Cahill and Derek Graham; the FBI Defendants; Chaffee County Sheriff John Spezze; and Chaffee County Undersheriff Andrew Rohrich.

8       Mr. Morphew brought this claim against Chaffee County Sheriff John Spezze; District Attorney Linda Stanley; Deputy District Attorney Mark Hurlbert; and the CCSD.

9       Mr. Morphew brought this claim only against the CCSD; CCSD Defendants; FBI Defendants; Prosecutor Defendants; and CBI Agents Joseph Cahill, Megan Duge, Caitlin Rogers, Derek Graham, and Kevin Koback.

10      Mr. Morphew brought this claim only against the Municipal Defendants; District Attorney Linda Stanley; and Chaffee County Sherriff John Spezze.

11      The district court granted Mr. Morphew's unopposed motion to dismiss CCSD Deputy Randy Carricato, Deputy Robin Burgess, and Sergeant William Plackner without prejudice. *Morphew* v. *Chaffee Cnty.*, No. 1:23-cv-01108- DDD-JPO (D. Colo. Oct. 25, 2023), Dkt. No. 103. Later, Mr. Morphew stipulated to the dismissal of all claims against FBI Agents Jonathan Grusing and Kenneth Harris with prejudice. *Morphew* v. *Chaffee Cnty.*, No. 1:23-cv-01108-DDD-JPO (D. Colo. Mar. 27, 2024), Dkt. Nos. 125–26. Mr. Morphew's

appeal therefore does not implicate his *Bivens* claims against the federal defendants, and we do not discuss those claims in further detail. Mr. Morphew also stipulated to the dismissal of all claims against CCSD Sergeant Claudette Hysjulien. *Morphew* v. *Chaffee Cnty.*, No. 1:23-cv-01108-DDD-JPO (D. Colo. Mar. 29 & Apr. 17, 2024), Dkt. Nos. 128, 148.

The district court did not distinguish between Mr. Morphew's Fourth and Fourteenth Amendment fabrication of evidence claims. We will address these claims separately.

Mr. Morphew does not appeal the district court's dismissal of his claim for unlawful retention of property.

Any contrary argument is waived. *See Nelson* v. *City of Albuquerque*, 921 F.3d 925, 931 (10th Cir. 2019) (appellant waived argument "by failing to adequately develop it").

"We have repeatedly recognized in this circuit that, at least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be the 'Fourth Amendment's right to be free from unreasonable seizures.' " *Becker* v. *Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) (quoting *Taylor* v. *Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996)). Mr. Morphew brings his malicious prosecution claim under "the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment." RI.167. Although a plaintiff may have a Fourteenth Amendment procedural due process claim "analogous to a tort claim for malicious prosecution" if he "has been imprisoned pursuant to legal but wrongful process," *Mondragon* v. *Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008), this is so only when an adequate state remedy does not exist, *Myers* v. *Koopman*, 738 F.3d 1190, 1194 n.3 (10th Cir. 2013). We have determined that Colorado law provides an adequate remedy in this context. *Id.* at 1193. Mr. Morphew's malicious prosecution claim thus fails to the extent it is premised on the Fourteenth Amendment.

Mr. Morphew's complaint frames his *Franks* claim under the Fourth Amendment but also includes a conclusory invocation of the Fourteenth Amendment. Nowhere in his complaint does Mr. Morphew delineate or develop a distinct substantive due process theory. A "complaint cannot rely on labels and conclusory allegations[.]" *McNellis* v. *Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1131 (10th Cir. 2024) (quoting *Greer* v. *Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023)). Thus, to the extent Mr. Morphew bases his *Franks* claim on the Fourteenth Amendment, his allegations fail "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

Mr. Morphew objects to the district court's reliance on *Bruner* because probable cause in that case was "decided only after discovery was complete." Op. Br. at 16–17. True, *Bruner* resolved the probable cause issue on summary judgment. 506 F.3d 1021, 1025, 1027 (10th Cir. 2007). But the procedural stage is not always a dispositive distinction, and Mr. Morphew has offered no reason to think it might be under the circumstances before us.

Although the district court dismissed these claims on different grounds, "[w]e may 'affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.' " *Dummar* v. *Lummis*, 543 F.3d 614, 618 (10th Cir. 2008) (citation omitted); *see also, e.g.*, *GF Gaming Corp.* v. *City of Black Hawk*, 405 F.3d 876, 882 (10th Cir. 2005) ("For somewhat different reasons than those relied on by the district court, this court also concludes that the complaint fails to state a claim on which relief can be granted.").

Indeed, underlying *Truman* is a critical distinction between a fabrication of evidence claim brought under the Fourth Amendment and one brought under the Fourteenth Amendment. As discussed, the Fourth Amendment prohibits an individual's pretrial detention absent "probable cause to believe he committed a crime." *Manuel*, 580 U.S. at 368–69, 137 S.Ct. 911. The alleged harm in a Fourth Amendment fabrication of evidence claim is "the plaintiff's wrongful detention without probable cause." *Harris* v. *Town of S. Pines*, 110

F.4th 633, 646 (4th Cir. 2024). But a Fourteenth Amendment fabrication of evidence claim implicates "the entire panoply of rights afforded to criminal defendants," and "the alleged harm ... is the wrongful initiation of prosecution." *Id.* (citation omitted); *see also Halsey* v. *Pfeiffer*, 750 F.3d 273, 291 (3d Cir. 2014) (explaining the "Fourth Amendment forbids a detention without probable cause," while "[t]he guarantee of due process of law, by contrast, is not so limited as it protects defendants during an entire criminal proceeding through and after trial"); *Zambrano* v. *City of Joliet*, 141 F.4th 828, 830 (7th Cir. 2025) (explaining the difference between a fabricated evidence claim brought under the Fourth Amendment and one brought under the Fourteenth Amendment). Put another way, it is generally understood that the existence of probable cause does not necessarily defeat a Fourteenth Amendment fabrication of evidence claim. *See Dean* v. *Phatak*, 162 F.4th 555, 565, 567–68 (5th Cir. 2025) (recognizing a "freestanding" due process right against deliberate fabrication of evidence); *Tanner* v. *Walters*, 98 F.4th 726, 733 (6th Cir. 2024) (concluding a "stand-alone fabrication-of-evidence claim can survive without regard to probable cause"); *Harris*, 110 F.4th at 646 (noting existence of independent probable cause "is no defense to a due process claim"); *Barnes*, 68 F.4th at 132 (rejecting "effort[s] to import probable cause into the due process analysis"); *Spencer*, 857 F.3d at 802 (holding existence of independent probable cause "does not resolve [a] Fourteenth Amendment claim for deliberate fabrication of evidence"); *Weiland* v. *Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (recognizing separate Fourteenth Amendment due process claim for fabrication of evidence where plaintiff alleged "a causal connection between the alleged cover up" and his "unjust incarceration"); *Limone* v. *Condon*, 372 F.3d 39, 44–45 (1st Cir. 2004) (stating deliberate fabrication of evidence "necessarily violate[s] due process"); *but see Riddle* v. *Riepe*, 866 F.3d 943, 948 (8th Cir. 2017) ("[T]he Fourteenth Amendment's guarantee of due process is violated by 'the manufacture of ... false evidence' in order 'to falsely formulate a pretense of probable cause.' " (alterations in original) (quoting *Livers* v. *Schenck*, 700 F.3d 340, 354 (8th Cir. 2012))).

20   It is not totally clear Mr. Morphew even brings a Fourteenth Amendment reckless investigation claim. In his opening brief, Mr. Morphew suggests his reckless investigation claim "may well be part and parcel of the *Franks* violation." Op. Br. at 46. He also seems to suggest his reckless investigation claim is a recasting of his malicious prosecution claim. He argues "the concept of 'reckless investigation' is embedded into a malicious prosecution claim" and "is also embedded in the notion of probable cause." Op. Br. at 45–46. To the extent the reckless investigation claim is premised on the same theory as Mr. Morphew's *Franks* or malicious prosecution claims under the Fourth Amendment, we have already explained that he must plausibly allege the absence of probable cause to withstand the defendants' motions to dismiss.

21   Given our disposition, we need not consider the district court's alternative bases for dismissal or address Mr. Morphew's associated arguments. *See, e.g.*, *United States* v. *Esparza-Mendoza*, 386 F.3d 953, 957 (10th Cir. 2004) (declining to address issues that were unnecessary to affirmance). To that end, we note we are not compelled to address qualified or absolute immunity before reaching the merits because these defenses are not jurisdictional. *See Nevada* v. *Hicks*, 533 U.S. 353, 373, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) ("There is no authority whatever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction[.]"); *Crothers* v. *Carr*, No. 23-8014, 2025 WL 1122681, at *4 n.6 (10th Cir. Apr. 16, 2025) (unpublished) ("[I]t is at least permissible to address the merits of a plaintiff's claim instead of dismissing it based on an immunity defense.").

22   We deny as moot Mr. Morphew's motion to strike because we can take judicial notice of the June 2025 state indictment. *See Bruce* v. *City & Cnty. of Denver*, 57 F.4th 738, 741 n.3 (10th Cir. 2023) ("[A] federal court may take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue."). We also deny as moot his motion to vacate oral argument.

---

**End of Document**                           © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.   19