# EXHIBIT 1



**Keith M. Woodwell**
kmw@clydesnow.com
TEL & FAX (801) 433-2430
clydesnow.com

July 13, 2026

***Via Email and U.S. Certified Mail, Return Receipt Requested***

Office of the Utah Attorney General
Attn: Utah Attorney General Derek E. Brown
Utah State Capitol Complex
350 North State Street, Suite 230
Salt Lake City, Utah 84114

S.E.C.U.R.E. Strike Force
Office of the Utah Attorney General
350 North State Street, Suite 230
Salt Lake City, Utah 84114

noticeofclaim@agutah.gov
dbrown@agutah.gov


|  |  |
|---|---|
| **Re:** | **Notice of Claim Under the Governmental Immunity Act of Utah and Notice of Intent to Sue for Negligent Loss of Seized Property (One Box of Documents and Four USB Storage Devices)** |
| Related Matters: | *State of Utah v. Larsen, et al.,* Consol. Case No. 231702289 (Second Judicial District Court, Davis County); *Larsen, et al. v. Reyes, et al.*, No. 2:25-cv-00963 (D. Utah); *Federal Search Warrant Matter*, No. 2:24-mj-01219-CMR (D. Utah) |

To Office of the Utah Attorney General and Attorney General Derek E. Brown:

This Notice of Claim (the "Notice") is served in accordance with the Governmental Immunity Act of Utah, Utah Code Ann. §§ 63G-7-401 and 63G-7-402. It is submitted on behalf of claimants Rudy Larsen, Jena Larsen, Tyler Brinkman, Rubicon Contracting, LLC, Scandia Company, LLC, and Smart Rain Systems, LLC (collectively, the "Claimants" or the "Owners"). Claimants hereby give notice of their claim against the Office of the Utah Attorney General (the "AGO"), including its S.E.C.U.R.E. Strike Force ("SECURE"), arising from the their negligent loss of seized property that the AGO

**ONE UTAH CENTER • 201 SOUTH MAIN STREET, SUITE 2200
SALT LAKE CITY, UT 84111-2216 •TEL & FAX (801) 322-2516**

{02312619-1 }

took from Claimants and held in its custody—specifically, one box of seized documents, one USB thumb drive taken from Mr. Larsen's office, and three USB thumb drives taken from a backpack in Mr. Brinkman's office (collectively, including the information contained thereon, the "Missing Property"). To date, the Missing Property remains missing and has never been returned to Claimants by the AGO or by federal authorities.

The statutory basis for the claim arises under Utah Code Ann. § 77-11b-204(2), which provides that "[i]f seized property is returned under this chapter, a claimant has a civil right of action against an agency for a claim based upon the negligent destruction, loss, or damage or other injury to seized property while in the possession or custody of the agency."

## I.       Brief Statement of Facts

On November 17, 2023, the AGO obtained ten search warrants in an investigation of Claimants that resulted in criminal prosecution in the Second Judicial District Court in Davis County, Utah styled *State of Utah v. Larsen, et al.*, Consol. Case No. 231702289 (the "Criminal Case"). On November 20, 2023, the AGO executed the warrants at Rubicon Contracting's offices at 801 N 500 W, Bountiful, Utah, and at other locations, seizing physical documents, electronic devices, and other property. The AGO took the seized property into its custody and was responsible for safeguarding and returning it.

On August 1, 2024, Judge Rita M. Cornish entered an order in the Criminal Case granting Claimants' *Franks* motion in part, finding that the Claimants had made a substantial showing that the warrant affidavits contained false affirmative statements and misleading material omissions made knowingly and intentionally, or with reckless disregard for the truth, and concluding that, with the false statements removed and the omitted information restored, "there would not have been probable cause to support the broad searches approved here." The Criminal Case was dismissed on February 24, 2025, and a related federal investigation closed without charges, as confirmed by a United States Department of Justice declination letter dated April 8, 2026. There is no pending prosecution—state or federal—in which the Missing Property could be needed, and the property is required to be returned to Claimants.

The loss of the Missing Property came to light under an administration that publicly promised the opposite. Attorney General Derek E. Brown took office in January 2025 as a self-described reformer, pledging to implement "a set of best practices that becomes the gold standard for the Attorney General's Office" to "maintain the highest standards of transparency and ethics in government," and to be accountable to the people of Utah. The conduct described in this Notice—the loss of property the AGO was

obligated to safeguard and return—occurred during, and continued under, that administration.

## A.    The Missing Box.

One item of the Missing Property is a box of documents (the "Missing Box"), which the AGO described in its Property Report in General Offense File AG 2023-291 as miscellaneous documents seized on November 20, 2023, and had a last-recorded storage location of PR/11-C. The AGO has never had any ownership claim to the Missing Box; it had only custody. It is undisputed that the Missing Box was seized from Claimants' premises, taken into the AGO's exclusive custody, catalogued by the AGO under its own tag number, and never returned.

## B.    The Four Missing USB Storage Devices.

The Missing Property includes four USB storage devices seized during the same November 20, 2023 search. Each is documented in contemporaneous seizure records as collected, yet none were mentioned when the seized property was reviewed for transfer to federal investigators.

First, one USB thumb drive was logged at every stage of the chain of custody yet cannot be found. It appears in the Field Supplemental report of SA Joe Shuler (released November 20, 2023) as "a USB thumb drive"; in Attachment A to the federal search warrant as "1 thumb drive from room 9 … (Stored in PR/11-B)"; and Field Supplemental report of SA Jennifer Justice says "Thumb drive, located in the right small brown cabinet in the bottom drawer. Photographed and seized." Notwithstanding that the AGO returned logged this device as collected, and the thumb drive was not located on review. The AGO's own records further document that this thumb drive was among the electronics checked out of the evidence room on February 29, 2024 for an undisclosed "taint team" session, stored overnight in a case agent's personal office rather than in the evidence room, and rebooked into evidence on March 1, 2024. Yet when the AGO's retained filter team, Consilio, LLC, reported its collection of the seized electronic data to the court on April 4, 2024, this thumb drive appeared nowhere in the filter team's collection summary. On the AGO's own filings, no forensic image of this drive's contents was ever created by the AGO, its filter team, or anyone else in the chain of custody.

Second, three additional USB drives are documented in the Field Supplemental report of SA William Chow (released November 21, 2023) as "three USB drives … located in a dark colored backpack" in Room 2, and were recorded as "photographed and released to the evidence team." These three drives never appear on Attachment A to the federal search warrant or on SA Hatch's 33-item sworn return, and they too were not

located on review. They were thus seized at the scene, dropped from the inventory, and lost while in the AGO's custody.

**C.      The AGO's Documented History of Mishandling the Seized Property.**

The loss of the Missing Property did not occur against a backdrop of careful stewardship. The AGO's own case agent admitted under oath at the May 21 and May 24, 2024 preliminary hearings in the criminal case to a series of custody breaches involving the property seized in the Criminal Case, including reviewing privileged materials without a taint team in place, retaining those materials after being instructed to stop, personally cutting the seals on all seized items weeks after the court issued a cease-review order on February 6, 2024, and leaving an unexplained gap that the agent himself called a "hole in the chain of custody." By May 2024, well before the Missing Property went missing, the AGO's own records for this seizure were already incomplete and unreliable.

Forensic evidence now establishes that the mishandling extended to the seized electronic devices themselves. That same forensic evidence also directly contradicts what the AGO told the court. On February 23, 2024, the AGO certified to the court, in a filed report, that "[t]he electronic evidence has not been accessed or otherwise processed or searched." Six days later, on February 29, 2024, while the court's February 6, 2024 cease-review order remained in force, and five days before the AGO identified its filter team to the court, the same screened case agent checked out all the seized evidence for an undisclosed "taint team" session. A forensic information-technology examination of one of the seized laptop computers, conducted by Claimants after the property was returned, establishes that, during the undisclosed "taint team" session, the laptop was powered on three times within approximately forty-five minutes, that its encrypted data volume was decrypted as a consequence, and that more than one thousand files were written to the device, altering its contents and metadata while it sat in AGO custody under blanket claims of attorney-client privilege and a cease-review order from the court. None of this was disclosed to the court or the parties. To the contrary, the AGO represented to the court, in an April 4, 2024 filing that its filter team "has not accessed or decrypted the data" on the seized laptops. The seized property was not merely lost in the AGO's custody; it was accessed and altered in direct violation of the court order behind written certifications to the contrary.

The AGO did not lack a system for tracking this evidence; it maintained one and used it. The AGO's reports reflect that checkouts, transfers, and returns of the seized items were logged in the AGO's "Versaterm Evidence Continuity" system, and that AGO personnel made copies of seized documents that were booked into the evidence system as

separate items. The loss of the Missing Property therefore occurred within, not outside, the AGO's own tracking system, making the AGO more culpable for the loss of that evidence.

**D.**      **On the AGO's Own Sworn Account, Only the AGO Could Have Lost the Property.**

On December 26, 2024, the United States obtained a federal search warrant in Case No. 2:24-mj-01219-CMR authorizing Homeland Security Investigations ("HSI") to take legal custody of the seized property. The property nonetheless physically remained in the AGO's possession, in an AGO-controlled evidence locker, at all relevant times. In a declaration filed under penalty of perjury on May 4, 2026, Assistant AGO and former Special Assistant United States Attorney Kaytlin V. Beckett represented that the evidence "physically remained in possession of the UAGO," that to her knowledge no one from HSI, HTPU, or the USAO accessed or reviewed the materials, and that she was not aware of any party having accessed that evidence. On the AGO's own sworn account, no federal actor ever accessed the contents of the AGO's locker.

On May 21, 2026, when the seized property was finally gathered for transfer at a evidence pickup and reviewed by the HSI investigator and the Claimants' investigator, the Missing Property was not located. On the AGO's own sworn representations, the Missing Property was lost while in the AGO's physical custody, in an AGO-controlled storage location, by AGO personnel or under AGO supervision. The AGO has identified no other entity to which responsibility for the loss can be assigned.

**E.**      **The AGO's Continuous, Acknowledged Duty to Preserve.**

The AGO's duty to preserve the seized property was triggered repeatedly and without interruption from 2023 forward, including by Rubicon's December 6, 2023 assertion of privilege; a January 18, 2024 Notice to Preserve Evidence; the court's February 6, 2024 cease-review order; the AGO's own February 23, 2024 filed certification that "[t]he electronic evidence has not been accessed or otherwise processed or searched"; the criminal defendants' March 13, 2024 *Franks* motion seeking return of all seized property; the AGO's April 4, 2024 filed representation that its filter team "has not accessed or decrypted the data" on the seized electronic devices; the court's June 24, 2024 Protective Order; the court's August 1, 2024 *Franks* Order; the November 19, 2024 Notice of Claim regarding the Section 1983 claims; and Notices of the Duty to Preserve Evidence served on the AGO on January 7, 2026 and April 22, 2026. On January 8, 2026, the AGO's counsel acknowledged in writing that the AGO "are taking and already have taken reasonable steps to preserve what they believe to be potentially relevant evidence as required by law." Four months later, the AGO could not produce the Missing Property.

Forensic evidence now establishes that months before that, on February 29, 2024, seized electronic property was accessed and altered in the AGO's custody in violation of a court order—conduct squarely within the preservation obligations the AGO itself had certified it was honoring. There is no point from December 2023 forward during which the AGO was free to lose, misplace, alter, or destroy any of the Missing Property.

## II.    The Nature of the Claim Asserted

Claimants assert a claim against the AGO under Utah Code Ann. § 77-11b-204(2) for the negligent destruction, loss, or damage to seized property while in the agency's possession or custody. As the agency with custody of the Missing Property, the AGO was required under Utah Code § 77-11b-204 to hold the property in safe custody, to maintain a detailed inventory of all property seized, and to have written policies for the identification, tracking, management, and safekeeping of seized property. The AGO breached each of those duties. As a direct and proximate result, the Missing Property was lost, destroyed, or otherwise rendered unaccounted for while in the AGO's possession or custody. The loss was not the result of normal depreciation, deterioration, or ordinary wear and tear, which Utah Code § 77-11b-204(1)(a) excludes from the definition of "damage or other injury".

The Governmental Immunity Act of Utah expressly waives the AGO's immunity for this injury. Utah Code Ann. § 63G-7-301(2)(c) waives immunity "as to any action based on the negligent destruction, damage, or loss of goods, merchandise, or other property while it is in the possession of any governmental entity or employee, if the property was seized for the purpose of forfeiture under any provision of state law." The Missing Property was seized for the purpose of forfeiture under Title 77, Chapter 11b, and was negligently lost while in the AGO's possession and custody. Claimants' claim thus falls squarely within this waiver of immunity. Claimants also assert Utah Code Ann. § 63G-7-301(2)(c) as a parallel and independent basis for this claim and for any ensuing action, together with the common-law negligence and bailment duties the AGO owed as custodian of Claimants' property.

Claimants also assert, and reserve, a claim for declaratory judgment and a full and sworn accounting concerning the location, condition, and fate of the Missing Property and the AGO's compliance with its statutory custody, inventory, and return obligations under Utah Code Ann. §§ 77-11a-204 and 77-11b-203. Claimants further reserve all rights and remedies arising from the same conduct, including spoliation remedies in *Larsen v. Reyes*, No. 2:25-cv-00963 (D. Utah), all rights and remedies arising from the unauthorized access to, decryption of, or alteration of seized property while in the AGO's possession or custody, including the February 29, 2024 access to seized electronic

devices documented by forensic examination, and all rights and remedies concerning any access to or analysis of forensic images, mirrors, scans, or other copies of the seized property, whenever and wherever conducted, and all rights as to any other items that were also unaccounted for at the May 21, 2026 evidence pickup, including forensic-imaging media and derivative copies, which are not the subject of this Notice but are not waived.

### III.     When the Claim Arose

Under Utah Code § 63G-7-401(1)(b), a claim arises when the claimant knew, or with the exercise of reasonable diligence should have known, that the claimant had a claim against the governmental entity and the identity of the governmental entity. Claimants did not know, and could not reasonably have known, that the Missing Property had been lost until May 21, 2026 when the AGO was unable to produce it during the physical review of the seized property in connection with the federal evidence transfer. Until that date, the AGO had repeatedly represented, including under penalty of perjury, that the seized property remained intact and in its custody. The claim therefore arose on or about May 21, 2026, and this Notice is timely filed within one year of that date as required by Utah Code Ann. § 63G-7-402.

This Notice supplements, and does not waive, replace, or limit, the Notice of Claim that Claimants served on the AGO and the State of Utah on November 19, 2024, which the AGO acknowledged by letter dated December 4, 2024. The November 19, 2024 Notice placed the State on notice of Claimants' claims arising from the seizure and continued retention of their property, including the AGO's duty to safeguard and return it. To the extent the negligent loss alleged here is encompassed by that earlier Notice, Claimants have already satisfied the notice requirement; this Notice is served out of an abundance of caution to provide separate and specific notice of the distinct injury—the negligent loss of the Missing Property—that was not discovered until on or about May 21, 2026. Claimants reserve all rights under both Notices.

### IV.     The Damages Incurred, So Far as They Are Known

As a direct and proximate result of the AGO's negligence, Claimants have suffered damages, including the loss of the Missing Property and the attorney fees and additional costs claimants will necessarily incur from having to work without the documents in the pending federal civil-rights action, *Larsen, et al. v. Reyes, et al.*, No. 2:25-cv-00963 (D. Utah), which arises out of the same investigation and seizure. Because the AGO lost this property before returning it, neither Claimants nor any factfinder will ever know with certainty what the lost box and drives contained or would have shown; that uncertainty is the AGO's doing, and the AGO must bear it. The loss is also total and unrecoverable: the AGO's own April 4, 2024 filing shows that its retained filter team

imaged other seized devices but never imaged the thumb drive taken from Mr. Larsen's office—it appears nowhere in the filter team's collection summary—so no forensic image, copy, or backup of its contents exists anywhere in the chain of custody. Property that the AGO both failed to copy and then failed to keep cannot be reconstructed at any price. Claimants' damages include the value of the Missing Property, including all documents, files, and other data stored therein or thereon, and consequential damages flowing from its loss, together with prejudgment and post-judgment interest, costs, and, to the extent permitted by law, attorney fees. The full amount of damages is continuing and will be proven at trial. Claimants are working with damages experts and will supplement this statement as additional information becomes known.

## V.    Governmental Employees

This claim is asserted against the AGO as the responsible agency. It is not asserted against any current or former AGO employee in an individual capacity. For context only, the conduct described above was undertaken by AGO personnel acting within the scope of their employment, including but not necessarily limited to Derek E. Brown, Stewart M. Young, Bradley R. Blackham, and the AGO's evidence custodians and case agents. These individuals are identified for context and are not named as respondents in this action. Claimants reserve the right to amend this Notice to name individual employees should facts developed in discovery warrant it.

## VI.    Preservation of Records

Claimants further demand that the AGO preserve, not destroy, alter, discard, overwrite, or part with: (a) the Missing Property and the information contained thereon, in whatever form and wherever located, and any copies, images, scans, or derivatives of their contents in the AGO's possession or control; (b) all evidence-locker and evidence-vault access logs, entry records, and chain-of-custody records for storage locations PR/11-C, PR/11-B, and PR/15-C, and for the Missing Property specifically, from the date of seizure to the present, including all records in the AGO's "Versaterm Evidence Continuity" system; (c) all electronically stored information, correspondence, and internal records concerning the handling, transfer, copying, or disposition of the Missing Property; (d) all records of the February 29, 2024 evidence checkout and "taint team" session, including the filter team's collection notes, chain-of-custody forms, technician logs, equipment records, statements of work, instructions received from the AGO, and all communications concerning that session, together with Tech Room and secure-area access logs and key-card records for February 27 through March 1, 2024; (e) all forensic images, mirrors, scans, and other copies of the seized property, wherever located, including the November 20, 2023 mirror of the company server, the document scans

maintained on the AGO's secured server, the filter team's collected images, and any copies held by or for the Regional Computer Forensics Laboratory, together with the workstations, servers, and storage media on which any such copy has been stored, accessed, or analyzed, preserving all file-system metadata; and (f) all records reflecting any access to, analysis of, or use of any such image or copy at any time after February 6, 2024. This preservation obligation is continuous and has been triggered repeatedly since 2023, as set forth above. Preserve all such records and things until further notice.

## VII.    Conclusion

Claimants hereby provide notice of their intent to file suit on the claims identified above, and on any other claim that may be asserted based on these facts, and to recover their damages in an amount to be determined at trial. Please direct any response, and any questions, to the undersigned.

Very truly yours,

CLYDE SNOW & SESSIONS

Keith M. Woodwell
Jake S. Taylor
Katherine E. Pepin

Cc:

Jason W. Hardin
Jeffery B. Setness
Stephen P. Horvat
J. Mason Kjar
Trevor J. Adkins
FABIAN VANCOTT
jhardin@fabianvancott.com
jsetness@fabianvancott.com
shorvat@fabianvancott.com
mkjar@fabianvancott.com
tadkins@fabianvancott.com

{02312619-1 }
4915-1450-3868, v. 3

Bradley R. Blackham
Andrew R. Hopkin
UTAH ATTORNEY GENERAL
bblackham@agutah.gov
arhopkins@agutah.gov