# EXHIBIT 16

STATE OF UTAH

vs

LARSEN

ELECTRONICALLY RECORDED PROCEEDINGS

May 24, 2024



250 E 200 S. Suite 350
Salt Lake City, Utah 84111

Phone 801-328-1188
scheduling@depomaxmerit.com

May 24, 2024

526

IN THE SECOND JUDICIAL DISTRICT COURT

IN AND FOR DAVIS COUNTY, STATE OF UTAH

STATE OF UTAH,              )  CIVIL NO. 231702289
                           )
          Plaintiff,       )  COURT HEARING
                           )
     vs.                   )  JUDGE RITA CORNISH
                           )
RUDY LARS LARSEN           )  PRELIMINARY HEARING
d.o.b. ███████  et al., )
                           )  VOLUME III
          Defendants.      )
                           )  **COPY**
                           )
                           )
                           )

TRANSCRIPTION OF ELECTRONICALLY RECORDED PROCEEDINGS

HELD MAY 24, 2024

8:08 a.m.

* * *

RENEE L. STACY
Registered Professional Reporter
Certified Realtime Reporter

May 24, 2024

711

having witnesses prepare these 1102s. Do you recall that?

A   Yes.

Q   You indicated that you would have them generally sign at the end of -- after they filled it out, and you'd watch them sign; is that correct?

A   Yes.

Q   Okay. And if you can just turn to Exhibit 7. You've seen that document before, correct?

A   Correct.

Q   This is the 1102 of Josh Nix?

A   Correct.

Q   Now, I just want you -- if I can, to have you look at the top of this document. Underneath the kind of header where it says "Witness statement for use at a preliminary examination," there is some text that indicates -- well, can you read that where it begins "You are notified"?

A   It says "You are notified that statements are about" -- "that you are about to make in this document may be presented to a magistrate or a judge in lieu of your sworn testimony at a preliminary examination. Any false statement you make and that you do not believe to be true may subject you to criminal punishment as a Class A misdemeanor."

712

Q   Now, Agent Jeter, you understand, from that language, the seriousness of being truthful in these documents, correct?

A   Correct.

Q   Do you believe you ever made any statements to any potential witnesses that might minimize that language or indicate that they need not take it seriously?

A   I think the only thing I've told people is, "You're filling out a statement as a witness or victim and don't be afraid by that verbiage."

Q   Okay. Did you tell them -- did you explain to them too that this will be used in lieu of testimony at a preliminary hearing?

A   I don't believe I have. I believe I've told them to read -- you know, read this and stating, "You're giving a truthful statement."

MR. LEWIS: Okay. All right. If we can play -- we'll offer Defendants' Exhibit 1.

THE COURT: Let's see.

UNIDENTIFIED SPEAKER: Feedback.

THE COURT: We've got feedback on our WebEx. Let's try -- a construction cone is never a good sign.

(Recording played as follows:

713

"AGENT JETER: And the other thing I was going to ask you is -- yeah. This is just what's called, you know -- well, it basically just says you're giving us a truthful statement. You're not lying. If you were lying, if we chose to, we could charge you, you know, with a misdemeanor, but that's not for really this type of case that we're worried about that. It's just a generic form.

"SPEAKER: Yeah."

(Recording stopped.)

Q   (BY MR. LEWIS) Do you recognize your voice there, Agent Jeter?

A   Yes, I do.

Q   And do you believe that -- that sounds like you're discussing this admonition in an 1102 with a potential witness; is that correct?

A   Correct.

Q   And do you recall saying -- do you recall witnesses having questions about what this admonition meant?

A   They were concerned about it saying "criminal punishment."

Q   And you said on this -- and this file name that we have -- and the file name from this recording is 12182023. Is that how you dated your recordings?

714

A   For some of them that were groups, yes.

Q   Okay. And that would indicate that it took place on December 18th, 2023, correct?

A   Correct.

MR. LEWIS: Your Honor, I'd move the admission of Defendants' Exhibit 1.

THE COURT: All right. It is received.

Q   (BY MR. LEWIS) Now, Agent Jeter, in Defendants' Exhibit 1, you state -- it's basically -- it just says -- and, again, you're referring to the admonition, right? That "You're giving us a truthful statement. You're not lying," correct?

A   I believe I said something along that lines.

Q   Okay. And then you say, "If you were lying, if we chose to, we could charge you, you know, with a misdemeanor, but that's okay. Not for really this type of case that we're worried about. That's just -- it's just a generic form."

So when you say you're not worried about them telling the truth in this type of case, what do you mean?

A   That's not what I was referring to.

Q   Well, you did say, "It's not for this type of case," correct?

715

A    That is something that was said by me on that recording, yes.

Q    Correct. And you said, "This is just a generic form," correct?

A    I did say that.

Q    You didn't impress upon them that this would be used in a preliminary examination for first-degree felonies in lieu of their testimony, did you?

A    I didn't tell them what the charges were. I just told them to read the admonitions. Some have questions, and that was my explanation of it.

Q    And you also said, though, "This" -- "Not something we're concerned about in this type of a case," correct?

A    I did say that.

MR. LEWIS: Nothing further, your Honor.

THE COURT: All right. And the defense tenders the witness back to the State?

MR. LEWIS: Yes, your Honor.

THE COURT: All right.

MS. BECKETT: Your Honor, if I could just be provided a copy of the exhibit they just used.

MR. LEWIS: The recording?

MS. BECKETT: Correct.

716

THE COURT: Will you be able to e-mail a copy?

MR. LEWIS: Yeah.

THE COURT: Thank you.

Ms. Hughes?

UNIDENTIFIED SPEAKER: Ms. Hughes, the Court -- Shelby --

THE COURT: That's all right. Give her a second. I can see she's -- Ms. Hughes?

MS. HUGHES: Yes?

THE COURT: Could you also please e-mail a copy of the exhibit to secondcornishteam so that we can make sure it's maintained in the record? Thank you.

MS. BECKETT: I'll pause for the musical chairs briefly.

THE COURT: Just give them one second to get resituated. I appreciate everybody being willing to shuffle around and make it work. None of our -- none of our courtrooms are quite built to accommodate this many parties, but I appreciate everybody making it work.

All right. It looks like we're settled.

MS. BECKETT: Thank you, your Honor.

REDIRECT EXAMINATION

717

BY MS. BECKETT:

Q    Agent Jeter, during examination by defense counsel, you were asked several questions about both the affidavit for a search warrant and the affidavit of probable cause for the charges in this case; is that correct?

A    Correct.

Q    Is it safe to say that in drafting the affidavit of probable cause for the search warrant and the --

MR. CRANE: Objection, your Honor. It's leading.

THE COURT: So I'm going to give her some leeway to orient the witness on where we are, so I'm viewing this as foundational.

Go ahead, Ms. -- so overruled. Go ahead, Ms. Beckett.

Q    (BY MS. BECKETT) Agent Jeter, did you review a lot of things in drafting those?

A    Yes.

Q    Did you review interviews?

A    Yes.

Q    Did you review paper documents?

A    Yes.

Q    Did you review other information provided

718

to you from witnesses?

A    Yes.

MS. BECKETT: If I may approach, your Honor.

THE COURT: You may.

MR. CRANE: What are you showing?

MS. BECKETT: This is the affidavit of probable cause that we've examined him on.

MR. CRANE: You're showing what?

MS. BECKETT: The affidavit and charging information that he's been examined on.

MR. CRANE: (Inaudible) Second Amended Information?

MS. BECKETT: Correct.

MR. CRANE: Is this to refresh the witness's recollection? I don't recall there's a witness -- a question pending.

MS. BECKETT: I could ask the question. I just wanted to approach him and have the document in front of him before I ask the question, your Honor.

THE COURT: I've -- I've got it. We'll -- so he hasn't been directed to look at it yet. It's just sitting up there like any other paper. We'll see where it goes.

Q    (BY MS. BECKETT) Agent Jeter, was it your