Jason W. Hardin (8793)
Jeffery B. Setness (20026)
Stephen P. Horvat (6249)
J. Mason Kjar (14227)
Trevor J. Adkins (18297)
FABIAN VANCOTT
95 South State Street, Ste. 2300
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
jhardin@fabianvancott.com
jsetness@fabianvancott.com
shorvat@fabianvancott.com
mkjar@fabianvancott.com
tadkins@fabianvancott.com

Bradley R. Blackham (8703)
Andrew R. Hopkins (13748)
Assistant Utah Attorneys General
Derek E. Brown (10476)
Utah Attorney General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
bblackham@agutah.gov
arhopkins@agutah.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| RUDY LARSEN, an individual; JENA LARSEN, an individual; RUBICON CONTRACTING, LLC, a Utah limited liability company; SCANDIA COMPANY, LLC, a Utah limited liability company; and SMART RAIN SYSTEMS, LLC, a Utah limited liability company,<br><br>Plaintiffs,<br>v.<br><br>SEAN D. REYES, an individual; LEO LUCEY, an individual; MICHAEL ADAM JETER, an individual; and KAYTLIN VIRGINIA BECKETT, an individual,<br><br>Defendants. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO TAKE EXPEDITED PRESERVATION DEPOSITIONS**<br><br>**(Oral Argument Requested)**<br><br>Case No. 2:25-CV-00963-HCN-JCB<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Jared C. Bennett |

Defendants respectfully submit this Opposition to Plaintiffs' Motion for Leave to Take Expedited Preservation Depositions (Dkt. 66) (the "**Motion**").

## INTRODUCTION

Plaintiffs' Motion asks the Court to authorize *eighteen* depositions—nearly twice the presumptive limit—before the Court has ruled on Defendants' pending motion to dismiss, before any Rule 26(f) conference has occurred, and before any scheduling order has been issued. The Motion fails to recognize the Court already has found "good cause to delay the issuance of a scheduling order until after the resolution of" Defendants' motion to dismiss. (Dkt. 12, at 1 n.2.) Plaintiffs have failed to provide a viable basis to depart from that direction. This case is still in the pleading stage, and there is no justification for imposing the burdens of eighteen depositions on Defendants while their absolute and qualified immunity defenses are pending. The Motion also fails on procedural grounds, as Plaintiffs did not make reasonable efforts to resolve the issue before filing the Motion, nor did they obtain leave to file their grossly overlength Motion.

## FACTS

### A. The State Prosecution.

1. On May 23, 2023, the Utah Attorney General's Office ("**UAGO**") received a tip regarding a report of trafficking in Utah. (Decl. of Kaytlin Beckett, Ex. 1 hereto, ¶ 12.)

2. The report identified the potential victim as a 19-year-old male who had been recruited in Mexico to work for Rubicon in Utah under the H-2B temporary worker program. (*Id.* ¶¶ 12-15.)

3. Around the same time, a Rubicon office employee reported to federal law enforcement that Rubicon was engaged in trafficking. (*Id.* ¶ 16(e).)

4. UAGO conducted a full investigation, including interviewing current and former H-2B workers and office employees and obtaining documents. (*Id.* ¶ 16.)

5. The witnesses told similar stories: Rubicon had promised workers full time work at good wages; Rubicon had failed to consistently provide work or pay for the shortfall; Rubicon failed to pay workers for hours worked; Rubicon housed its visa workers in crowded, substandard lodging and deducted $650 to $700 per person per month for rent, financially benefitting Rubicon to the detriment of the workers; Rubicon did not allow workers to find other housing; Rubicon deducted money for tools or if a job had to be finished by another crew or equipment was damaged. The H-2B workers had to beg for food at churches and food banks and use beds that were being thrown away. But if they looked for work elsewhere, Rubicon would threaten that they would be deported and face serious legal consequences, more serious than if they had simply entered the U.S. illegally. (*Id.* ¶ 16(*l*).)

6. These facts and others established probable cause that Rubicon was engaged in labor trafficking. *See*, *e.g.*, Utah Code Ann. §§ 76-5-308(2)(a), 76-5-308(2)(c)(i), (iv), (viii)(A), 76-5-309(2)(a).

7. On November 17, 2023, UAGO obtained search warrants from Utah's Second District Court for Rubicon's premises and other locations. (Beckett Decl. ¶ 17.)

8. The warrants were issued on the basis of affidavits signed by Defendant Jeter (the "**State Affidavit**"). (*Id.* ¶ 18.)

9. State charges were ultimately filed against Rubicon for aggravated human trafficking for labor under Utah Code Ann. §§ 76-5-308 and 310. (*Id.* ¶ 19.)

10. After the initial arrests and charges, multiple other victims and witnesses came forward, which led to amended charges being filed. (*Id.* ¶ 21.)

11. On March 13, 2024, Rubicon filed a Joint Motion to Void Search Warrants, Suppress Evidence, Return Seized Assets, and for a *Franks* Hearing, asserting that the State

Affidavit contained "multiple false statements and omissions, which were material to the magistrates' finding of probable cause." (*Id.* ¶ 23.)

12. The Motion to Void Search Warrants was eventually heard by Second District Court Judge Rita M. Cornish, who issued a ruling on August 1, 2024. (Ruling on Franks Motion, Ex. 2 hereto.)

13. Judge Cornish did not void any search warrants, suppress any evidence, or order the return of seized assets (other than cash that was the subject of a separate motion). (*Id.*)

14. Regarding the request for a *Franks* hearing, Judge Cornish denied the motion as to five of the ten warrants. Judge Cornish did, however, rule that Rubicon's proffer was sufficient to entitle them to an evidentiary hearing under *Franks* as to the validity of the other five search warrants. (*Id.*)

15. Judge Cornish did not make any ultimate findings as to whether any statement in the State Affidavit was accurate or inaccurate. (*Id.*)

16. Instead, that was left to be addressed at an evidentiary hearing, which did not occur during the six months the charges remained pending in state court. (*Id.*)

**B. The Federal Investigation and Dismissal of State Charges.**

17. After the preliminary hearing, UAGO contacted the local United States Attorney's Office. (Beckett Decl. ¶ 31.)

18. UAGO was ultimately referred to the U.S. Department of Justice Civil Rights Division's Human Trafficking Prosecution Unit ("**HTPU**"). (*Id.* ¶ 33.)

19. In August through November 2024, AUSA Lindsey Roberson of HTPU traveled to Utah three times to interview victims and witnesses. (*Id.* ¶¶ 42-51.)

20. After concluding the November interviews, AUSA Roberson, UAGO, and the local US Attorney's Office decided that UAGO would dismiss the state criminal charges without prejudice in favor of a formal federal investigation and grand jury process. (*Id.* ¶¶ 53-54.)

21. On December 26, 2024, the government obtained a warrant in federal court and took custody of the evidence that the state had obtained through the November 2023 warrants. (Federal Warrant, Ex. 3 hereto.)

22. On January 24, 2025, the lead federal investigator informed Rubicon that his office had taken legal custody of the evidence. (Beckett Decl. ¶ 80.)

23. Less than two weeks later, the State moved to dismiss the criminal charges without prejudice on account of the pending federal investigation. (Motion to Dismiss Without Prejudice, Ex. 4 hereto.)

24. Judge Cornish granted the motion, rejecting the defendants' argument that dismissal be with prejudice and finding that the defendants had failed to show that the State "engaged in misconduct, a violation of the rules of professional conduct, or unreasonable delay." (Order of Dismissal, Ex. 5 hereto.)

**C. Plaintiffs' Lawsuit and Defendants' Motion to Dismiss on Immunity Grounds.**

25. Plaintiffs filed this § 1983 case against the four Defendants: Jeter, Beckett, Reyes, and Lucey. The Complaint purports to state claims for relief for illegal search and seizure and malicious prosecution. In essence, Plaintiffs insist that neither the warrants nor the criminal charges were supported by probable cause because the State Affidavit contained factual misrepresentations and material omissions. (Dkt. 2.)

26. Defendants are alleged to be liable on the following general bases:

a. Jeter is (allegedly) liable for drafting and signing the State Affidavit.

b. Beckett is liable for drafting and approving the State Affidavit, obtaining the warrants, and filing and pursuing the criminal charges.

c. Reyes, as the former Attorney General, is liable as Jeter's and Beckett's supervisor.

d. Lucey is liable as Jeter's supervisor.[1]

(*Id.*)

27. On February 11, 2026, Defendants moved to dismiss all claims under Rule 12(b)(6). (Dkt. 37.) Among other things, Defendants argued that Beckett is protected by absolute prosecutorial immunity from all claims, as her alleged acts and omissions were all taken in her role as advocate for the state in a judicial proceeding; and qualified immunity bars all claims against all Defendants because, even with the allegedly false statements stricken from the State Affidavit and all omitted facts added, there was still arguable probable cause to support the warrants and charges.

28. Briefing on that motion was concluded in April 2026. (Dkt. 63.)

**D. This Motion.**

29. On July 23, Plaintiffs' counsel sent an email to Defendants' counsel stating that Plaintiffs "would like to hold a Rule 26(f) conference" and arguing that "we are well past the time frame laid out in Rule 26(f) and Rule 16(b) for an attorney planning meeting report and a scheduling order." (Email Exchange, Ex. 6 hereto.)

30. The July 23 email did not acknowledge this Court's Order to Propose Schedule, which stated that if Defendants filed a motion to dismiss, "the court finds good cause to delay the issuance of a scheduling order until after the resolution of the motion." (Dkt. 12, at 1 n.2.)

---

[1] One of Plaintiffs' claims against Defendant Lucey asserts a violation of Fourth Amendment rights because the media was allowed to film execution of the search warrant at Rubicon's office.

31. While the July 23 email did explain that Plaintiffs wanted to depose non-party witnesses whose legal status was "set to expire in the next few months," the email did not cite Rule 30(a)(2), nor did it propose the option of taking certain depositions before the Rule 26(f) conference, nor did it provide any facts indicating this concern was valid or any departure was imminent. (Ex. 6.)

32. July 23 was the Thursday before Pioneer Day weekend.

33. That Sunday, July 26, one of Defendants' lead attorneys went into the hospital. That attorney remained unavailable to address Plaintiffs' request for an early Rule 26(f) conference.

34. Accordingly, at 7:00 a.m. on Monday, August 3, Defendants sent Plaintiffs' counsel an email explaining that Defendants had been unable to coordinate on a response but would be able to respond to the substance of Plaintiffs' request "by the end of the week." (*Id.*)

35. Plaintiffs did not respond to Defendants' August 3 email. Instead, they filed their Motion later that same day.[2] (Dkt. 66.)

36. The Motion is fifteen pages long and contains approximately 4,679 words, exclusive of caption and signature block. It contains no table of contents and no word-count certification, and Plaintiffs neither sought nor obtained leave to file it. (*See generally* Docket.)

## ARGUMENT

### I. THE COURT SHOULD DENY THE MOTION ON THE MERITS.

#### A. Defendants may not be subjected to discovery while their immunity defenses are pending.

Absolute and qualified immunity are immunities *from suit*, not a "mere defense to liability," and each "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*

[2] By noon the following day, KSL.com had published a story about the Motion.

*v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("**Until this threshold immunity question is resolved, <u>discovery should not be allowed</u>**.") (emphasis added). As the Tenth Circuit has recognized, a successful qualified immunity defense "protects the official both from liability as well as from the ordinary burdens of litigation, *including far-ranging discovery*." *Workman v. Jordan*, 958 F.2d 332, 335 (10th Cir. 1992) (emphasis added); *see also Moore v. Busby*, No. 03-5039, 92 Fed. App'x 699, 702 (10th Cir. March 3, 2004) (applying this principle to absolute immunity defense: "[T]he district court properly decided the threshold question of [absolute] immunity prior to permitting discovery.") (unpublished).[3]

The Tenth Circuit appears to recognize one narrow exception to this rule: discovery may sometimes be allowed, *but only to the extent necessary to resolve <u>the immunity question itself</u>*. *See Maxey v. Fulton*, 890 F.2d 279, 283 (10th Cir. 1989) (remanding because "the district court's order did not adequately limit permissible discovery to the question of qualified immunity"). That exception has no application here. Plaintiffs do not contend these depositions bear on immunity. Indeed, they propose the opposite—that the transcripts "shall not be cited against any Defendant on the pending dispositive motion." (Dkt. 66 at 14, 16.) Thus, by Plaintiffs' design, their Motion seeks discovery that *cannot* narrow or resolve the only question now before the Court.

In the present case, Defendant Beckett has raised absolute immunity as a complete defense. Defendant Reyes has raised absolute immunity as a partial defense. And all four

[3] The Supreme Court has rejected the suggestion that an immune defendant escapes that burden merely because the discovery is aimed elsewhere: "It is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants." *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009).

defendants have raised qualified immunity as a complete defense.[4] Further, because this case is at the motion to dismiss stage, the defenses will be adjudicated on the pleadings, and discovery cannot be necessary to resolve them.

In short, Plaintiffs have cited no authority permitting discovery unrelated to the immunity question while that question is pending.

**B. Rubicon's proposed discovery is improper at this stage of the proceedings.**

Even if the Court had discretion, Plaintiffs' Motion would still have to be denied.

1. Rubicon has not established a need for extraordinary discovery.

Plaintiffs make no showing of an actual need for a deposition at this time of *any* of the eighteen witnesses. They identify a single witness with documented status, Diego Medina, whose Continued Presence does not lapse until February 6, 2027, roughly *six months from now*. (Dkt. 66 at 6.) Plaintiffs also fail to explain why Mr. Medina's testimony is somehow material or critical, which should be required given that he was *not* among the fourteen listed victims. As to the other seventeen, Plaintiffs concede that immigration records are "not yet available to Plaintiffs" and that the witnesses "have not been shown to have received any durable status." (*Id.*) That is an admission of ignorance, not evidence of imminent departure.

Moreover, even if a witness's status is due to expire, that does not mean the witness intends to leave the country soon. Among other possibilities, a witness may go to work for another H-2B employer. In fact, Plaintiffs assert that one victim, Jorge Breton Hondal, applied to work for Rubicon in July 2026. That suggests Mr. Hondal at least plans to stay in the country.

[4] Because all four defendants have pending immunity defenses against all pending claims, the discussion in *Cruz v. Deming* is inapplicable. 687 F. Supp. 3d 1155, 1167-69. *Cruz* merely recognized that an immunity defense may not justify a global stay of discovery when a case involves defendants or claims that do not subject to an immunity defense. *Id.*

Further, even if a witness were to return to Mexico, his or her testimony would not necessarily be lost. According to Rubicon, its former employees were not victims at all, but instead actually love Rubicon. If so, Rubicon can get them to testify voluntarily. And even if compulsory process is required, Mexico is a party to the Hague Evidence Convention.[5]

Only seven of the listed witnesses provided information to Defendants that were used to obtain the search warrants and file charges against Rubicon. The other seven did not become part of the case until after the search and initial charges. Thus, their testimony could only be relevant to the malicious prosecution claims, which fail as a matter of law because Rubicon did not allege any of Plaintiffs were personally seized in violation of their Fourth Amendment rights.

Finally, and importantly, almost all the witnesses on Rubicon's list provided written statements, and in many cases their statements were recorded. Thus, there already is a documentary record of what these witnesses said and what was said to them.

2. The requested discovery is unduly burdensome.

The burden here is substantial. Rule 30(a)(2)(A)(i) sets a presumptive limit of ten depositions per side; Plaintiffs seek eighteen, before discovery has opened at all. The Court should also reject Plaintiffs' suggestion that Defendants need not participate. Plaintiffs propose to examine these witnesses about their interactions with Defendant Jeter and, in part, Defendant Beckett. Jeter and Beckett would therefore *have to* prepare for all eighteen depositions and attend them to advise counsel as questions arise. That is precisely the burden the Supreme Court has held cannot be wished away: even where an official is "not yet [him]self subject to discovery orders," he "would not be free from the burdens of discovery." *Iqbal*, 556 U.S. at 686.

[5] https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Mexico.html, last visited August 21, 2026.

3. The requested discovery would prejudice Defendants.

Finally, Defendants would be prejudiced if Rubicon were allowed to depose witnesses before Defendants have had a chance to do any discovery themselves. For instance, Defendants have a right to know what interactions Rubicon has had with the witnesses since the state charges were dismissed. Without the ability to investigate these matters, Defendants would be at a severe, unfair disadvantage.

## II. THE COURT ALSO SHOULD DENY THE MOTION AS PROCEDURALLY IMPROPER.

### A. Plaintiffs did not make reasonable efforts to resolve the issue before filing.

A party must make reasonable efforts to resolve a discovery dispute before seeking court assistance, including a prompt written communications to meet and confer either in person or by telephone. *See* DUCivR 37-1(a)(1)-(2). Plaintiffs did not do this. Their July 23 email did not request depositions under Rule 30; it demanded a complete Rule 26(f) conference, which would require agreement on a host of issues, such as interrogatory and document request limits, deposition counts, and every discovery deadline in the case. Yet, when Defendants informed Plaintiffs on the morning of August 3 they had been prevented from providing a coordinated response but would substantively respond by August 7, Plaintiffs did not reply. They filed their Motion hours later without another word.

This was not a "reasonable effort" (and the actions also deprived the Court of the narrowing that conferral exists to produce). The Court can deny the Motion on this basis alone.[6]

[6] Had a conferral occurred, we might have been able to resolve at least part of the dispute. For example, Defendants probably would not object to a deposition of a specific witness with material information whose departure from the country is known to be actually imminent. Because Plaintiffs prematurely filed their Motion, however, Defendants had to respond.

### B. Plaintiffs did not obtain leave to file their overlength motion.

DUCivR 7-1(a)(4)(D)(i) limits a motion of this kind to "10 pages or 3,100 words." Plaintiffs' Motion contains 15 pages and 4,679 words, more than fifty percent beyond the limits. A party "must first obtain a court order authorizing the additional pages or words before filing," and the request must identify the additional words needed and state good cause for them. DUCivR 7-1(a)(7)(A). An overlength motion "must contain a table of contents," *id*. 7-1(a)(7)(B), and a party exceeding the page limit must certify compliance with the word limit, *id*. 7-1(a)(6)(C). Plaintiffs did none of these things. The Court may deny the motion on this basis too. *Id*. 7-1(j)(2).

## CONCLUSION

For the aforementioned reasons, the Court should deny the Motion in its entirety.

DATED this 24th day of August, 2026.

**FABIAN VANCOTT**

*/s/ Stephen P. Horvat*
Jason W. Hardin
Jeffery B. Setness
Stephen P. Horvat
J. Mason Kjar
Trevor J. Adkins
*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I, Stephen P. Horvat, certify that this opposition memorandum contains 3,047 words, excluding caption, face sheet, signature block, and exhibits, and complies with DUCivR 7-1(a)(4).

*/s/ Stephen P. Horvat*