David W. Tufts (#8736)
Lyndon R. Bradshaw (#15097)
DENTONS DURHAM JONES PINEGAR P.C.
111 S. Main Street, Suite 2400
Salt Lake City, UT 84111
(801) 415-3000
david.tufts@dentons.com
lyndon.bradshaw@dentons.com

Stephen R. McAllister (*pro hac vice*)
DENTONS U.S. LLP
4520 Main Street, Suite 1100
Kansas City, MO 64111-7700
(816) 460-2400
stephen.mcallister@dentons.com

Keith M. Woodwell (#7353)
Jake Taylor (#10840)
Katherine E. Pepin (#16925)
Vicki B. Zgodny (#19753)
CLYDE SNOW & SESSIONS
201 South Main Street, #2200
Salt Lake City, UT 84111
(801) 322-2516
kmw@clydesnow.com
jst@clydesnow.com
kep@clydesnow.com
vbz@clydesnow.com

*Attorneys for Plaintiffs Rudy Larsen, Jena Larsen, Rubicon Contracting, LLC, Scandia Company, LLC, and Smart Rain Systems, LLC*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUDY LARSEN, an individual; JENA LARSEN, an individual; RUBICON CONTRACTING, LLC, a Utah limited liability company; SCANDIA COMPANY, LLC, a Utah limited liability company; and SMART RAIN SYSTEMS, LLC, a Utah limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>SEAN D. REYES, an individual; LEO LUCEY, an individual; MICHAEL ADAM JETER, an individual; and KAYTLIN VIRGINIA BECKETT, an individual,<br><br>Defendants. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO TAKE EXPEDITED PRESERVATION DEPOSITIONS**<br><br>**(ECF No. 66)**<br><br>Case No. 2:25-cv-00963<br>District Judge Howard C. Nielson, Jr.<br>Magistrate Judge Jared C. Bennett |

Plaintiffs Rudy Larsen, Jena Larsen, Rubicon Contracting, LLC, Scandia Company, LLC, and Smart Rain Systems, LLC (collectively, "Plaintiffs"), by and through undersigned counsel, hereby submit this reply memorandum in support of their Motion for Leave to Take Expedited Preservation Depositions, ECF No. 66 (the "Motion").

## INTRODUCTION

Defendants do not dispute the facts that establish good cause for conducting the expedited preservation depositions requested by Plaintiffs. Defendants do not dispute that federal authorities investigated and declined to prosecute Plaintiffs, that the state criminal charges against them were dismissed, that at least one proposed deponent's temporary immigration status expires within six months, or that the balance of the witnesses' immigration status is unconfirmed and lies within Defendants' and the AGO's records. Instead, Defendants ask this Court to categorically bar all discovery because an immunity motion is pending, speculate that departing witnesses might not really leave, fault Plaintiffs for the length of the Motion, and falsely claim that Plaintiffs failed to meet and confer. None of this overcomes the specific, rule-based mechanism Plaintiffs invoke, and none of it justifies or outweighs risking the permanent loss of testimony that goes to the heart of this case, especially when measured against the limited burden these depositions may impose on Defendants, if any.

Defendants concede the point that decides this Motion. They acknowledge they "probably would not object to a deposition of a specific witness with material information whose departure from the country is known to be actually imminent." (Opposition, ECF No. 70, p. 11.) The dispute is therefore not whether preservation depositions conducted pursuant to Fed. R. Civ. P. 30(a)(2)(A)(iii) may proceed while immunity is pending, but how many and on what showing. The Federal Rules and the current record answer both questions in Plaintiffs' favor.

## ARGUMENT

### I. THE BALANCE OF HARMS WEIGHS IN FAVOR OF PLAINTIFFS

Plaintiffs recognize that, in general, and when applicable, absolute and qualified immunity protects an official from the burdens of litigation borne by that official. However, the prejudice to Plaintiffs that will result from the permanent loss of material witness testimony should also be considered. Here, that prejudice is real and it greatly outweighs any potential prejudice to the Defendants in this case, who have yet to establish governmental immunity. As argued in the Motion and Section II, *infra*, Plaintiffs have established, and Defendants do not provide contrary evidence, that crucial witnesses' legal status to remain in the country is at risk. If these witnesses leave the country prior to being deposed, their testimony is forever lost, a result Fed. R. Civ. P. 30(a)(2)(A)(iii) was created to avoid. Defendants argue that they should not be required to participate in discovery while their motion to dismiss on the grounds of governmental immunity is pending. However, Plaintiffs are not asking that they be required to participate. The proposed deponents are independent third parties, and Defendants need not participate in these depositions. As a result, the prejudice to be suffered by Plaintiffs outweighs the burden placed on Defendants.

Additionally, Defendants' reliance on *Iqbal* is misplaced. The passage they quote—that an official "would not be free from the burdens of discovery" even when discovery is "deferred while pretrial proceedings continue for other defendants"—is nonbinding dicta and rests on the premise that the immunity defendant "and their counsel [would] participate in the process" as co-parties "when discovery as to the other parties proceeds." *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). That premise is absent here. Plaintiffs seek no discovery "as to the other parties" to the

litigation. *Iqbal* says nothing about preservation testimony taken from a departing third-party witness who is not, and will never be, a party to any claim against these Defendants.

Similarly, the narrow exception Defendants invoke, which permits discovery necessary to resolve the immunity question itself, does not foreclose the relief requested by Plaintiffs. The cases Defendants cited do not hold that a court lacks discretion to permit non-party preservation discovery from independent third parties who are about to leave the country, and do not limit the Court's authority under Fed R. Civ. P. 30(a)(2)(A)(iii) to permit the deposition of a witness expected to leave the United States. *See Maxey v. Fulton*, 890 F.2d 279 (10th Cir. 1989); *Lewis v. City of Fort Collins*, 903 F.2d 752 (10th Cir. 1990). *Maxey* confirms the point rather than defeating it. Immunity shields an official from discovery that is "either avoidable or overly broad." *Maxey*, 890 F.2d at 282–83. The discovery Plaintiffs seek is neither. It is not avoidable: testimony that disappears when a witness leaves the country cannot be recovered on any later schedule, which is the opposite of discovery a court may safely defer. Nor is it overly broad: Plaintiffs seek eighteen depositions drawn from a far larger pool of witnesses designated in Defendants' own investigation, selected on objective, record-based criteria, and offered subject to limits Plaintiffs have twice invited Defendants to negotiate. *Lewis* is inapposite for a different reason. The discovery disapproved there was directed at the immune defendant himself; the testimony sought here is that of independent third parties whom Defendants need not attend, examine, or prepare for.

## II. DEFENDANTS DO NOT DISPUTE THE FACTS ESTABLISHING GOOD CAUSE; THEY ONLY SPECULATE ABOUT ALTERNATIVES.

Defendants do not dispute that the DOJ and the U.S. Attorney's Office declined prosecution (Motion, ECF No. 66, p. 7); that Diego Medina's Continued Presence status—the only documented durable grant anywhere in the current record—expires February 6, 2027 (*Id*. p.



4932-7004-0270, v. 1

6); that the remaining witnesses' status is unconfirmed on the present record; or that the records needed to confirm it remain in Defendants' and the AGO's possession (*Id*. pp. 6–7). Ignoring those facts, Defendants offer speculation. They suggest a witness with expiring status "may go to work for another H-2B employer" (Opposition, ECF No. 70, p. 9) but identify no evidence that any proposed deponent has done so. Defendants' counterexample, Jorge Breton Hondal's July 2026 application to Rubicon for re-employment (*Id*. p. 9), was submitted to Rubicon, not to some other sponsor, and an application is not an offer, let alone an approved visa.

Defendants' "admission of ignorance" argument is a red herring and inverts the burden. (Opposition, ECF No. 70, p. 9.) The complete immigration records, including certifications, Supplement B declarations, and related communications, are held by Defendants and/or the AGO and are not yet available to Plaintiffs. Defendants cannot withhold the very records that would establish each witness's status and then fault Plaintiffs for failing to prove that status to the exact day of expiration.

Defendants next suggest that a witness who returns to Mexico can simply be asked to testify voluntarily because Rubicon's former employees, in Defendants' characterization, "actually love Rubicon." (Opposition, ECF No. 70, p. 10.) While Plaintiffs agree with Defendants' characterization that the former H-2B visa workers "actually love Rubicon" and are not victims of human trafficking, that does not answer the legal question. Voluntary cooperation cannot be assured. A witness who has left the country is beyond the Court's subpoena power, and Rule 32(a)(4) exists precisely because compulsory process ends at the border. A Hague Evidence Convention request is not an adequate substitute; such requests to Mexican authorities routinely take many months, carry no guarantee of compliance, and afford none of the procedural protections of an American deposition.

Defendants' assertion that "there already is a documentary record of what these witnesses said" (Opposition, ECF No. 70, p. 9) misapprehends what the depositions are for. The documents show what these witnesses said to and were told by the Defendants and the AGO. However, only the witnesses can testify to why they said it, and whether other conversations occurred with Defendants or other AGO employees, including whether promises of immigration benefits caused them to adopt a trafficking narrative inconsistent with their own contemporaneous conduct. Moreover, a cold written statement cannot be cross-examined, and no fact-finder can assess credibility from an interview summary. That is precisely the evidentiary gap Rule 30(a)(2)(A)(iii) exists to prevent.

## III. THE REQUESTED DEPOSITIONS ARE NOT UNDULY BURDENSOME, AND ANY ASYMMETRY IS OUTWEIGHED BY THE RISK OF PERMANENT LOSS

Defendants' burden argument conflates the burden of being deposed with the burden of optionally attending someone else's deposition. Defendants build their argument around the premise that they must "prepare for all eighteen depositions and attend them to advise counsel," (Opposition, ECF No. 70, p. 10), but nothing requires that. Plaintiffs' proposal makes attendance optional. To the extent Defendants nonetheless choose to attend, that is their election, not a burden the Motion imposes. And to the extent Defendants claim prejudice from proceeding without reciprocal discovery first (*Id*. pp. 10–11), that concern is answered by Defendants' right to attend and examine each witness in real time, a right broader than anything Defendants would have if the testimony is simply lost. Whatever asymmetry remains is outweighed by the alternative of irretrievable loss of testimony central to Plaintiffs' claims.

Additionally, Rule 30(a)(2)(A)(i)'s presumptive limit of ten depositions is not a ceiling; it is a threshold that triggers judicial review, and leave "must" be granted "to the extent consistent with Rule 26(b)(1) and (2)[.]" Fed. R. Civ. P. 30(a)(2). Factors considered under Rule 26(b)(1)

include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The Advisory Committee Notes for the 2000 amendment to Subdivision (b)(1) state "[w]hen judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested."

Plaintiffs have alleged with plausibility and specificity that Defendants manufactured a felony human trafficking case against seven individuals which destroyed lives and decimated multiple multi-million dollar businesses, causing damages of more than $1 billion. In that underlying criminal case, Defendants interviewed at least ninety-three (93) H-2B visa workers and several other Rubicon employees, and Plaintiffs' Motion narrows the scope of their request to eighteen of these using objective criteria: the fourteen charged victims whose designations underlay the dismissed felony counts, three additional witnesses tied to specific documentary discrepancies, and one corroborating non-victim witness. The scope of this litigation is entirely of Defendants' own making. Defendants designated these witnesses as victims, sponsored the temporary immigration status on which their continued presence in this country depends, and hold the records that would establish when that status expires. Having created both the universe of witnesses and the deadline by which their testimony must be preserved, Defendants cannot invoke the burden of that discovery as a reason to deny it. The requested preservation depositions are clearly proportionate to the needs of the case and directly relevant to the claims asserted by Plaintiffs.

## IV. DEFENDANTS IGNORED PLAINTIFFS' REQUESTS TO MEET AND CONFER

Defendants argue that Plaintiffs failed to meet and confer related to the requests made in the Motion. This is demonstrably false. Plaintiffs made two separate requests to meet and confer about the issues raised in the Motion. The first occurred on July 23, 2026, prior to the filing of the Motion, and was referenced therein. (Motion, ECF No. 66, at 7.) When Defendants advised 11 days later on August 3, 2026 that they could not provide a substantive response until "the end of the week," Plaintiffs reasonably concluded that further delay risked the harm the Motion seeks to prevent and filed it later that same day. This was more than two weeks after the initial request, included no offer of an interim accommodation for the underlying preservation concern, and did not mention or otherwise acknowledge Plaintiffs' request to meet and confer.

However, Defendants' Opposition entirely ignores Plaintiffs' second, post-Motion request to meet and confer. On August 10, 2026, Plaintiffs' counsel emailed Defendants' counsel asking them to please meet and confer on this issue, saying:

> Additionally, **<u>we remain willing to meet and confer regarding the relief requested in the motion for expedited depositions</u>**. As explained in the motion itself and in my prior July 23 email, we are willing to agree to reasonable limitations and protections related to the requested discovery. As you review the motion, please consider stipulating to allow these depositions with the restrictions outlined in the motion. We would be happy to set up a call to discuss our concerns related to the loss of witnesses that may already be occurring and to discuss mutually acceptable restrictions to lessen the burden of early discovery on the defendants.

(*See* August 10, 2026 Email, attached hereto as Exhibit A.) Just as they had done with Plaintiffs' first request to meet and confer, Defendants declined to engage. Defendants never responded to or otherwise acknowledged Plaintiffs' second request. It is Defendants who have failed to meet and confer, not Plaintiffs .

## V. TECHNICAL DEFICIENCIES DO NOT WARRANT DENIAL

Defendants argue that the Court should deny the Motion because they claim it is overlength.[1] Even if the Motion is overlength, denial for an overlength filing is discretionary, not mandatory: non-compliance "***may*** result in . . . denial of the motion[.]" DUCivR 7-1(j)(2) (emphasis added). This Court has previously declined to deny or strike a motion for being overlength where the violation is "*de minimis* and unintentional" and doing so "would only serve to create unnecessary delay" in resolving issues. *Mountainville Commerce, LLC v. Auto-Owners Ins. Co.*, 2025 WL 3089749, at * 1 (D. Utah Nov. 5, 2025), quoting *Bingham v. doTERRA Int'l, LLC*, No. 2:23-cv-00707-DBB-DBP, 2024 WL 1973342, at *2 (D. Utah May 3, 2024) (declining to strike impermissibly overlength motion). To the extent the Court concludes the Motion required leave to exceed an applicable page or word limit, Plaintiffs respectfully request that leave be granted nunc pro tunc. The Motion addresses eighteen proposed deponents, each supported by record-specific facts, and its modest excess length reflects that scope rather than any effort to circumvent the rules. Moreover, Defendants identify no prejudice from the length of the Motion and, to the contrary, they filed a full, substantive thirteen-page Opposition addressing every argument raised. Thus, denying the Motion on this basis would elevate form over the substantial risk of losing material testimony.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Motion be granted.

---

[1] The Motion is not a discovery motion in the sense of a normal discovery motion: it does not seek to compel the production of discovery that an opposing party refuses to produce. Rather, it seeks to alter the timing of discovery events on a limited basis and for a specific purpose.

DATED: September 8, 2026.

/s/ Jake Taylor
CLYDE SNOW & SESSIONS
Keith M. Woodwell
Jake Taylor
Katherine E. Pepin
Vicki B. Zgodny

DENTONS DURHAM JONES PINEGAR P.C.
David W. Tufts
Lyndon R. Bradshaw

DENTONS U.S. LLP
Stephen R. McAllister

*Attorneys for Plaintiffs Rudy Larsen, Jena Larsen, Rubicon Contracting, LLC, Scandia Company, LLC, and Smart Rain Systems, LLC*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I certify that this reply contains 2,428 words, excluding the caption, face sheet, signature block, certificates, and exhibits, and complies with DUCivR 7-1(a)(4)(D)(i).

/s/ Jake Taylor
Jake Taylor

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of September, 2026, a true and correct copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO TAKE EXPEDITED PRESERVATION DEPOSITIONS** was filed and therefore served electronically via the Court's electronic filing system on all counsel of record.

*/s/ Doug J. Layne*
Legal Assistant